IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| FAIROFFERCASHNOW, INC., | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |
| FAIROFFERCASHNOW, INC., | ) | Case No. 3:24-bk-03495 |
| | ) | Chapter 11 |
| Plaintiff, | ) | JUDGE WALKER |
| | ) | |
| v. | ) | ADV. NO. 3:24-ap-90155 |
| | ) | |
| JUSTIN CUTLER, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| and | ) | |
| | ) | |
| JUSTIN CUTLER, | ) | |
| | ) | |
| Counter/Third-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FAIROFFERCASHNOW, INC., | ) | |
| BRADLEY SMOTHERMAN, and | ) | |
| CASEY SMOTHERMAN, | ) | |
| | ) | |
| Counter/Third-Party Defendants. | ) | |

**COUNTER-DEFENDANT FAIR OFFER CASH NOW, INC.'S MEMORANDUM
OF LAW IN SUPPORT OF ITS RULES 9(b) AND 12(b)(6)
<u>MOTION TO DISMISS</u>**

Plaintiff/Counter-Defendant, Fair Offer Cash Now, Inc. ("FOCN"), by and through its undersigned counsel, for its Memorandum of Law in Support of its simultaneously filed Rules 9(b) and 12(b)(6) Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), Fed. R. Civ. P. 9(b), Fed. R. Bky. P. 7012, and Fed. R. Bky. P. 7009 states as follows.

## **INTRODUCTION**

This case is about Cutler's criminal conduct and illegal lending practices that indisputably violate Tennessee's long standing prohibition against usury.

While illegal in Tennessee, usury certainly has ancient roots.[1] The Bible's Old Testament commands that "[t]hou shall not lend upon usury to thy brother"[2] or "take usurious interest from him."[3] Early Judeo-Christian communities regarded the practice of charging interest an immoral sin.[4] In addition to certain religious traditions prohibiting usury, in 340 B.C. the Roman Republic condemned usury when it enacted anti-usury laws.[5]

---

[1] Susan Lorde Martin, *Financing Litigation On-Line: Usury & Other Obstacles*, 1 DePaul Bus. & Com. L. J. 85, 89 (2002).

[2] The Bible, Deuteronomy 23:19.

[3] *Id.* at Leviticus 25:35.

[4] James M. Ackerman, *Interest Rates and the Law: A History of Usury*, 27 Ariz. St. L. J. 61, 72–73 (1981).

[5] John D. Skees, Comment, *The Resurrection of Historic Usury Principles for Consumption Loans in a Federal Banking System*, 55 Cath. U. L. Rev. 1131, 1140–41 n.57 (2006) (citing Wayne A.M. Visser & Alastair McIntosh, *A Short Review of the Historical Critique of Usury, reprinted in* History of Usury Prohibition (1998)), *available at* http://www.alastairmcintosh.com/articles/1998_usury.htm (last visited March 4, 2025).

Usury has long been used to exploit the needy and as a mechanism of inequitable redistribution of wealth, *i.e.*, "the rich get richer and the poor get poorer."[6]

While usurious lending has always been illegal in Tennessee, in 1870, shortly after the Civil War, Tennessee adopted its (third) Constitution, the Constitution of 1870. The 1870 Constitution made significant changes in Tennessee, as it permanently abolished slavery and expressly limited the amount of interest that could be charged on the lending of money:

> The Legislature shall fix the rate of interest, and the rate so established shall be equal and uniform throughout the State; but the Legislature may provide for a conventional rate of interest, not to exceed ten per centum per annum.

Tennessee Constitution of 1870, Article XI, Section 11. Undersigned counsel's research indicates that the collection of usury has been a criminal act in Tennessee since at least the early 1800's. *See, e.g., Gillespie v. State,* 25 Tenn. 164 (Tenn. 1845) ("Defendant was convicted of the offence of usury, in the circuit court of Maury County."); *see also* Act of 1835, ch. 50, sec. 6.

In 1978, Tennessee adopted a constitutional amendment that allowed the Tennessee General Assembly to regulate interest rates, but if they did not so regulate then the rate of interest was not allowed to exceed ten percent, as was specified in the 1870 Constitution. Shortly thereafter, in 1979, the Tennessee General Assembly passed what is known as Tennessee's modern day usury laws. In passing such laws, the General Assembly specified that the willful collection of usurious interest is a Class A misdemeanor. Today, willful

---

[6] *Id.*

collection of usury is a Class A misdemeanor, *see* Tenn. Code Ann. § 47-14-112, which crime is punishable by imprisonment of up to eleven months and 29 days a fine of up to $2,500 for each violation, *see* Tenn. Code Ann. § 40-35-111(e)(1).

In this case, FOCN has sued Cutler for not only statutorily mandated damages for his illegal usury related conduct but also for a declaration that the loans Cutler is claiming are the basis of him claiming to be a purported "Creditor" are illegal and unenforceable. As part of Cutler's Answer to FOCN's Complaint, Cutler has asserted a Counterclaim against FOCN for 1) breach of contract (Count II) pertaining the alleged breach of certain loans at issue in this action and 2) for fraudulent inducement (Count IV) concerning some generic unspecified scheme to induce Cutler to make his illegal loans with no intent of repaying him and/or no intent in claiming that such loans were illegal. Cutler's claims are completely frivolous and do not withstand an iota of scrutiny and must be dismissed for failure to state a claim.

Specifically, Cutler cannot prevail on his claim for breach of contract against FOCN because all of the promissory notes (other than the Oscar Green Note[7]) at issue are usurious on their faces and thus absolutely unenforceable as a matter of law under Tennessee's usury statute. Cutler also cannot prevail on his fraudulent inducement claims as a matter of law for several reasons, including that Cutler could not have reasonably relied upon or been damaged by any such representations. Furthermore, Cutler has grossly failed to meet the heightened pleading standard required for fraud claims under Fed. R. Civ. P. 9(b) and

---

[7] The Oscar Green Note will be the subject of a different motion for judgment on the pleadings, as the Oscar Green Note does not provide for any interest at all.

4

otherwise failed to state a claim. Accordingly, this Court should dismiss the Counterclaims with prejudice.

## APPLICABLE LEGAL STANDARD

For purposes of a Rule 12(b)(6) Motion, this Court must take as true all of the well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009). To survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id.* A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* However, threadbare recitals of the elements of a cause of action supported by conclusory statements do not suffice. *Id.* A legal conclusion – even one couched as a factual allegation – need not be accepted as true, and recitations of the elements of a cause of action alone are insufficient. *Id.* at 1950.

In considering such a motion, the "moving party has burden of proving that no claim exists." *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross and Blue Shield*, 552 F.3d 430, 433 (6th Cir. 2008). For purposes of a Rule 12(b)(6) motion, this burden is a "burden of explanation" why dismissal is appropriate for failure to state a claim. *Lichtenstein v. Hargett*, No. 3:20-CV-00736, 2021 WL 5826246, at *3 (M.D. Tenn. Dec. 7, 2021), aff'd, 83 F.4th 575 (6th Cir. 2023).

## FACTUAL ALLEGATIONS

The following allegations are taken from the Counterclaim unless otherwise noted and are taken as true for purposes of this Motion only.

5

### **Breach of Contract (Count II)**

Between May 6, 2019, and March 29, 2023, FOCN entered into various loans with Cutler, twelve of which remain outstanding (the "Outstanding Loans"). Counterclaim, ¶ 81. Although Cutler asserts that the Outstanding Loans are detailed in the attached "Exhibit 1," there is no "Exhibit 1" to the Counterclaim. *Id.* However, the loans comprising the Outstanding Loans appear to be part of the public record and appear to be the basis of Cutler's twelve (12) claims filed in FOCN's bankruptcy proceeding for a total alleged claim of $2,583,218, as of October 14, 2024. *See In re Fairoffercashnow, Inc.*, 3:24-bk-03495, Claims Nos. 3 – 14, and the corresponding notes and deed of trust exhibits are attached hereto collectively as **Exhibit A**.

Cutler asserts that these Outstanding Loans are in default and "the full balance" of $2,636,459.64 (as of the date of filing the Counterclaim) is due and owing. *Id.*, ¶ 89. Cutler asserts that FOCN has breached the terms of the promissory notes associated with the Outstanding Loans in a conclusory and unspecified fashion and seeks repayment of the total amount owing thereunder, "plus fees, costs, and interests due and payable under the applicable promissory notes." *Id.*

This is the entirety of Cutler's breach of contract claim. Interestingly, Cutler fails to plead the actual legal elements of a breach of contract claim under Tennessee law, including whether the Outstanding Loans were, in fact, legal, valid, and enforceable contracts. Given the indisputable usurious nature of eleven (11) of the twelve (12) the loans at issue, as detailed *infra*, it seems likely that this omission was intentional. This motion

concerns the facial illegality of all of the Outstanding Loans other than the Oscar Green loan (proof of claim No. 14), which will be addressed by separate motion.

**Fraudulent Inducement (Count IV)[8]**

Cutler knows and cannot deny that eleven of the twelve loans are usurious on their face. The loan Oscar Green Loan actually does not even provide for any interest. Remarkably, Cutler asserts that, "[t]o the extent that any of the loans made by Cutler to [FOCN] were usurious," it was FOCN's fault that Cutler broke the law and committed crimes. The fraudulent inducement claims are apparently made in the alternative "to the extent that any of the loans made by Cutler to the Debtor are usurious" as follows:

> 99. To the extent that any of the loans made by Cutler to the Debtor were usurious, the Debtor and Brad proposed the usurious terms of the loans, both the Debtor and Brad had actual knowledge that the terms were usurious, and they convinced Cutler to enter into the loans with the intent to later bring this cause of action to avoid the security interests created as part of the loans.

In particular, Cutler alleges that FOCN (apparently through Brad Smotherman[9]) "proposed" the usurious terms of the Loans despite having "actual knowledge" that the terms were usurious. *Id.*, ¶ 99. Cutler claims that FOCN and Smotherman "convinced" Cutler to enter into the usurious loans with an unspecified "intent to later bring this cause of action to avoid the security interests created as part of the loans." *Id.*

---

[8] Count IV is addressed at both FOCN and Brad Smotherman ("Smotherman"), a Third-Party Defendant. Although the allegations against Brad Smotherman, individually, are referenced herein as relevant to the instant Motion, this Motion is not directed whatsoever toward any claims directed to Mr. Smitherman.

[9] As will be detailed, there are no allegations as to who allegedly made certain proposals, representations, etc.

7

Cutler further makes the remarkable allegations that FOCN and Smotherman induced Cutler to enter into the loans by representing that the loan terms were, in fact, not usurious and/or "misrepresenting that they would not seek to avoid the loans." *Id.*, ¶ 100. Cutler further claims, without any facts whatsoever, that Debtor entered into one or more loan agreements (not specifying which ones) with the "intent of bringing this action to the avoid the terms of those loan agreements." *Id.*, ¶ 101. Cutler claims that these unspecified misrepresentations were "intentional, fraudulent, and/or reckless." *Id.*, ¶ 102. Cutler claims that he "reasonably relied" upon these unspecified representations to his detriment "as such reliance has now made him a defendant in this action." *Id.*, ¶ 103. Cutler seeks unspecified damages in excess of $50,000, but does not explain the nature of such damages.

Basically, Cutler claims that FOCN made some unspecified statement to Cutler that it would permit Cutler to excusably act illegally without recourse, and Cutler thinks he is damaged simply because he has been sued for his illegal lending practices.

## **ARGUMENT**

Cutler's counterclaims against FOCN fail to state a claim as a matter of law and must be dismissed for several reasons. First, the Outstanding Loans other than the Oscar Green Loan are all usurious on the faces of the applicable notes and are therefore unenforceable under Tennessee law, and any claim for their enforcement shall be dismissed as a matter of law. Second, Cutler's claims are pleaded in a grossly deficient way and fail to state a claim as a matter of law, including in violation of Rule 9(b) for a lack of particularity in Cutler's fraud claim. Third, Cutler's claim for fraud in the inducement must be dismissed because Cutler could not have "reasonably relied upon" representations

concerning his own illegal lending scheme and could not have been damaged by any such representations because usury is a strict liability statute. Accordingly, this Court must dismiss Cutler's Counterclaim.

    **I.    THE OUTSTANDING LOANS (OTHER THAN THE OSCAR GREEN LOAN) ARE ALL USURIOUS AND THEREFORE UNENFORCEABLE AS A MATTER OF LAW, NECESSITATING DIMISSAL OF CUTLER'S CLAIM FOR BREACH OF CONTRACT.**

First, Cutler's Outstanding Loans[10] are all usurious under Tennessee law and therefore unenforceable as a matter of law. Although Cutler failed to append "Exhibit 1" to his Counterclaim (or any copies of the loans upon which his flawed breach of contract theory is premised), this Court may nevertheless review and consider the Outstanding Loans in the context of this Motion. It is well-established that a court may consider some documents outside of the pleadings in deciding a motion to dismiss if they are "referred to in the pleadings" and "integral to the claims." *Moyer v. Gov't Emps. Ins. Co.*, 114 F.4th 563, 568 (6th Cir. 2024). This is particularly true where there is no dispute as to the documents' authenticity. *Id.* Put simply, a plaintiff cannot "survive a motion to dismiss simply by not attaching a dispositive document upon which the plaintiff relied." *Id.*

As noted above, eleven (11) of the promissory notes underlying Cutler's claims for breach of contract are a matter of public record because Cutler appended them to the eleven corresponding claims he made in FOCN's original bankruptcy proceeding. *See In re Fairoffercashnow, Inc.*, 3:24-bk-03495, Claims Nos. 3 – 13 (which excludes claim no. 14,

---

[10] From this point forward, when referring to "Outstanding Loans," reference will mean all such loans other than the Oscar Green Loan. However, to the extent that Cutler believed that the Oscar Green Loan provides for interest at the rate of 15%, such loan would be illegal and unenforceable.

9

the Oscar Green Loan) and the documents attached thereto. It is plain that these copies of the promissory notes, submitted into the public record by Cutler and represented in that proceeding to be the basis of Cutler's claims against FOCN, are not subject to any reasonable dispute as to their authenticity. Likewise, there can be no meaningful dispute that the underlying promissory notes under which Cutler claims are both "referred to in the pleadings" and "integral" to Cutler's claim for breach of contract. Accordingly, this Court can consider all of the promissory notes in considering this Motion.

A cursory review of the promissory notes at issue makes clear that each and every one of the Outstanding Loans is facially usurious under Tennessee law. "Usury" is the "collection of interest in excess of the maximum amounts authorized by or pursuant to this chapter or any other statute." Tenn. Code Ann. § 47-14-102(12). In determining what the maximum amount authorized by law is for a private lender such as Cutler, Tennessee has established a "formula rate," which is an annual rate of four percent (4%) over the weekly average prime loan rate as established by the Federal Reserve. Tenn. Code Ann. § 47-14-102(7).

The maximum formula rate is a matter of public record and is posted on a weekly basis and maintained by the Tennessee Department of Financial Institutions.[11] As alleged by Cutler, the relevant time period for all Outstanding Loans is May 6, 2019, through March 29, 2023. Counterclaim, ¶ 81. The highest formula rate during this time period –

---

[11] This data is available at: https://www.tn.gov/content/tn/tdfi/tdfi-how-do-i/info/formula-rate/formula-rate-history.html (last visited March 4, 2025).

*i.e.*, the maximum legal rate under Tennessee law for a private lender such as Cutler – was 11.85% during the week of March 28, 2023.

A cursory review of Cutler's pertinent eleven (11) promissory notes submitted in support of his bankruptcy claims proves that each and every one of the promissory notes at issue is and was usurious because the facial interest rates are fifteen percent (15%), which has **never** been a lawful rate of interest under the maximum formula rate. *See, e.g., In re Fairoffercashnow, Inc.*, 3:24-bk-03495, Claims Nos. 3 – 13 and the documents attached thereto. Some of these rates are depicted below:

> FOR VALUE RECEIVED the undersigned jointly and severally promise(s) to pay to the order **Justin Cutler**, the principal sum of **THREE HUNDRED NINE THOUSAND AND 00/100 ($309,000.00)** together with interest thereon from date at the rate of **FIFTEEN (15%)** percent per annum compounded daily until maturity, said Principal and Interest being payable at maturity or sooner. Maturity Date of this note being **September 14, 2024**, at which time balance will become due and payable. Interest will continue to accrue until the balance is paid in full.

Bankruptcy claim 4-1, part 3, p. 11.

> Date: November 20, 2023
> $113,300.00
> Property Address: 163 21st Street Hueytown, AL 35023
>
> FOR VALUE RECEIVED the undersigned jointly and severally promise(s) to pay to the order Justin Cutler, the principal sum of ONE HUNDRED THIRTEEN THOUSAND THREE HUNDRED and 00/100 DOLLARS ($113,300.00) together with interest thereon from date at the rate of Fifteen (15.00%) percent per annum compounded daily until maturity, said Principal and Interest being payable at maturity or sooner. Maturity date of this note being May 20, 2024, at which time balance will become due and payable. Interest will continue to accrue until the balance is paid in full.

Bankruptcy claim 5-1, part 3, p. 1.

Date: July 26, 2023
$92,700.00
Property Address: 225 Duren Ball Road Vina, AL 35593

FOR VALUE RECEIVED the undersigned jointly and severally promise(s) to pay to the order Justin Cutler, the principal sum of Ninety-Two Thousand Seven Hundred and no/dollars ($92,700.00) together with interest thereon from date at the rate of Fifteen (15.00%) percent per annum compounded daily until maturity, said Principal and Interest being payable at maturity or sooner. Maturity date of this note being February 1, 2024, at which time balance will become due and payable. Interest will continue to accrue until the balance is paid in full.

Bankruptcy claim 6-1, part 3, p. 5.

And so on. *See generally* Collective Ex. A hereto. There can be no meaningful dispute that these notes are all facially usurious and unenforceable as a matter of law.

This distinction is critical. Under Tennessee law, loans which are usurious are unenforceable and void.[12] *See* Tenn. Code Ann. § 47-14-117(a); *see also, e.g., White v. Kaminsky*, 196 Tenn. 180, 185, 264 S.W.2d 813, 815 (1954). If the loans are unenforceable, Cutler obviously cannot maintain a breach of contract claim to enforce them, as the very first and most crucial element to a cause of action for breach of contract is the existence of a valid and enforceable contract. *See, e.g.*, *In re Est. of Harris*, No. M2023-01824-COA-R3-CV, 2024 WL 4315183, at *2 (Tenn. Ct. App. Sept. 27, 2024) ("Again, this is a breach of contract case, and the existence of a valid, enforceable contract is the most basic threshold requirement"); *see also ARC Lifemed, Inc. v. AMC-Tennessee, Inc.*, 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005) ("The essential elements of any breach of contract claim

---

[12] Section 117(a) does provide that, in certain circumstances, a lender under an unenforceable note *may* "sue to recover the principal actually advanced, plus lawful interest, loan charges, commitment fees, and brokerage commissions." However, such an action would likely need to be asserted under a quasi-contract or other equitable theory and would present completely different elements, proofs and different defenses than an action for breach of contract.

include … the existence of an enforceable contract…"). Dismissal is therefore warranted as a matter of law because Count II (for breach of contract) fails to state a claim.

> II. **CUTLER'S CLAIMS ARE NOT ADEQUATELY PLEADED AND THEREFORE FAIL TO STATE A CLAIM.**

Second, Cutler's claims are simply inadequately pleaded and resultantly fail to state a claim. As to Cutler's breach of contract claim, the claim is pleaded in a completely conclusory and grossly deficient fashion. Aside from the technical defect of the failure to append Exhibit 1 to the Counterclaim, Cutler fails to plead the actual elements of a breach of contract under Tennessee law, including whether an enforceable contract existed amongst the parties. In fact, Cutler simply asserts in a conclusory fashion that FOCN has "breached the terms of the promissory notes" but fails to allege how and in what manner such breach occurred or that such notes were enforceable contracts, which we know they are not for the reasons set forth in Section I, *supra. See, e.g., McKnelly v. Wyndham Destinations, Inc.,* No. 3:19-CV-103-TAV-DCP, 2020 WL 1518624, at *4 (E.D. Tenn. Mar. 30, 2020), citing *Ross v. PennyMac Loan Servs. LLC,* 761 F. App'x 491, 495 (6th Cir. 2019) (holding that a plaintiff does not adequately plead a breach-of-contract claim where the complaint alleges that defendant "breached the contract by breaching the contract").

The deficiencies of Cutler's claim for fraud in the inducement are even more significant. Under Federal Rule of Civil Procedure 9(b), a party alleging fraud must state with particularity the circumstances constituting fraud. Rule 9(b)'s particularity rule serves an important purpose by alerting defendants to the "precise misconduct with which

13

they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." *United States ex rel. Prather v. Brookdale Senior Living Communities, Inc.,* 838 F.3d 750, 771 (6th Cir. 2016). To satisfy Rule 9(b), a complaint of fraud must, at a minimum, "allege the time, place, and content of the alleged misrepresentation on which [the plaintiff] relied, the fraudulent scheme, the fraudulent intent of the defendants, and the injury resulting from the fraud." *U.S. ex rel. Marlar v. BWXT Y-12, L.L.C.*, 525 F.3d 439, 444 (6th Cir. 2008).

Cutler's seven (7) paragraph claim for fraud in the inducement is grossly deficient for several reasons. Cutler pleads that, to the extent that any of the loans made by Cutler were actually usurious, FOCN and Brad Smotherman proposed the terms of the loan, had actual knowledge of their usurious nature, and "convinced" Cutler to enter into the loans "with the intent to later bring this cause of action to avoid the security interests created as part of the loan." Counterclaim, ¶ 99. FOCN and Brad Smotherman induced Cutler to enter into the loans by representing that the loan terms "were not usurious and/or misrepresenting that they would not seek to avoid the loans." *Id.*, ¶ 100. FOCN and Brad Smotherman entered into one or more loan agreements with Cutler with the intent of "bringing this action to avoid the terms of those loan agreements." *Id.*, ¶ 101. "These misrepresentations" by FOCN and Brad Smotherman were intentional, fraudulent, reckless, and calculated to induce Cutler into entering into the loan agreements. *Id.*, ¶ 102. Cutler "reasonably relied" upon FOCN's and Brad Smotherman's representations because Cutler's reliance "has now made him a defendant in this action." *Id.*, ¶ 103. Cutler therefore claims he has been

14

damaged through this unspecified reliance in an unspecified amount and in an unspecified way. *Id.*, ¶ 104.

Throughout these conclusory and generic allegations, Cutler does not allege either the time or the place of any alleged misrepresentations. Cutler does not allege who the speaker (whether Brad Smotherman, individually or on behalf of FOCN or, perhaps, both or someone else) was, or in the context of which loans/transactions. Indeed, Cutler does not even allege which statements were made in connection with which loans and simply asserts that FOCN entered into "one or more loan agreements" with him with an intent to avoid them. In fact, Cutler does not even allege with any specificity the actual alleged fraud and instead asserts that FOCN's representations were either that "the loans terms were not usurious **and/or** misrepresenting that they would not seek to avoid the loans." Counterclaim, ¶ 100 (emphasis added). Which is it? Neither this Court nor FOCN can discern based upon the Counterclaim as pleaded. In either event, neither such allegation is sufficient as a matter of law to support a fraud in the inducement claim.

Accordingly, Counts II and IV fail to state a claim as a matter of law, and Count IV fails to comply with Rule 9(b)'s particularity requirements, which independently warrants dismissal of such claim.

### III. CUTLER'S ACTION FOR FRAUD IN THE INDUCEMENT MUST BE DISMISSED BECAUSE CUTLER COULD NOT HAVE "REASONABLY RELIED" ON AN ILLEGAL LENDING SCHEME AND FOCN'S ALLEGED STATEMENTS COULD NEVER HAVE BEEN MATERIAL.

Finally, Cutler asserts a truly novel cause of action: that FOCN fraudulently induced him to enter into illegal usurious loans and to criminally collect illegal interest because

15

FOCN "blessed" the loans by representing that it would not "seek to avoid them." To establish fraud in the inducement under Tennessee law, a party must demonstrate the following elements: "(1) a false statement concerning a fact material to the transaction; (2) knowledge of the statement's falsity or utter disregard for its truth; (3) intent to induce reliance on the statement; (4) reliance under circumstances manifesting a reasonable right to rely on the statement; (5) an injury resulting from reliance." *Coleman v. Wells Fargo Banks, N.A.*, 218 F. Supp. 3d 597, 605 (M.D. Tenn. 2016), citing *Ewan v. Hardison Law Firm,*, 2012 WL 1269148, at *8 (Tenn. Ct. App. Apr. 16, 2012). Where a claim for fraudulent inducement rests on false promises made without the present intent to perform, or "promissory fraud," the plaintiff must prove "more than a 'subsequent failure to keep the promise'" but that the plaintiff, "at the time the promise was made, and had no intention to carry it out." *Kelly v. Int'l Cap. Res., Inc.*, 231 F.R.D. 502, 517 (M.D. Tenn. 2005).

In general, however, the facts (or lack thereof) as alleged simply cannot sustain the claim as a matter of law for several reasons. Cutler has failed to plead (and cannot plead) either a fact material to the transaction or any reasonable reliance under circumstances "manifesting a reasonable right to rely on the statement" because Tennessee's law on usury is a strict liability statute:

> [A]s we understand the law of this state, on the subject of usury, **no scheme or device to avoid the application of statutes on that subject, however ingenious or intricate same may be, will permit anyone guilty of participating in a usurious transaction to escape its consequences**, when the facts are made to appear; and **consent or cooperation of the one paying the usurious interest is immaterial**.

*Providence A.M.E. Church v. Sauer,* 45 Tenn. App. 287, 303, 323 S.W.2d 6, 13 (1958) (emphasis added); *see also Adams v. Schwartz*, 356 S.W.2d 597, 601 (Ct. App. 1960), *perm app. denied*, (Tenn. 1961) ("'on the subject of usury, no scheme or device to avoid the application of statutes on that subject, however ingenious or intricate same may be, will permit anyone guilty of participating in a usurious transaction to escape its consequences, when the facts are made to appear; and consent or cooperation of the one paying the usurious interest is immaterial'") (quoting *Sauer*, 323 S.W.2d at 13).

These principles have been relied upon to, for example, disregard a written waiver of the defense of usury executed simultaneously with the signing of a usurious note. *See, e.g., Aztec Properties, Inc. v. Union Planters Nat. Bank of Memphis*, 530 S.W.2d 756, 760 (Tenn. 1975) ("[Plaintiff] executed a written waiver at the time the note was signed, and the [Defendant Lender] relies upon this waiver. We find no merit in this argument because the **consent or cooperation of the one paying the usurious interest is immaterial**" (emphasis added)).

Viewed through the lens of the law, this claim must fail. Cutler asserts that he was damaged because he has been made a defendant to this lawsuit because he entered into the illegal loans allegedly in reliance upon FOCN's so-called "misrepresentations" that FOCN either represented the loans were not illegal or that despite them being illegal FOCN was not going to seek to avoid enforcement of them due to their illegality. However, usury is a strict liability law, and FOCN's "consent or cooperation . . . is immaterial" and does not relieve Cutler of liability; therefore, there could never be either any reasonable reliance upon FOCN's so-called statement nor injury resulting from such reliance. For these same

17

reasons – FOCN's knowledge, consent, and/or cooperation were immaterial – the statements pertaining to the legality of the loans or FOCN's intent with respect to them could never have been a false statement about a fact "**material** to the transaction." Put simply, no statement or agreement by FOCN could have relieved Cutler of any liability for its scheme of illegal lending because Tennessee's usury laws prohibit such, and it is thus impossible that Cutler's alleged injuries "resulted" from or were proximately caused by any such reliance (assuming, *arguendo*, that Cutler's generic theory that being sued as a defendant even constitutes "damages," which it certainly does not).[13]

Of course, any suggestion that Cutler was an innocent party who was ignorant to the laws of usury and relied upon FOCN's opinion of what was or was not legal is simply absurd. This fact is demonstrated by the existence of an unenforceable "usury savings provision" in each and every one of the subject promissory notes that provided for the refund of any illegal interest or other charges:

> Loan Charges: if law which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected in connection with the loan exceed the permitted limits, then (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make his refund by reducing the principal I owe under this note by making a direct payment to me. If a refund reduces the principal, the reduction will be treated as a partial prepayment. The converse of this paragraph shall apply in the event that the interest or other loan charges collected or not collected in connection with the loan are deemed to be too minimal or insufficient by applicable law. In such event, I shall make necessary payment to the Note Holder to reconcile any such deficiencies.

---

[13] Cutler has failed to plead any damages for this claim with any specificity whatsoever or how those damages could have possibly been proximately caused by FOCN's immaterial statements about alleged cooperation.

*See* Bankruptcy Claim No. 6-1, Part 3, p. 5.

Cutler was obviously not only well aware of the illegality of this scheme, but the maximum formula rate and Tennessee laws pertaining to usury are simply public record.

Given that usury is a strict liability statute and any of Cutler's alleged damages could therefore not have been proximately caused by any alleged misrepresentations by FOCN, this Court must dismiss Count IV for fraud in the inducement.

## CONCLUSION

For the foregoing reasons, FOCN respectfully requests this Court dismiss the Counterclaim with prejudice.

Respectfully submitted:

*s/ J. Brad Scarbrough*
J. Brad Scarbrough, BPR# 20980
Brandon A. Carnes, BPR# 41089
BuildLaw, PLC
4300 Sidco Dr., Ste. #200
Nashville, TN 37204
Phone: 615-369-9996
Fax: 615-515-4491
Email: brad@build.law
Email: brandon@build.law
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on March 4, 2025, a true and correct copy of the foregoing was served on the following by this Court's CM/ECF system and by U.S. mail (as noted):

By ECF:
Phillip Young
Brian Boyd
One Franklin Park
6100 Tower Circle, Suite 200

Franklin, TN 37067
phillip@thompsonburton.com
bboyd@thompsonburton.com
*Counsel for Defendants*

By U.S. mail:
Brad Smotherman and Casey Smotherman
89 Bear Grass Way
Santa Rosa Beach, FL 32459

                *s/ J. Brad Scarbrough*