# EXHIBIT A

| File #: | 2021-748 | Property | 39 Jones Street | Settlement Date | 10/08/2021 |
| Prepared: | 10/07/2021 | | Finley, TN 38030 | Disbursement Date | 10/08/2021 |
| Processor: | Amanda S. Young | Borrower | FairOfferCashNow, Inc. | | |
| | | Lender | Justin Cutler | | |

| Description | Borrower | |
|---|---|---|
| | **Debit** | **Credit** |
| **Primary Charges & Credits** | | |
| Loan Amount | | $36,050.00 |
| | | |
| **Loan Charges** | | |
| --Your credit or charge (points) for the specific interest rate chosen $1,050.00 | | |
| Your adjusted origination charges | $1,050.00 | |
| | | |
| **Government Recording and Transfer Charges** | | |
| Government recording charges | $38.00 | |
| Transfer taxes | $39.16 | |
| --eRecord Fee to Dyer County Recording Office $10.00 | | |
| | | |
| **Title Charges** | | |
| Title services and lender's title insurance | $150.00 | |
| Settlement or closing fee to Toro Title, LLC | $250.00 | |
| Lender's title insurance to Westcor Land Title Insurance Company | $142.80 | |
| --Title Search Fee to Toro Title, LLC $150.00 | | |
| | | |
| **Miscellaneous Charges** | | |
| Required services that you can shop for | $165.00 | |
| --2021 Dyer County Taxes to Dyer County Trustee $165.00 | | |

| | Debit | Credit |
|---|---|---|
| **Subtotals** | **$1,834.96** | **$36,050.00** |
| Due to Borrower | $34,215.04 | |
| **Totals** | **$36,050.00** | **$36,050.00** |

# NOTE

Date: October 8, 2021

$36,050.00

**Property Address: 39 Jones Street, Finley, TN 38030**

FOR VALUE RECEIVED the undersigned jointly and severally promise(s) to pay to the order **Justin Cutler**, the principal sum of THIRTY SIX THOUSAND FIFTY AND 00/100 ($36,050.00) together with interest thereon from date at the rate of **Fifteen (15.00%)** percent per annum compounded daily until maturity, said Principal and Interest being payable at maturity or sooner. Maturity date of this note being April 6, 2022, at which time balance will become due and payable.

Payments to be remitted to **1204 15ᵗʰ Avenue South, Nashville TN 37212** or at such place holder hereof may designate in writing from time to time.

I will pay principal and interest by making a payment monthly.

I will make my monthly payment on the 1st day of each month, beginning on December 1, 2021. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on April 6, 2022, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

My monthly payment will be in the amount of U.S. $400.00

Each maker or endorser severally waives demand, protest and notice of maturity, non-payment or protest and all requirements necessary to hold each of them liable as makers and endorsers and should litigation be necessary to enforce this note, each maker and endorser waives trial by jury and consents to the personal jurisdiction and venue of a court of subject matter jurisdiction located in the State of Tennessee and County of **Davidson**.

Each maker and endorser further agrees, jointly and severally, to pay all costs of collection, including a reasonable attorney's fee in case the principal of this note or any payment on the principal or any interest thereon is not paid at the respective maturity thereof, or in case it becomes necessary to protect the security hereof, whether suit be brought or not.

Loan Charges: if law which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected in connection with the loan exceed the permitted limits, then (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make his refund by reducing the principal I owe under this note by making a direct payment to me. If a refund reduces the principal, the reduction will be treated as a partial prepayment. The converse of this paragraph shall apply in the event that the

interest or other loan charges collected or not collected in connection with the loan are deemed to be to minimal or insufficient by applicable law. In such event, I shall make necessary payment to the Note Holder to reconcile any such deficiencies.

This note is to be construed and enforced according to the laws of the State of Tennessee; upon default in the payment of principal and/or interest when due, the whole sum of principal and interest remaining unpaid shall, at the option of the holder, become immediately due and payable and it shall accrue interest at the highest rate allowable by law, or, if no highest rate is otherwise indicated, at eighteen (18%) percent, from the date of default.

If the Note Holder has not received the full amount of any payment by that payment's due date, Borrower will pay a late fee to the Note Holder. The late fee will be 10% of the amount of the overdue payment that remains unpaid more than one day after its due date.

Borrower shall not permit or cause any other encumbrance other than the deed of trust to be recorded pursuant to this loan. Borrower agrees that the recordation of any other lien that is superior or inferior to the deed of trust to be recorded in connection with this indebtedness established by this Promissory Note shall be an event of default which shall entitle the holder of the deed of trust to all rights and remedies established by the deed of trust.

Unless specifically disallowed by law, should litigation arise hereunder, service of process therefore may be obtained through certified mail, return receipt requested; the parties hereto waiving any and all rights they may have to object to the method by which service was perfected.

FairOfferCashNow, Inc., a Tennessee Corporation

By: _____

Brad Smotherman, Authorized Signer

MAXIMUM PRINCIPAL INDEBTEDNESS FOR TENNESSEE RECORDING TAX PURPOSES
IS: $36,050.00.

This instrument prepared by:
Toro Title, LLC
933 E. Trinity Lane
Nashville, TN 37207

## DEED OF TRUST

This indenture, made this 8th day of October, 2021, between

FairOfferCashNow, Inc.

of the County of Dyer, and State of Tennessee, hereinafter called First Party, and Toro Title, LLC, Trustee of the County of Davidson and State of Tennessee for Justin Cutler, hereinafter called Second Party.

**Witnesseth:** That the First Party, for and in consideration of the sum of one dollar and the matters herein recited, has granted, bargained, sold, and conveyed, and does hereby grant, bargain, sell, and convey unto the Second Party, the following described real property and premises, to-wit:

Tract 1:

Lying and being situated in the 10th Civil District of Dyer County, Tennessee, and located in the Town of Finley, Tennessee, being part of Lot 2 in the Finley Addition to the Town of Finley, Dyer County, Tennessee, as shown by plat of record in Deed Book 35, Page 519, of the Register's Office for Dyer County, Tennessee. Said lot is now known as Lot 6; Beginning at the northeast corner of Lot 5, which is property to D.E. Pritchett; running thence west with the north line of Lot 5; running thence north with the east line of R.C. Finley (Lot 1) 47 feet to a stake; running thence east 105-1/3 feet to a stake in the street, which is also the southeast corner of Lot 7; running thence south 47 feet to the point of beginning.

Tract 2:

Lying and being situated in the 10th Civil District of Dyer County, Tennessee, at the Town of Finley, Tennessee, on the west side of Jones Street, being the south 12 feet of Lot 3 of the Finley Addition to the Town of Finley as shown by plat of record in Deed Book 35, Page 519 of the records of the Register's Office for Dyer County, Tennessee, being more particularly described as follows: Beginning at a stake in the west right-of—way line of Jones Street, the southeast corner of Lot 3 and the northeast corner of Lot 2 of the Finley Addition to the Town of Finley, Tennessee; runs thence west with the original south boundary line of Lot 3 and the north boundary line of Lot 2, 111 feet to a stake; thence north 12 feet to a stake; thence east 111 feet to a stake in the west right-of—way line in Jones Street; and in the east boundary line of Lot 3 of said Finley Addition; runs thence south with Jones Street 12 feet to the point of beginning.

Being the same property conveyed to Joyce Elizabeth Sampson, by deed dated June 11, 2007, and recorded June 11, 2007, from Mike Nicks, of record in Book 648, page 199 and being the same property conveyed to FairOfferCashNow Inc., by deed dated July 8, 2021, and recorded July 13, 2021, from Joyce Elizabeth Sampson, now known as Joyce Elizabeth Harder, married, of record in Record Book 981, page 784, Register's Office for Dyer County, Tennessee.

Property Address: 39 Jones Street Dyersburg, TN 38024

THE ABOVE description is the same as the previous deed of record, no boundary survey having been made at the time of this conveyance.

THIS CONVEYANCE is made subject to any and all applicable restrictions, easements and building setback lines as are shown recorded in the said Register's Office and further to any matter and/or condition which would be disclosed by a current, accurate survey or inspection of the property herein described.

with the Hereditaments and Appurtenances thereto appertaining, hereby releasing all claims to homestead and dower therein. To have and to hold the said premises to the Second Party, and his successors forever, in trust for the purposes hereinafter set forth.

And the First Party, for himself and for his heirs, executors, administrators, successors, and assigns, does hereby covenant with the said Second Party, and his successors, that he is lawfully seized in fee simple of the premises above conveyed and has full power, authority, and right to convey the same, that said premises are free from all encumbrances, except the current taxes,

and that he will forever warrant and defend the said premises and the title thereto against the lawful claims of all persons whomsoever.

But this instrument is made in trust to the Second Party for the uses and purposes following, that is to say: Whereas FairOfferCashNow, Inc. are truly and justly indebted to Justin Cutler in the sum of **THIRTY SIX THOUSAND FIFTY AND 00/100 ($36,050.00)**, evidenced by one promissory note, dated and due as follows:

One Note of Even date herewith in the amount of $36,050.00 with interest per annum due and payable in monthly installments, with the first monthly installment being due on December 1, 2021, and payable in monthly installments, with a final monthly payment of all outstanding principal and interest due in full on April 6, 2022.

The makers covenant and agree with the holders of this indebtedness that in the event the ownership of the property described in the Deed of Trust or any part thereof is sold, conveyed or becomes vested in a person or persons or corporation other than the makers, then the holders of this indebtedness may, without notice to either the maker or any third party, declare said mortgage due and payable in full. The vesting of title in any person other than the maker shall, at the option of the holder, render the full amount of the indebtedness plus accrued interest, due and payable in full.

In addition it is hereby contracted and agreed that if default is made in the payment of principal or interest, or any part thereof, and said note is placed in the hands of an attorney at law for collection or because of any litigation involving either said note or notes of the above described property, including reasonable attorneys' fees, paid to the holder thereof, and secured by this instrument. It is also hereby agreed that a fee of like amount will be paid to the Second Party if said note or notes are not placed in the hands of an attorney but collection is made by foreclosure hereof, which amount shall likewise be secured by this instrument.

In addition to the above described indebtedness, this instrument shall also secure (1) any and all other existing indebtedness or other obligations of First Party now held by the holder of the indebtedness secured hereby, hereinafter called beneficiary, and any renewals thereof regardless of maturity, and (2) any and all future indebtedness which may be hereafter created by First Party, or any of them, and be held by the beneficiary, and any renewals thereof regardless of maturity, within a period of ten years from date and up to an amount not exceeding the amount of the original indebtedness secured hereby, whether said indebtedness is evidenced by note or notes, draft, check, account, or otherwise.

Now therefore, if the said First Party shall pay to the holder of the indebtedness secured hereby, hereinafter called beneficiary, the full amount of the indebtedness above mentioned, with interest thereon and attorney's fees, if any, when the same shall become due and payable as set forth; keep all the taxes on the within conveyed property paid promptly as they become due; keep all buildings in good repair and abstain from the commission of waste on said premises; keep the buildings on said premises insured in an amount equal to the outstanding balance of the indebtedness hereby secured or the maximum insurable value of the improvements on the premises, whichever is the lesser, paying the premiums therefor, in some good and solvent fire insurance company or companies, the proceeds of which insurance shall be payable to the beneficiary herein and the policy placed in his possession, and which insurance the said First Party hereby agrees shall be written in a company or companies approved by the beneficiary hereunder, pay and keep current the payments on all prior and superior encumbrances and liens; then these presents and the estate hereby conveyed shall cease and become void. Should the First Party fail to pay any of the said taxes, attorney's fee, if any, or take out and keep up such insurance, or fail to pay or keep current the payments on any prior or superior encumbrances or lien, the beneficiary hereunder may pay any such taxes, attorney's fees, and insurance premiums, and pay or bring current such prior or superior liens or encumbrances and any such amounts so paid or advanced, together with interest from the date of payment, shall be fully protected by this deed of trust, and in addition to this protection, the payment of said amounts shall not be a waiver of the right of said beneficiary to foreclose and enforce this deed of trust. If default be made in the payment of the above mentioned indebtedness, or any part thereof, the interest thereon as it becomes due, the taxes as they become due, the said insurance premiums, or if default be made in the payment or keeping current of the payments on all prior and superior encumbrances and liens or if litigation arises involving said note or notes or the property herein described, or the employment of an attorney is necessitated for any reason, then the First Party will pay reasonable attorneys' fees for the beneficiary, and the entire indebtedness may, at the

option of the beneficiary be declared due. Thereupon the Second Party shall at the request of the beneficiary hereunder, after giving notice of the time and place of sale by publishing said notice of sale at least three different times in some newspaper published in the county in which the property lies, the first of which publications shall be made at least twenty days previous to said sale (or if the amount of the indebtedness for which said property is to be sold shall not exceed $200.00, after the publication of said sale for at least thirty days by written notices posted in at least five of the most public places in the county, one of which shall be at the court house door, and another in the civil district where the land lies) or as otherwise provided by law, at the time and place fixed, proceed to sell the property and premises above described and conveyed at public auction for cash, and in bar of the right and equity of redemption, and in bar of all homestead and dower rights, all of which are hereby waived and surrendered. The Second Party shall apply the proceeds of such sale first to the payment of all costs and expenses of such sale, including reasonable attorneys' or trustee's fees, which fee shall become absolutely due and payable whenever said indebtedness, or any part thereto, is placed in the hands of an attorney at law for collection, or foreclosure is commenced under this instrument by the Second Party, as the case may be; second, to the payment of the indebtedness herein secured; third, the surplus, if any, shall be paid to the First Party or his order or as otherwise required by law, provided however that the surplus, if any, may, at the option of the beneficiary, be paid into a court of competent jurisdiction in interpleader proceedings with the costs and attorneys' fees therefor to be paid out of such surplus. Bankruptcy by or against First Parties, shall likewise be an event of default.

And the First Party further covenants and agrees to keep all buildings in good repair and abstain from the commission of waste on said premises. At any time after default in payment of any part of the debt secured hereby, or any interest thereon, or upon failure to perform any of the covenants to be kept and performed by him, then the Second Party may enter upon and take possession of and rent said property and shall be required to account only for net rents received by him. The Second Party may apply said net rentals to any indebtedness secured hereby. The Second Party may also seek the appointment of a receiver for the above described premises.

In the event of fire or other loss or casualty which results in the payment of proceeds of said policy of insurors, the beneficiary shall have the option of applying all or any portion of said proceeds against the indebtedness secured hereby.

The First Party hereby agrees that the beneficiary of the indebtedness herein secured shall have, and he does hereby invest said beneficiary with, the discretionary power to appoint a substitute trustee in case of death, removal, inability, absence or refusal of the trustee herein named to comply with the provisions of this deed of trust, or for any other reason satisfactory to said beneficiary. Said designation or appointment of said substitute trustee shall be evidenced by a written instrument executed by said beneficiary and recorded in the Register's Office in the county where the land lies, and upon such appointment and registration thereof, said substitute trustee shall be invested with all the powers and authority which are vested in the Second Party and shall be authorized to do and perform any act or acts delegated by this instrument to the trustee herein named.

The First Party further agrees that in case of any sale hereunder he will at once surrender possession of said property, and will from that moment become and be tenant at will of the purchaser, and removable by process as upon forcible and unlawful detainer suit, hereby agreeing to pay the said purchaser the reasonable rental value of said premises after such sale.

It is agreed that both Parties in case of any sale of any said property shall be at liberty to bid and buy as any third person might. The Second Party shall and the beneficiary may announce the entry of any bid instructed by the beneficiary. Qualification and bond under the statute are hereby waived.

The designation of the parties to this instrument in the singular shall be applied to and include the plural and the use of the masculine pronoun shall likewise include the feminine and the neuter, as required. All references to parties shall include their heirs, executors, administrators, personal representatives, successors, and assigns and be binding thereon and accrue to the benefit thereof.

**In Witness Whereof**, the said First Party has hereunto set his hand and seal the day and year first above written.

FairOfferCashNow, Inc. a Tennessee Corporation

By: _____
Brad Smotherman, Authorized Signer


STATE OF TENNESSEE
COUNTY OF _Rutherford_

Before me, _Brad Smotherman_ of the state and county mentioned, personally appeared Brad Smotherman, with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who, upon oath, acknowledged such person to be Authorized Signer of FairOfferCashNow, Inc., the within named bargainor, a Corporation, and that such Brad Smotherman as such Authorized Signer, executed the foregoing instrument for the purpose therein contained, by personally signing the name of the Corporation as Authorized Signer.

Witness my hand and seal, at office in _M'boro_, this 8th day of October, 2021.

_____
Notary Signature

Printed Name: _Abbigail Thomson_

My commission expires: _April 19, 2025_



# Continuing Guaranty

In consideration of **Justin Cutler** giving or extending credit to **FairOfferCashNow, Inc.,** hereinafter called "Debtor", I/We hereby give this continuing guaranty to said **Justin Cutler** hereinafter called "Lender", its transferees or assigns, for the payment in full, together with all interest, attorney fees, other fees, and charges of whatsoever nature and kind, of any indebtedness, direct or contingent whether secured or unsecured, of said Debtor to said Lender up to the amount of **$36,050.00 (THIRTY SIX THOUSAND FIFTY AND 00/100).** Whether due or to become due, and whether now existing or hereafter arising. The Lender may, one or more times in its judgment, grant extensions, take and surrender securities, accept compositions, release or discharge endorsers, guarantor's or other parties, grant releases and discharges generally, make changes of any sort whatever in the terms of its contract or manner of doing business with the Debtor and with other parties and securities in relation thereto without notice to the undersigned, such notice being hereby specifically waived. The Lender may, without any notice to or consent of the undersigned, also apply all monies received from the debtor and others, or from securities, as it may think best, without in any way being required to marshal securities or assets, and any such application of moneys shall not in any way alter, affect, or limit or lessen the liability of the undersigned under this Guaranty. The Lender shall not be bound to exhaust its recourse against the Debtor or other persons or upon the securities it may hold before being entitled to payment from the undersigned of the amount hereby guaranteed. I/We do furthermore bind and obligate myself, my heirs and assigns jointly and severally with said Debtor, for payment of the said indebtedness precisely as if the same had been contracted and was due or owing by me in person, hereby agreeing to and binding myself, my heirs and assigns, by all terms and conditions contained in any note or notes signed or to be signed by said Debtor, making myself a party thereto; hereby waiving all notice including notice of any such indebtedness and of demand, presentment, protest or notice of demand or non-payment and of notice of any act to establish the liability of any party on any commercial or other paper, indebtedness or obligation covered by this guaranty; I/We do further waive all notice and all pleas of discussion and division and I agree upon demand at any time to pay to said Lender, its transferees or assigns, the full amount of said indebtedness up to the amount of this guaranty, together with interest, fees and charges, as above set forth, becoming subrogated in the event of payment in full by me to the claim of said Lender, its transferees or assigns, together with whatever security it or they may hold against said indebtedness.

In the event this continuing guaranty is executed by more than one individual, it is understood and agreed that each individual shall be bound by all of the provisions of this continuing guaranty and for the payment in full of the entire amount stated above, in the same manner as if each individual were the only person executing this continuing guaranty. It is also understood and agreed that this continuing guaranty does not supersede or cancel any pre-existing guaranty or guaranties given by any of the undersigned on behalf of the borrower named above but to the contrary shall be in addition thereto.

It is expressly agreed that this continuing guaranty is absolute and complete, and that acceptance and notice of acceptance thereof by the Lender are therefore unnecessary and they are hereby expressly waived, and the same shall continue in force until written notice of its discontinuance shall be delivered to one of the executive officers of the said Lender, but such discontinuance shall not affect my liability on any debts and/or obligations of the Debtor then existing nor the liability of any other party in the premises.

_____
Brad Smotherman, Guarantor

PREPARED BY:
Greater Nashville Title, LLC
4603 Gallatin Pike
Nashville, TN 37216
615-865-1470

The MAXIMUM PRINCIPAL INDEBTEDNESS for Tennessee Recording Tax Purposes is $309,000.00.

## DEED OF TRUST

**1. DATE AND PARTIES.** The date of this Deed of Trust (Security Instrument) is 14th day of March, 2024 and the parties, their addresses and tax identification numbers, if required, are as follows:

GRANTOR:     FairOfferCashNow, Inc., P.O. Box 11891, Murfreesboro, TN 37129

TRUSTEE:     Greater Nashville Title, LLC, a resident of Davidson County, Tennessee
             4603 Gallatin Pike, Nashville, TN 37216

LENDER:      Justin Cutler
             1204 15th Avenue South, Nashville, TN 37212

**2. CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (defined below) and Grantor's performance under this Security Instrument, Grantor irrevocably grants, conveys and sells to Trustee, in trust for benefit of Lender, with power of sale, the following described property:

### SEE EXHIBIT A

The property is located in **Roane County, Tennessee** at: **150 Loudon Highway, Kingston, TN 37763** together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, ditches, and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above (all referred to as "Property").

**3. MAXIMUM OBLIGATION LIMIT.** The total principal amount secured by this Security Instrument at any one time shall not exceed **$309,000.00.** This limitation of amount does not include interest and other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument. **Notice: Pursuant to Tenn. Code Ann. § 47-28-105, Borrower may reduce the limit on the maximum amount of total principal indebtedness to be secured under this Deed of Trust.**

**4. SECURED DEBT AND FUTURE ADVANCES.** The term "Secured Debt" is defined as follows:

A. Debt incurred under the terms of all promissory note(s), contract(s), guaranty(ies) or other evidence of debt described below and all their extensions, renewals, modifications or substitutions, ( When referencing the debts below it is suggested that you include items such as borrowers' names, note amounts, interest rates, maturity dates, etc.)

**Note of even date, and maturity date of September 14, 2024, executed simultaneously herewith**

B. All future advances from Lender to Grantor or other future obligations of Grantor to Lender under any promissory note, contract, guaranty, or other evidence of debt executed by Grantor in favor of Lender after this Security Instrument whether or not this Security instrument is specifically referenced. If more than one person signs this Security Instrument, each Grantor agrees that this Security Instrument will secure all future advances and future obligations that are given to or incurred by any one or more Grantor, or any one or more Grantor and others. All future advances and other future obligations are secured by this Security Instrument even though all or part may not yet be advanced. All future advances and other future obligations are secured as if made on the date of this Security Instrument. Nothing in this Security Instrument shall constitute a commitment to make additional or future loans or advances in any amount. Any such commitment must be agreed to in a separate writing.

C. All obligations Grantor owes to Lender, which may later arise, to the extent not prohibited by law, including but not limited to, liabilities for overdrafts relating to any deposit account agreement between Grantor and Lender.

D. All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument. This Security Instrument will not secure any other debt if Lender fails to give any required notice of the right of rescission.

**5. PAYMENTS.** Grantor agrees that all payment under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument.

**6. WARRANTY OF TITLE.** Grantor warrants that Grantor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to irrevocably grant, convey and sell the Property to Trustee, in trust, with power to sale. Grantor also warrants that the Property is unencumbered, except for encumbrances of record.

**7. PRIOR SECURITY INTERESTS.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Grantor agrees:

A. To make all payments when due and to perform or comply with all covenants.

B. To promptly deliver to Lender any notices that Grantor receives from the holder.

C. Not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written consent.

**8. CLAIMS AGAINST TITLE.** Grantor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Grantor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Grantor's payment. Grantor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Grantor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Grantor may have against parties who supply labor or materials to maintain or improve the Property.

**9. DUE ON SALE OR ENCUMBRANCE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of the Property with exception to a transfer to Benton Investment Group, LLC. This right is subject to the restrictions imposed by federal law (12 C.F.R. 59), as applicable. This covenant shall run with the Property and shall remain in effect until the Secured Debt is paid in full and this Security Instrument is released.

**10. PROPERTY CONDITION, ALTERATIONS AND INSPECTION.** Grantor will keep the Property in good condition and make all repairs that are reasonably necessary. Grantor shall not commit or allow any waste, impairment, or deterioration of the Property. Grantor will keep the Property free of noxious weeds and grasses. Grantor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Grantor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Grantor will notify Lender of all demands, proceedings, claims and actions against Grantor, and of any loss or damage to the Property. Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Grantor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Grantor will in no way rely on Lender's inspection.

**11. AUTHORITY TO PERFORM.** If Grantor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Grantor appoints Lender as attorney in fact to sign Grantor's name or pay any amount necessary for performance. Lender's right to perform for Grantor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may take all steps necessary to

protect Lender's security interest in the Property, including completion of the construction.

**12. ASSIGNMENT OF LEASES AND RENTS.** Grantor irrevocably grants, conveys and sells to Trustee, in trust for the benefit of Lender, as additional security all the right, title and interest in and to any and all existing or future leases, subleases, and any other written or verbal agreements for the use and occupancy of any portion of the Property, including any extensions, renewals, modifications or substitutions of such agreements (all referred to as "Leases") and rents, issues and profits (all referred to as "Rents"). Grantor will promptly provide Lender with true and correct copies of all existing and future Leases. Grantor may collect, receive, enjoy and use the Rents so long as Grantor is not in default under the terms of this Security Instrument. Grantor agrees that this assignment is immediately effective between the parties to this Security Instrument and effective as to third parties on the recording of this Deed of Trust. This assignment will remain in effect during any redemption period until the Secured Debt is satisfied. Grantor agrees that Lender or Trustee may take actual possession of the Property without the necessity of commencing legal action and that actual possession is deemed to occur when Lender, or its agent, notifies Grantor of default and demands that any tenant pay all future Rents directly to Lender. On receiving notice of default, Grantor will endorse and deliver to Lender any payment of Rents in Grantor's possession and will receive any Rents in trust for Lender and will not commingle the Rents with any other funds. Any amounts collected will be applied in this Security Instrument. Grantor warranty that no default exists under the Leases or any applicable landlord/tenant law. Grantor also agrees to maintain and require any tenant to comply with the terms of the Leases and applicable law.

**13. LEASEHOLDS; CONDOMINIUMS; PLANNED UNIT DEVELOPMENTS.** Grantor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the Property includes a unit in a condominium or a planned unit development, Grantor will perform all of Grantor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

**14. DEFAULT.** Grantor will be in default in any party obligated on the Secured Debt fails to make payment when due. Grantor will be in default if a breach occurs under the terms of this Security Instrument or any other document executed for the purpose of creating, securing, or guarantying the Secured Debt. A good faith belief by Lender that Lender at any time is insecure with respect to any person or entity obligated on the Secured Debt or that the prospect of any payment or the value of the Property is impaired shall also constitute an event of default.

**15. REMEDIES ON DEFAULT.** In some instances, federal and state law will require Lender to provide Grantor with notice of the right to cure or other notices and may establish time schedules for foreclosure actions. Subject to these limitations, if any, Lender may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by law if Grantor is in default. At the option of Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. In addition, Lender shall be entitled to all the remedies provided by law, the terms of the Secured Debt, this Security Instrument, and any related documents, including without limitation, the power to sell the Property. If there is a default, Trustee shall, in addition to any other permitted remedy, at the request of the Lender, advertise and sell the Property as a whole or in separate parcels at public outcry of the Property to the highest bidder for cash and convey absolute title free and clear of all right, title and interest of Grantor at such time and place as Trustee designates. Trustee shall give notice of sale including the time, terms and place of sale and a description of the Property to be sold as required by the applicable law in effect at the time of the proposed sale. Upon sale of the Property and to the extent not prohibited by law, Trustee shall make and deliver a deed to the Property sold which conveys absolute title to the purchaser, and after first paying all fees, charges and costs, shall pay to Lender all moneys advanced for repairs, taxes, insurance, liens, assessments, and prior encumbrances and interest thereon, and the principal and interest on the Secured Debt, paying the surplus, if any, to Grantor. Lender may purchase the Property. The recitals in any deed of conveyance shall be prima facie evidence of the facts set forth therein. All remedies are distinct, cumulative, and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether or not expressly set forth. The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require complete cure of any existing default. By not exercising any remedy on Grantor's default, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

**16. EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** Except when prohibited by law, Grantor agrees to pay all of Lender's expenses if **Grantor** breaches any covenant in this Security Instrument. Grantor will also pay on demand any amount incurred by Lender for insuring, inspecting, preserving or otherwise protecting the Property and Lender's security interest. These expenses will bear interest from the date of the payment until paid in full at the highest interest rate in effect as provided in terms of the Secured

Debt. Grantor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount may include, but is not limited to, attorneys' fees, court costs, and other legal expenses. This Security Instrument shall remain in effect until released.

**17. ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), and all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substance defined as "hazardous material," " toxic substances," "hazardous waste," "hazardous substance," or "regulated substance," under any Environmental Law. Grantor represents, warrants and agrees that:

    A. Except as previously disclosed and acknowledged in writing to Lender, on Hazardous Substance is or will be located, stored or released on or in the Property. This restriction does not apply to small quantities of Hazardous Substances that are generally recognized to be appropriate for the normal use and maintenance of the Property.

    B. Except as previously disclosed and acknowledged in writing to Lender, Grantor and every tenant have been, are, and shall remain in full compliance with any applicable Environmental Law.

    C. Grantor shall immediately notify Lender if a release or threatened release of a Hazardous Substance occurs on, under or about the Property or there is a violation of any Environmental Law concerning the Property. In such an event, Grantor shall take all necessary remedial action in accordance with any Environmental Law.

    D. Grantor shall immediately notify Lender in writing as soon as Grantor has reason to believe there is any pending or threatened investigation, claim, or proceeding relating to the release or threatened release of any Hazardous Substance or the violation of any Environmental Law.

**18. CONDEMNATION.** Grantor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through, eminent domain, or any other means. Grantor authorizes Lender to intervene in Grantor's name in any of the above-described actions or claims, Grantor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other Grantor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

**19. INSURANCE.** Grantor shall keep Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires. What Lender requires pursuant to the preceding two sentences can change during the term of the Secured Debt. The insurance carrier providing the insurance shall be chosen by Grantor subject to Lender's approval, which shall not be unreasonably withheld. If Grantor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Security Instrument. All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause." Grantor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Grantor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Grantor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss in not made immediately by Grantor. Unless otherwise agreed in writing, all insurance proceeds shall be applied to the restoration or repair of the Property or the Secured Debt, whether or not then due, at Lender's option. Any  application of proceeds to principal shall not extend or postpone the due date of the scheduled payment or change the amount of any payment. Any excess will be paid to Grantor. If the Property acquired by Lender, Grantor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

**20. ESCROW FOR TAXES AND INSURANCE.** Unless otherwise provided in a separate agreement, Grantor will not be required to pay to Lender funds for taxes and insurance in escrow.

**21. FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Grantor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Grantor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Grantor's Obligations under this Security Instrument and Lender's lien status on the Property.

**22. JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Security Instrument are joint and individual. If Grantor signs this Security Instrument but does not sign an evidence of debt, Grantor does so only to mortgage Grantor's interest in the Property to secure payment of the Secured Debt and Grantor does not agree to be personally liable on the Secured Debt. If this Security Instrument secures a guaranty between Lender and Grantor, Grantor agrees to waive any rights that may prevent Lender from bringing any action or claim against Grantor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws. Grantor agrees that Lender and any party to this Security Instrument may extend, modify, or make any change in the terms of this Security Instrument or any evidence of debt without Grantor's consent. Such a change will not release Grantor from the terms of this Security Instrument. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Grantor and Lender.

**23. APPLICABLE LAW; SEVERABILITY; INTERPRETATION.** This Security Instrument is governed by the laws of the jurisdiction in which Lender is located, except to the extent otherwise required by the laws of the jurisdiction where the Property is located. This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, this section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

**24. SUCCESSOR TRUSTEE.** Lender, at Lender's option, may from time to time remove Trustee and appoint a successor trustee without any other formality than the designation in writing. The successor trustee, without conveyance of the Property, shall succeed to all the title, power and duties conferred upon Trustee by this Security Instrument and applicable law.

**25. NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Security Instrument, or any other address designated in writing. Notice to one grantor will be deemed to be notice to all grantors.

**26. WAIVERS.** Except to the extent prohibited by law, Grantor waives all rights to homestead, curtesy and dower, appraisement, and the marshalling of liens and assets relating to the Property. In addition, statutory rights of redemption by Grantor after foreclosure sale are expressly waived to the extent not prohibited by law.

**27. OTHER TERMS.** If checked, the following are applicable to this Security Instrument:

_____ **OPEN END MORTGAGE.** This Deed of Trust is an "Open End Mortgage" as defined under Tenn. Code Anno, g 47-28-103 and secures the Secured Debt which includes a revolving line of credit provision. The Secured Debt is due and payable on _____ if not paid earlier. The due date may not be more than twenty years after the date of the Secured Debt. Although the Secured Debt may be reduced to a zero balance, this Security Instrument will remain in effect until released.

_X_ **FIXTURE FILING.** Grantor grants to Lender a security interest in all goods that Grantor owns now or in the future and that are or will become fixtures related to the Property. This Security Instrument suffices as a financing statement and any carbon, photographic or other reproduction may be filed of record for purposes of Article 9 of the Uniform Commercial Code.

_X_ **RIDERS.** The covenants and agreements of each of the riders checked below are incorporated into and supplement and amend the terms of this Security Instrument. (Check all Applicable boxes) __ **Condominium Rider** __ **Planned Unit Development Rider XX Other: Exhibit A – Legal Description** __ **Additional Terms.**

**SIGNATURES:** By signing below, Grantor agrees to the terms and covenants contained in this Security Instrument and in any attachments. Grantor also acknowledges receipt of a copy of this Security Instrument on the date stated on Page 1.

Dated: <u>March 14, 2024</u>

**FairOfferCashNow, Inc., a Tennessee Corporation**

By: _Elizabeth Reyes_
    Elizabeth Reyes, Authorized Agent

STATE OF TENNESSEE
COUNTY OF DAVIDSON

Before me, _Amber Baker_ of the state and county mentioned, personally appeared Elizabeth Reyes, Authorized Agent of FairOfferCashNow, Inc., with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who, upon oath, acknowledged such person to be Authorized Agent of FairOfferCashNow, Inc., the within named bargainor, a Corporation, and that such Elizabeth Reyes, Authorized Agent of FairOfferCashNow, Inc. as such Authorized Agent, executed the foregoing instrument for the purpose therein contained, by personally signing the name of the Corporation as Authorized Agent.

Witness my hand and seal, at office in Murfreesboro, TN this 14th day of March, 2024.

_____
Notary Signature

Printed Name: _Amber Baker_

My commission expires: _October 16, 2027_

*(Notary Seal: AMBER BAKER, STATE OF TENNESSEE, NOTARY PUBLIC, RUTHERFORD COUNTY, MY COMMISSION EXPIRES OCTOBER 16, 2027)*

**EXHIBIT A**

Situated in Roane County, Tennessee, without the corporate limits of any municipality and being more particularly described as follows:

Beginning at an iron pin in the Southwestern right of way line of State Highway 72 at the common corner of Ricketts, said iron pin being North 24 degrees 56 minutes West 418.11 feet to the right of way marker 10+84.1, 20 feet East of center line of gravel drive; thence with the aforesaid right of way line of State Highway 72, South 59 degrees 56 minutes East a distance of 251.51 feet to an iron pin at the common corner of Bacon; thence leaving the aforesaid right of way line of State Highway 72 and along a fence line marking the line of Bacon, the following two courses and distances; South 30 degrees 15 minutes West 202.88 feet to an iron pin; North 60 degrees 02 minutes West a distance of 257.49 feet to an iron pin at the common corner of Ricketts; thence with the line of Ricketts North 31 degrees 56 minutes East a distance of 203.41 feet to the point of beginning, according to the survey of Freeman Engineering and Surveying, RLS No. 1427, dated June 13, 1995.

Being the same property conveyed to Jude O'Toole by Warranty Deed from Roger Dale Myers of record in Book 1649, Page 585, Register's Office for Roane County, Tennessee, dated April 26, 2018 and recorded on May 02, 2018.

For record title, see Instrument No. _____ or Book _____, Page _____, Register's office for Roane County, recorded prior to this instrument.

**Tennessee Certification of Electronic Document**

I, Steven Disser, do hereby make oath that I am a licensed attorney and/or the custodian of the of the original version of the electronic document tendered for registration herewith and that this electronic document is a true and exact copy of the original document executed and authenticated according to law on _3-14-24_ .

_____
Affiant Signature

_3-14-24_
Date

State of Tennessee
County of Davidson

Sworn to and subscribed before me on this _14_ day of _March_ , 2024.

_____
Notary Signature

My Commission Expires: _5-9-26_

MELISSA R SHAFFER
STATE OF TENNESSEE
NOTARY PUBLIC
COUNTY OF DAVIDSON

# PERSONAL GUARANTY

**GUARANTEE OF PAYMENT AND PERFORMANCE.** For good and valuable consideration, Guarantors absolutely and unconditionally guarantee full and punctual payment and satisfaction of the Indebtedness of **FairOfferCashNow, Inc., Borrower,** to **Justin Cutler, Lender,** and the performance and discharge of all Borrower's obligations under the Note and the Related Documents dated this **14th day of March, 2024,** in the principal amount of **$309,000.00.**

This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantors even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness. Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents. Under this Guaranty, Guarantor's liability is unlimited and Guarantor's obligations are continuing.

**INDEBTEDNESS.** The word "Indebtedness" as used in this Guaranty means all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, attorneys' fees, arising from any and all debts, liabilities and obligations of every nature or form, now existing or hereafter arising or acquired, that Borrower individually or collectively or interchangeably with others, owes or will owe Lender. "Indebtedness" includes, without limitation, loans, advances, debts, lease obligations and other liabilities, obligations, and liabilities of Borrower, and any present or future judgments against Borrower, future advances, loans or transactions that renew, extend, modify, refinance, consolidate or substitute these debts, liabilities and obligations whether voluntarily or involuntarily incurred; due or to become due by their terms or acceleration; absolute or contingent; liquidated or unliquidated; determined or undetermined; direct or indirect; primary or secondary in nature or arising from a guaranty or surety; secured or unsecured; joint or several or joint and several; evidenced by a negotiable or non-negotiable instrument or writing; originated by Lender or another or others; barred or unenforceable against Borrower for any reason whatsoever; for any transactions that may be voidable for any reason (such as infancy, insanity, ultra vires or otherwise); and originated then reduced or extinguished and then afterwards increased or reinstated.

If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative. This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties. Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

**CONTINUING GUARANTY. THIS IS A " CONTINUING GUARANTY" UNDER WHICH GUARANTOR AGREES TO GUARANTEE THE FULL AND PUNCTUAL PAYMENT, PERFORMANCE AND SATISFACTION OF THE INDEBTEDNESS OF BORROWER TO LENDER, NOW EXISTING OR HEREAFTER ARISING OR ACQUIRED, ON AN OPEN AND CONTINUING BASIS. ACCORDINGLY, ANY PAYMENTS MADE ON THE INDEBTEDNESS WILL NOT DISCHARGE OR DIMINISH GUARANTOR'S OBLIGATIONS AND LIABILITY UNDER THIS GUARANTY FOR ANY REMAINING AND SUCCEEDING INDEBTEDNESS EVEN WHEN ALL OR PART OF THE OUTSTANDING INDEBTEDNESS MAY BE A ZERO BALANCE FROM TIME TO TIME.**

1

DocuSign Envelope ID: 9A5C16FD-3B65-428A-9102-8920D4E286E1

**DURATION OF GUARANTY**. This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all the Indebtedness incurred or contracted before receipt by Lender of any notice of revocation shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full. If Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing. Guarantor's written notice of revocation must be mailed to Lender, by certified mail, at Lender's address listed above or such other place as Lender may designate in writing. Written revocation of this Guaranty will apply only to new Indebtedness created after actual receipt by Lender of Guarantor's written revocation. For this purpose and without limitation, the term " new Indebtedness" does not include the Indebtedness which at the time of notice of revocation is contingent, unliquidated, undetermined or not due and which later becomes absolute, liquidated, determined or due. For this purpose and without limitation, " new Indebtedness" does not include all or part of the Indebtedness that is: incurred by Borrower prior to revocation; incurred under a commitment that became binding before revocation; any renewals, extensions, substitutions, and modifications of the Indebtedness. This Guaranty shall bind Guarantor's estate as to the Indebtedness created both before and after Guarantor's death or incapacity, regardless of Lender's actual notice of Guarantor's death. Subject to the foregoing, Guarantor's executor or administrator or other legal representative may terminate this Guaranty in the same manner in which Guarantor might have terminated it and with the same effect. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty. It is anticipated that fluctuations may occur in the aggregate amount of the Indebtedness covered by this Guaranty, and Guarantor specifically acknowledges and agrees that reductions in the amount of the Indebtedness, even to zero dollars ($0.00), shall not constitute a termination of this Guaranty. This Guaranty is binding upon Guarantor and Guarantor's heirs, successors and assigns so long as any of the Indebtedness remains unpaid and even though the Indebtedness may from time to time be zero dollars ($0.00).

Each undersigned guarantor acknowledges having read all the provisions of this guaranty and agrees to its terms. In addition, each guarantor understands that this guaranty is effective upon Guarantor's execution and delivery of this guaranty to lender and that the guaranty will continue until terminated in the manner set for in the section titled duration of guaranty.

**Guarantor(s):**

Brad Smotherman

**DATED: 03/14/2024**

2

NOTE

Date: March 14th, 2024

$309,000.00

Property Address: 150 Loudon Highway, Kingston, TN 37763

FOR VALUE RECEIVED the undersigned jointly and severally promise(s) to pay to the order **Justin Cutler,** the principal sum of **THREE HUNDRED NINE THOUSAND AND 00/100 ($309,000.00)** together with interest thereon from date at the rate of **FIFTEEN (15%)** percent per annum compounded daily until maturity, said Principal and Interest being payable at maturity or sooner. Maturity Date of this note being **September 14, 2024**, at which time balance will become due and payable. Interest will continue to accrue until the balance is paid in full.

Payments to be remitted to **1204 15ᵗʰ Avenue South, Nashville TN 37212** or at such place holder hereof may designate in writing from time to time.

I will make my monthly payment of **$3,800.00** on the **1st** day of each month, beginning on **May 1, 2024**. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before the Principal. If, on the Maturity Date, I still owe amounts under this Note, I will pay those amounts in full on that date.

Each maker or endorser severally waives demand, protest and notice of maturity, non-payment or protest and all requirements necessary to hold each of them liable as makers and endorsers and should litigation be necessary to enforce this note, each maker and endorser waives trial by jury and consents to the personal jurisdiction and venue of a court of subject matter jurisdiction located in the **State of Tennessee and County of Roane.**

Each maker and endorser further agrees, jointly and severally, to pay all costs of collection, including a reasonable attorney's fee in case the principal of this note or any payment on the principal or any interest thereon is not paid at the respective maturity thereof, or in case it becomes necessary to protect the security hereof, whether suit be brought or not.

Loan Charges: if law which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected in connection with the loan exceed the permitted limits, then (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make his refund by reducing the principal I owe under this note by making a direct payment to me. If a refund reduces the principal, the reduction will be treated as a partial prepayment. The converse of this paragraph shall apply in the event that the interest or other loan charges collected or not collected in connection with the loan are deemed to be too minimal or insufficient by applicable law. In such event, I shall make necessary payment to the Note Holder to reconcile any such deficiencies.

This note is to be construed and enforced according to the laws of the **State of Tennessee**; upon default in the payment of principal and/or interest when due, the whole sum of principal and interest remaining unpaid shall, at the option of the holder, become immediately due and payable and it shall accrue interest at the highest rate allowable by law, or, if no highest rate is otherwise indicated, at eighteen (18%) percent, from the date of default.

If the Note Holder has not received the full amount of any payment by that payment's due date, Borrower will pay a late fee to the Note Holder of 10% of the amount of the overdue payment that remains unpaid more than one day after its due date.

Borrower shall not permit or cause any other encumbrance other than the deed of trust to be recorded pursuant to this loan. Borrower agrees that the recordation of any other lien that is superior or inferior to the deed of trust to be recorded in connection with this indebtedness established by this Promissory Note shall be an event of default which shall entitle the holder of the deed of trust to all rights and remedies established by the deed of trust.

Unless specifically disallowed by law, should litigation arise hereunder, service of process therefore may be obtained through certified mail, return receipt requested; the parties hereto waiving any and all rights they may have to object to the method by which service was perfected.

FairOfferCashNow, Inc., a Tennessee Corporation

By: _Elizabeth Reyes_

Elizabeth Reyes, Authorized Agent

# Commercial Loan Purpose Disclosure

| | |
|---|---|
| Applicant Name: | FairOfferCashNow, Inc. |
| Applicant Phone: | 615-785-7149 |
| Applicant Email: | transactions@fairoffercashnow.com |
| Applicant Mailing Address: | PO BOX 11891, Murfreesboro, TN 37129 |
| Property Address: | 150 Loudon Highway, Kingston, TN 37763 |

The financing for which this application is completed is for Business, Investment, or Commercial Purposes only and is not for Personal, Household or Family use as is defined in the laws of the United States as they now exist.

Notwithstanding that the property for which this financing application is completed may consist of single or multi-family structures ultimately used for residential purposes by end buyer, I/we am/are purchasing the property for commercial purposes as part of my/our business and for the purpose of making a profit.

Any provisions relating to protections, rights, obligations or other matters relating to financing made for personal, household or family uses are not applicable to this commercial purpose loan. I represent that I understand the difference between a consumer loan for personal purposes and a commercial loan for business purposes.

I realize the lender, broker, assignees, or successors rely upon the information contained in this disclosure and this disclosure is made to induce lender to make a commercial loan secured by a deed of trust or mortgage on the property described above, and I agree that the lender would not make a commercial loan if the facts were contrary to those contained in this disclosure.

I, FairOfferCashNow, Inc., agree to a commercial Purpose Loan.


FairOfferCashNow, Inc., a Tennessee Corporation

By: _Elizabeth Reyes_
Elizabeth Reyes, Authorized Agent


Date: March 14, 2024


Interest Rate: 15%

Points: 3

Total Loan Amount: $309,000.00

NOTE

Date: November 20, 2023
$113,300.00
Property Address: 163 21st Street Hueytown, AL 35023

FOR VALUE RECEIVED the undersigned jointly and severally promise(s) to pay to the order Justin Cutler, the principal sum of ONE HUNDRED THIRTEEN THOUSAND THREE HUNDRED and 00/100 DOLLARS ($113,300.00) together with interest thereon from date at the rate of Fifteen (15.00%) percent per annum compounded daily until maturity, said Principal and Interest being payable at maturity or sooner. Maturity date of this note being May 20, 2024, at which time balance will become due and payable. Interest will continue to accrue until the balance is paid in full.

Payments to be remitted to 1204 15th Avenue South, Nashville, TN 37212 or at such place holder hereof may designate in writing from time to time.

I will pay principal and interest by making a payment monthly.

I will make my monthly payment of $1,400.00 on the 1st day of each month, beginning January 1st, 2024. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before the principal. If, on the maturity date, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

Each maker or endorser severally waives demand, protest and notice of maturity, non-payment or protest and all requirements necessary to hold each of them liable as makers and endorsers and should litigation be necessary to enforce this note, each maker and endorser waives trial by jury and consents to the personal jurisdiction and venue of a court of subject matter jurisdiction located in the State of Alabama and County of Winston.

Each maker and endorser further agree, jointly and severally, to pay all costs of collection, including a reasonable attorney's fee in case the principal of this note or any payment on the principal or any interest thereon is not paid at the respective maturity thereof, or in case it becomes necessary to protect the security hereof, whether suit be brought or not.

Loan Charges: if law which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected in connection with the loan exceed the permitted limits, then (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make his refund by reducing the principal I owe under this note by making a direct payment to me. If a refund reduces the principal, the reduction will be treated as a partial prepayment. The converse of this paragraph shall apply in the event that the interest or other loan charges collected or not collected in connection with the loan are deemed to be too minimal or insufficient by applicable law. In such event, I shall make necessary payment to the Note Holder to reconcile any such deficiencies.

This note is to be construed and enforced according to the laws of the State of Tennessee; upon default in the payment of principal and/or interest when due, the whole sum of principal and interest remaining unpaid shall, at the option of the holder, become immediately due and payable and it shall accrue interest at the highest rate allowable by law, or, if no highest rate is otherwise indicated, at eighteen (18%) percent, from the date of default.

If the Note Holder has not received the full amount of any payment by that payment's due date, Borrower will pay a late fee to the Note Holder. The late fee will be 10% of the amount of the overdue payment that remains unpaid more than one day after its due date.

Borrower shall not permit or cause any other encumbrance other than the deed of trust to be recorded pursuant to this loan. Borrower agrees that the recordation of any other lien that is superior or inferior to the deed of trust to be recorded in connection with this indebtedness established by this Promissory Note shall be an event of default which shall entitle the holder of the deed of trust to all rights and remedies established by the deed of trust.

Unless specifically disallowed by law, should litigation arise hereunder, service of process therefore may be obtained through certified mail, return receipt requested; the parties hereto waiving any and all rights they may have to object to the method by which service was perfected.

FairOfferCashNow, Inc.

By: Elizabeth Reyes
Its: Authorized Signer

Authority Title and Escrow of Alabama
4100 Market Street Southwest
Ste 100
Huntsville, AL 35808
(256) 800-2294

ALTA Combined Settlement Statement

| File #: | AL-23-1635 | Property | 163 21st Street | Settlement Date | 11/20/2023 |
| Prepared: | 11/17/2023 | | Hueytown, AL 35023 | Disbursement Date | 11/20/2023 |
| Escrow Officer: | Geralyn Donnelly | Buyer | FairOfferCashNow, Inc. | | |
| | | | PO Box 11891 | | |
| | | | Murfreesboro, TN 37129 | | |
| | | Seller | Lucas D. McLaughlin and | | |
| | | | Kristi L. McLaughlin | | |
| | | | 173 21st street | | |
| | | | Hueytown, AL 35023 | | |
| | | Lender | Justin Cutler | | |
| | | | 1204 15th Avenue South | | |
| | | | Nashville, TN 37212 | | |

| Seller | | | Buyer | |
| Debit | Credit | | Debit | Credit |
|---|---|---|---|---|
| | | **Financial** | | |
| | $110,000.00 | Sales Price of Property | $110,000.00 | |
| | | Loan Amount | | $113,300.00 |
| | | | | |
| | | **Prorations/Adjustments** | | |
| $122.00 | | County Taxes 10/01/2023 to 11/20/2023 | | $122.00 |
| | $500.00 | Reimbursement | $500.00 | |
| | | | | |
| | | **Loan Charges** | | |
| | | Points to Justin Cutler | $3,300.00 | |
| | | | | |
| | | **Payoff(s)** | | |
| $94,085.12 | | Payoff to Pennymac | | |
| | | Principal : $94,085.12 | | |
| | | | | |
| | | **Government Recording and Transfer Charges** | | |
| | | Recording Fees | $62.00 | |
| | | ---Deed: $25.00 | | |
| | | ---Mortgage: $37.00 | | |
| | | Deed Tax - State (Deed) to Jefferson (Birmingham Division) Recording Recording Office | $0.50 | |
| | | E-Recording Filing Fee | $10.00 | |
| | | Mortgage Tax - State (Mortgage) to Jefferson (Birmingham Division) Recording Recording Office | $169.95 | |
| | | | | |
| | | **Title Charges & Escrow / Settlement Charges** | | |
| | | Title - Closing Fee Buyer to Authority Title and Escrow of Alabama | $500.00 | |
| | | Title - Courier Fee to Authority Title and Escrow of Alabama | $100.00 | |
| | | Title - Deed Prep Fee to Geoffrey Middleton | $200.00 | |
| | | Title - Doc Prep Fee to Authority Title and Escrow of Alabama | $250.00 | |
| | | Title - Exam Fee to Authority Title and Escrow of Alabama | $300.00 | |
| | | Title - Lender's Title Policy to Fidelity National Title Insurance Company | $278.00 | |
| | | Title - Mobile Notary Fee to PDQ Notary, Inc | $200.00 | |
| | | Title - Search Fee to Authority Title and Escrow of Alabama | $300.00 | |
| | | Title - Wire Fee to Authority Title and Escrow of Alabama | $75.00 | |
| | | Title - Owner's Title Policy to Fidelity National Title Insurance Company | $230.00 | |

Case 3:24-bk-03495   Claim 5-1 Part 3   Filed 10/14/24   Desc Exhibit Note & DOT
Page 3 of 10

| Seller | | | Buyer | |
|---|---|---|---|---|
| Debit | Credit | | Debit | Credit |
| | | **Miscellaneous** | | |
| $891.96 | | 2023 County Taxes to Jefferson County | | |

| Seller | | | Buyer | |
|---|---|---|---|---|
| Debit | Credit | | Debit | Credit |
| $95,099.08 | $110,500.00 | Subtotals | $116,475.45 | $113,422.00 |
| | | Due from Buyer | | $3,053.45 |
| $15,400.92 | | Due to Seller | | |
| $110,500.00 | $110,500.00 | Totals | $116,475.45 | $116,475.45 |

**Acknowledgement**

We/I have carefully reviewed the Settlement Statement and find it to be a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction and further certify that I have received a copy of the Settlement Statement.
We/I authorize Authority Title and Escrow of Alabama to cause the funds to be disbursed in accordance with this statement.

FairOfferCashNow, Inc., a Tennessee Corporation

By: _Elizabeth Reyes_  11/20/23
Elizabeth Reyes, authorized signatory   Date

Lucas D. McLaughlin _____ Date

Kristi L. McLaughlin _____ Date

_____ _____
Settlement Agent                Date

Produced by Authority Title and Escrow of Alabama
Using Qualia

Page 2 of 2

AL-23-1635
Printed on 11/17/2023

Case 3:24-bk-03495    Claim 5-1 Part 3    Filed 10/14/24    Desc Exhibit Note & DOT
Page 4 of 10

MORTGAGOR(S):
FAIROFFERCASHNOW, INC.
P.O. Box 11891
Murfreesboro, TN 37129

This instrument was prepared by:
Authority Title & Escrow of Alabama
4100 Market St SW Ste 100
Huntsville, AL 35808

STATE OF ALABAMA )
COUNTY OF JEFFERSON )

REAL ESTATE MORTGAGE
AND
SECURITY AGREEMENT

KNOW ALL MEN BY THESE PRESENTS: that

WHEREAS, FAIROFFERCASHNOW, INC., a Tennessee Corporation, whose address is, P.O. Box 11891, Murfreesboro, TN 37129 (hereinafter referred to as "Mortgagor) has become justly indebted to Justin Cutler, whose address is 1204 15th Avenue South, Nashville, TN 37212, (together with its successors and assigns, hereinafter called "Mortgagee") in the sum of ONE HUNDRED THIRTEEN THOUSAND THREE HUNDRED and 00/100 DOLLARS ($113,300.00) together with interest thereon, as evidenced by a promissory note of even date, with a maturity date of May 20, 2024.

NOW, THEREFORE, in consideration of the premises and in order to secure the payment of said indebtedness and renewals or extensions thereof and all other indebtedness (including future advances) now or hereafter owed by any of the above-named to Mortgagee, whether such indebtedness is primary or secondary, direct or indirect, contingent or absolute, matured or unmatured, joint or several, and otherwise secured or not, and to secure compliance with all the covenants and stipulations hereinafter contained, the undersigned , FAIROFFERCASHNOW, INC., a Tennessee corporation (hereinafter called "Mortgagor") does hereby assign, grant, bargain sell and convey unto Mortgagee the following described real property located at 163 21st Street Hueytown, AL 35023, being situated in Jefferson County, State of Alabama, viz:

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF FOR LEGAL DESCRIPTION.

This is a purchase money mortgage.

Together with all rents and other revenues thereof and all rights, privileges, easements, tenements, interests, improvements and appurtenances thereunto belonging or in anywise appertaining, including any after-acquired title and easements and all rights, title and interest now or hereafter owned by Mortgagor in and to all buildings and improvements, storm and screen windows and doors, gas, steam, electric, solar and other heating, lighting, ventilating, air-conditioning, refrigerating and cooking apparatus, elevators, plumbing, sprinkling, smoke, fire, and intrusion detection devices, and other equipment and fixtures now or hereafter attached or appertaining to said premises, all of which shall be deemed to be real property and conveyed by this mortgage, and all of which real property, equipment and fixtures are sometimes hereinafter called the "mortgaged property".

TO HAVE AND TO HOLD the same and every part thereof unto the Mortgagee, its successors and assigns forever.

And for the consideration aforesaid, and as additional security for all of the indebtedness described above, Mortgagor hereby assigns and transfers to Mortgagee, and grant to Mortgagee a security interest in, all building materials, household appliances, equipment, fixtures and fittings of every kind or character now owned or hereafter acquired by Mortgagor, or any of them, located, whether permanently or temporarily, on the mortgaged property, and all building materials, household appliances, equipment, fixtures and fittings now owned or hereafter acquired by Mortgagor, or any of them, located or stored on any other real property, which are or shall be purchased by Mortgagor, or any of them, for the purpose, or with the intention, of making improvements on the mortgaged property or to the premises located on said property. The personal property herein transferred includes, without limitation, all lumber, bricks, building stones, building blocks, sand, cement, roofing materials, paint, doors, windows, storm doors, storm windows, nails, wires and wiring, hardware, plumbing and plumbing fixtures, heating and air conditioning equipment and appliances, electrical and gas equipment and appliances, pipes and piping, ornamental and decorative fixtures, and in general all building materials, equipment and appliances of every kind and character used or useful in connection with improvements to real property.

For the purpose of further securing the payment of said indebtedness Mortgagor warrants, covenants and agrees with Mortgagee, its successors and assigns, as follows:

1. That it is lawfully seized in fee and possessed of the mortgaged property and has a good right to convey the same as aforesaid, that it will warrant and forever defend the title against the lawful claims of all persons whomsoever, and that the mortgaged property is free and clear of all encumbrances, easements and restrictions not herein specifically mentioned.

2. That it will pay all taxes, assessments, or other liens taking priority over this mortgage when imposed upon the mortgaged property, and should default be made in the payment of the same, or any part thereof, Mortgagee may pay the same (but Mortgagee is not obligated to do so).

3. That it will keep the buildings on the mortgaged property continuously insured in such amounts, in such manner and with such companies as may be satisfactory to Mortgagee against loss by fire (including so-called extended coverage), wind and such other hazards (including flood and water damage) as Mortgagee may specify from time to time, with loss, if any, payable to Mortgagee, and will deposit with Mortgagee policies of such insurance or, at Mortgagee's election, certificates thereof, and will pay the premiums therefore as the same become due. Mortgagor shall have the right to provide such insurance through a policy or policies independently obtained and paid for by Mortgagor or through an existing policy. Mortgagee may, for reasonable cause, refuse to accept any policy of insurance obtained by Mortgagor. Mortgagor shall give immediate notice in writing to Mortgagee of any loss or damage to the mortgaged property from any cause whatever. If Mortgagor fails to keep said property insured as above specified, Mortgagee may insure said property (but Mortgagee is not obligated to do so) for its insurable value against loss by fire, wind and other hazards for the benefit of Mortgagor and Mortgagee or for the benefit of Mortgagee alone, at Mortgagee's election. The proceeds of such insurance shall be paid by the insurer to Mortgagee, which is hereby granted full power to settle and compromise claims under all policies, to endorse in the name of Mortgagor any check or draft representing the proceeds of any such insurance, and to demand, receive and give receipt for all sums becoming due thereunder. Said insurance proceeds, if collected, may be credited on the indebtedness secured by this mortgage, less costs of collection, or may be used in repairing or reconstructing the premises on the mortgaged property, at Mortgagee's election. Any application of the insurance proceeds to repairing or

reconstructing premises on the mortgaged property shall not extend or postpone the due date of any installment payments of the indebtedness hereby secured or reduce the amount of such installments.

4. That commencing upon written request by Mortgagee and continuing until the indebtedness secured hereby is paid in full, Mortgagor will pay to Mortgagee concurrently with, and on the due dates of, payments on the indebtedness hereby secured a sum equal to the ground rents, if any, next due on the mortgaged property, plus the premiums that will next become due and payable on policies of fire and other hazard insurance covering the mortgaged property, plus water rents, fire district charges, taxes and assessments next due on the mortgaged property (all as estimated by Mortgagee), less any sums already paid to Mortgagee therefore, divided by the number of months or other payment periods to elapse before one month or payment period prior to the date when such ground rents, premiums, water rents, fire district charges, taxes and assessments will become due, such sums to be held by Mortgagee in trust, to pay said ground rents, premiums, water rents, fire district charges, taxes and assessments. All payments mentioned in the preceding sentence and the payments to be made on the indebtedness secured hereby shall be added together and the aggregate amount thereof shall be paid by Mortgagor each month or other payment period in a single payment to be applied by Mortgagee to the following items in order set forth: (a) ground rents, taxes, water rents, fire district charges, assessments, fire and other hazard insurance premiums; (b) interest on the indebtedness secured hereby; and (c) the balance, if any, shall be applied toward the payment of the sum hereby secured. Any deficiency in the amount of such aggregate monthly or other periodic payments shall constitute a default under this mortgage. Any excess funds accumulated under this paragraph after payment of the items herein mentioned shall be credited in calculating the monthly or other periodic payments of the same nature required hereunder in the subsequent year; but if the actual amount of any such items shall exceed the estimate therefore, Mortgagor shall without demand forthwith make good the deficiency. Failure by Mortgagor to do so before the due date of such item shall be a default hereunder. If the mortgaged property is sold under foreclosure or is otherwise acquired by Mortgagee after default, any remaining balance of the accumulations under this paragraph shall be credited to the principal of the secured indebtedness as of the date of the foreclosure sale or as of the date the property is otherwise acquired.

5. That it will take good care of the mortgaged property and the personal property described above and will not commit or permit any waste thereon or thereof, and that it will keep the same repaired and at all times will maintain the same in as good condition as it now is, reasonable wear and tear alone excepted. If Mortgagor fails to make repairs to the mortgaged property, Mortgagee may make such repairs at Mortgagor' expense (but Mortgagee is not obligated to do so). Mortgagee, its agents and employees, may enter the mortgaged property and any improvements thereon at any reasonable time for the purpose of inspecting or repairing such improvements.

6. That all amounts expended by Mortgagee for insurance or for the payment of taxes or assessments or to discharge liens on the mortgaged property or any improvements thereon shall become a debt due Mortgagee, shall be payable at once without demand upon or notice to any person, shall bear interest at the rate of interest payable on the principal sum of the note described above, or if no such rate of interest is specified in the note or if the rate specified would be unlawful, at the rate of 12% per annum from the date of payment by Mortgagee, and such debt and the interest thereon shall be secured by this mortgage. Upon failure of Mortgagor to reimburse Mortgagee for all amounts so expended, at the election of Mortgagee and with or without notice to any person, Mortgagee may declare the entire indebtedness secured by this mortgage due and payable and may foreclose this mortgage as hereinafter provided or as provided by law.

7. That no delay or failure of Mortgagee to exercise any option to declare the maturity of any debt secured by this mortgage shall be taken or deemed as a waiver of the right to exercise such option or to declare such forfeiture either as to past or present defaults on the part of Mortgagor, and that the procurement of insurance or payment of taxes or other liens or assessments or obligations by Mortgagee shall not be taken or deemed as a waiver of the right to accelerate the maturity of the indebtedness hereby secured by reason of the failure of Mortgagor to procure such insurance or to pay such taxes, liens, assessments or obligations, it being agreed by Mortgagor that no terms or conditions contained in this mortgage can be waived, altered or changed except by a writing signed by Mortgagee.

8. That the Mortgagor who is obligated to pay the indebtedness hereby secured will well and truly pay and discharge such indebtedness as it shall become due and payable, including the note or notes described above, any renewals or extensions thereof, and any other notes or obligations of such Mortgagor to Mortgagee, whether now or hereafter incurred.

9. That if default shall be made in the payment of any of the indebtedness hereby secured, or in the performance of any of the terms or conditions of this mortgage, Mortgagee may proceed to collect the rent, income and profits from the mortgaged property, either with or without the appointment of a receiver (to which appointment Mortgagor hereby consent), and Mortgagee may notify the lessees or other payors thereof to make payment directly to Mortgagee. Any rents, income and profits collected by Mortgagee prior to foreclosure of this mortgage, less the costs of collecting the same, including any real estate or property management commissions and attorney's fees incurred, shall be credited first to advances made by Mortgagee and the interest thereon, then to interest due on the indebtedness hereby secured, and the remainder, if any, shall be applied toward the payment of the principal sum hereby secured.

10. That if possession of the mortgaged property is allowed to remain in any other person or entity to the exclusion of Mortgagor for a period of one year or more, or if all or any part of the mortgaged property or any interest therein is sold, assigned, transferred or conveyed by Mortgagor, or any of them, without Mortgagee's prior written consent, excluding only (a) the creation of a lien or encumbrance expressly subordinate to this mortgage, (b) the creation of a purchase money security interest for household appliances, (¢) a transfer by devise, descent or by operation of law upon the death of a joint tenant, or (d) the grant of any leasehold interest of one year or less (including all mandatory or optional renewal periods) not containing an option to purchase, Mortgagee may, at Mortgagee's option declare all indebtedness secured by this mortgage to be due and payable immediately with or without notice to Mortgagor. Mortgagee may condition its consent to any such transfer of possession of, or an interest in, the mortgaged property upon the transferee's agreeing to pay a greater rate of interest on all or any part of the indebtedness secured by this mortgage or to adjust the payment schedule of all or any part of the indebtedness secured by this mortgage, upon Mortgagee's approval of the creditworthiness of the transferee, and upon the transferee's payment to Mortgagee of a reasonable transfer or assumption fee. Upon breach by Mortgagor of the covenants herein contained, Mortgagee may, at its election, proceed to foreclose this mortgage as hereinafter provided or as provided by law.

11. That all the covenants and agreements of Mortgagor herein contained shall extend to and bind its successors and assigns, and that such covenants and agreements and all options, rights, privileges and powers herein given, granted or secured to Mortgagee shall inure to the benefit of the successors and assigns of Mortgagee.

12. That the provisions of this mortgage and the note or notes secured hereby are severable, and that the invalidity or unenforceability of any provision of this mortgage or of any such note or notes shall not affect the validity and enforceability of the other provisions of this mortgage or of such note or notes. The remedies provided to Mortgagee herein are cumulative with the rights and remedies of Mortgagee at law and in equity, and such rights and remedies may be exercised concurrently and consecutively. A carbon or photostat copy of this mortgage may be filed as a financing statement in any public office.

UPON CONDITION, HOWEVER, that if Mortgagor shall well and truly pay and discharge all the indebtedness hereby secured (including future advances) as the same shall become due and payable and shall in all things do and perform all acts and agreements by them herein agreed to be done according to the tenor and effect thereof, then and in that event only this conveyance and the security interest herein granted shall be and become null and void; but should default be made in the payment of any indebtedness hereby secured or any renewals or extensions thereof or should any interest thereon remain unpaid at maturity, or should default be made in the repayment of any sum expended by Mortgagee under the authority of any provision of this mortgage, or should the interest of Mortgagee in the mortgaged property or any of the personal property described above become endangered by reason of the enforcement of any lien or encumbrance thereon, or should a petition to condemn any part of the mortgaged property be filed by any authority, person or entity having power of eminent domain, or should any law, either state or federal, be passed imposing or authorizing the imposition of a specific tax upon this mortgage or the indebtedness hereby secured or permitting or authorizing the deduction of any such tax from the principal or interest secured by this mortgage or by virtue of which any tax or assessment upon the mortgaged property shall be charged against the owner of this mortgage, or should at any time any of the covenants contained in this mortgage or in any note or other evidence of indebtedness secured hereby be declared invalid or unenforceable by any court of competent jurisdiction, or should Mortgagor fail to do and perform any other act or thing herein required or agreed to be done, then in any of said events the whole of the indebtedness hereby secured, or any portion or part thereof which may at said date not have been paid, with interest thereon, shall at once become due and payable and this mortgage subject to foreclosure at the option of Mortgagee, notice of the exercise of such option being hereby expressly waived by Mortgagor, and Mortgagee shall have the right to enter upon and take possession of the mortgaged property and after or without taking such possession to sell the same before the Court House door of the County (or the division thereof) where said property, or any substantial part of said property, is located, at public outcry for cash, after first giving notice of the time, place and terms of such sale by publication once a week for three consecutive weeks prior to said sale in some newspaper published in said County; and upon the payment of the purchase price, Mortgagee or the auctioneer at said sale is authorized to execute to the purchaser for and in the name of Mortgagor a good and sufficient deed to the property sold. And upon the occurrence of any such event, Mortgagee shall have the rights and remedies of a secured party after default by its debtor under the Alabama Uniform Commercial Code, including, without limitation, the right to take possession of any of the property herein transferred which is personal property and to sell the same at one or more public or private sales, at the election of Mortgagee. At Mortgagee's request, Mortgagor agrees to assemble such property and to make the same available to Mortgagee at such place as Mortgagee shall reasonably designate. Mortgagor agrees that notice of the time and place of any public sale or of the time after which any private sale or other intended or disposition of said property, or of any part thereof, will be held shall be sufficient if delivered to Mortgagor or mailed to Mortgagor at the address set forth above, or such other address as Mortgagor shall have furnished to Mortgagee in writing for that purpose, not less than five days before the date of such sale or other intended disposition of said property. Mortgagee shall apply the proceeds of said sale or sales under this mortgage as follows: First, to the expense of advertising, selling and conveying, including a reasonable attorneys' fee not exceeding 15% of the unpaid

debt after default if the original amount financed exceeded $300; second, to the payment of any amounts that may have been expended or that may then be necessary to expend in paying insurance, taxes and other encumbrances, with interest thereon; third, to the payment of the indebtedness hereby secured and interest thereon in such order as Mortgagee may elect, whether such debts shall or shall not have fully matured at the date of sale; and fourth, the balance, if any, to be paid over to Mortgagor or to whomsoever then appears of record to be the owner of Mortgagor's interest in said property. Mortgagee may bid and become the purchaser of the mortgaged property at any foreclosure sale hereunder. Mortgagor hereby waives any requirement that the mortgaged property be sold in separate tracts and agree that Mortgagee may, at its option, sell said property en masse regardless of the number of parcels hereby conveyed.

IN WITNESS WHEREOF, the undersigned has hereunto set his signature and seal or has caused this instrument to be executed by its officer(s) thereunto duly authorized, this 20th day of November, 2023.

FAIROFFERCASHNOW, INC.
a Tennessee corporation

BY: _Elizabeth Reyes_
Elizabeth Reyes
Its: Authorized Signer

STATE OF TENNESSEE )
Rutherford COUNTY )

I, the undersigned, a Notary Public in and for said County, in said State, hereby certify that Elizabeth Reyes, whose name as Authorized signer of FAIROFFERCASHNOW, INC., a Tennessee corporation, is signed to the foregoing conveyance and who is known to me, acknowledged before me on this day that, being informed of the contents of the above and foregoing Mortgage, she in his capacity as such officer and with full authority executed the same voluntarily for and as the act of said corporation.

Given under my hand and official seal this 20th day of November, 2023.

Notary Public
My Commission Expires: Oct 16, 2027

AMBER BAKER
STATE
OF
TENNESSEE
NOTARY
PUBLIC
RUTHERFORD COUNTY
MY COMMISSION EXPIRES OCTOBER 16, 2027

Authority Title and Escrow
745 South Church Street
#407
Murfreesboro, TN 37130
(615) 819-5880

ALTA Combined Settlement Statement

| File #: | AL-23-1489 | Property | 225 Duren Ball Road | Settlement Date | 07/26/2023 |
|---|---|---|---|---|---|
| Prepared: | 07/26/2023 | | Vina, AL 35593 | Disbursement Date | 07/26/2023 |
| Escrow Officer: | Geralyn Donnelly | Buyer | FairOfferCashNow, Inc | | |
| | | | PO Box 11891 | | |
| | | | Murfreesboro, TN 37129 | | |
| | | Seller | Daniel Wayne Sullivan and | | |
| | | | Mary Ann Sullivan | | |
| | | | 225 Duren Ball Road | | |
| | | | Vina, AL 35593 | | |
| | | Lender | Justin Cutler | | |
| | | | 1204 15th Avenue South | | |
| | | | Nashville, TN 37212 | | |

| Seller | | | Buyer | |
|---|---|---|---|---|
| Debit | Credit | | Debit | Credit |
| | | **Primary Charges & Credits** | | |
| | $39,985.00 | Sales Price of Property | $39,985.00 | |
| | | Loan Amount | | $92,700.00 |
| | | Future Draw | $25,000.00 | |
| | | **Prorations/Adjustments** | | |
| $542.36 | | County Taxes 10/01/2022 to 07/26/2023 | | $542.36 |
| | | **Loan Charges** | | |
| | | Origination Fee to Justin Cutler | $2,700.00 | |
| | | **Payoffs/Payments** | | |
| $33,902.95 | | Payoff to Shellpoint | | |
| | | Principal : $33,859.99 | | |
| | | Additional Interest : $42.96 | | |
| | | **Government Recording and Transfer Charges** | | |
| | | Recording Fees | $55.00 | |
| | | ---Deed: $23.00 | | |
| | | ---Mortgage: $32.00 | | |
| | | Deed Tax - State (Deed) to Franklin County Probate Office | $0.50 | |
| | | E-recording Filing Fee to Franklin County Probate Office | $10.00 | |
| | | Mortgage Tax - State (Mortgage) to Franklin County Probate Office | $139.05 | |
| | | **Title Charges** | | |
| | | Title - Closing Fee- BUYER to Authority Title and Escrow | $500.00 | |
| | | Title - Closing Fee- SELLER to Authority Title and Escrow | $500.00 | |
| | | Title - Courier Fee to Authority Title and Escrow | $100.00 | |
| | | Title - Deed Prep Fee to Geoffrey Middleton | $200.00 | |
| | | Title - Document Prep Fee to Authority Title and Escrow | $250.00 | |
| | | Title - Exam Fee to Authority Title and Escrow | $300.00 | |
| | | Title - Lender's Title Policy to Fidelity National Title Insurance Company | $232.50 | |
| | | Title - Mobile Notary Fee to PDQ Notary Inc. | $175.00 | |
| | | Title - Search Fee to Authority Title and Escrow | $300.00 | |
| | | Title - Owner's Title Policy to Fidelity National Title Insurance Company | $165.00 | |

| Seller | | | | Buyer | |
|---|---|---|---|---|---|
| Debit | Credit | | | Debit | Credit |
| $34,445.31 | $39,985.00 | | Subtotals | $70,612.05 | $93,242.36 |
| | | | Due to Buyer | $22,630.31 | |
| $5,539.69 | | | Due to Seller | | |
| $39,985.00 | $39,985.00 | | Totals | $93,242.36 | $93,242.36 |

**Acknowledgement**

We/I have carefully reviewed the Settlement Statement and find it to be a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction and further certify that I have received a copy of the Settlement Statement.

We/I authorize Authority Title and Escrow to cause the funds to be disbursed in accordance with this statement.

FairOfferCashNow, Inc. a Tennessee Corporation

By: _[signature]_ 7/26/23                                Daniel Wayne Sullivan _____ Date
Abbigail Thompson, Authorized Signatory          Date

                                                        Mary Ann Sullivan _____ Date

_____ Settlement Agent                                    _____ Date

Authority Title and Escrow
745 South Church Street
#407
Murfreesboro, TN 37130
(615) 819-5880

| File #: | AL-23-1489 | Property | 225 Duren Ball Road | Settlement Date | 07/26/2023 |
| Prepared: | 07/26/2023 | | Vina, AL 35593 | Disbursement Date | 07/26/2023 |
| Escrow Officer: | Geralyn Donnelly | Buyer | FairOfferCashNow, Inc | | |
| | | | PO Box 11891 | | |
| | | | Murfreesboro, TN 37129 | | |
| | | Seller | Daniel Wayne Sullivan and | | |
| | | | Mary Ann Sullivan | | |
| | | | 225 Duren Ball Road | | |
| | | | Vina, AL 35593 | | |
| | | Lender | Justin Cutler | | |
| | | | 1204 15th Avenue South | | |
| | | | Nashville, TN 37212 | | |

| Seller Debit | Seller Credit | | Buyer Debit | Buyer Credit |
|---|---|---|---|---|
| | | Primary Charges & Credits | | |
| | $39,985.00 | Sales Price of Property | $39,985.00 | |
| | | Loan Amount | | $92,700.00 |
| | | Future Draw | $25,000.00 | |
| | | Prorations/Adjustments | | |
| $542.36 | | County Taxes 10/01/2022 to 07/26/2023 | | $542.36 |
| | | Loan Charges | | |
| | | Origination Fee to Justin Cutler | $2,700.00 | |
| | | Payoffs/Payments | | |
| $33,902.95 | | Payoff to Shellpoint | | |
| | | Principal : $33,859.99 | | |
| | | Additional Interest : $42.96 | | |
| | | Government Recording and Transfer Charges | | |
| | | Recording Fees | $55.00 | |
| | | ---Deed: $23.00 | | |
| | | ---Mortgage: $32.00 | | |
| | | Deed Tax - State (Deed) to Franklin County Probate Office | $0.50 | |
| | | E-recording Filing Fee to Franklin County Probate Office | $10.00 | |
| | | Mortgage Tax - State (Mortgage) to Franklin County Probate Office | $139.05 | |
| | | Title Charges | | |
| | | Title - Closing Fee- BUYER to Authority Title and Escrow | $500.00 | |
| | | Title - Closing Fee- SELLER to Authority Title and Escrow | $500.00 | |
| | | Title - Courier Fee to Authority Title and Escrow | $100.00 | |
| | | Title - Deed Prep Fee to Geoffrey Middleton | $200.00 | |
| | | Title - Document Prep Fee to Authority Title and Escrow | $250.00 | |
| | | Title - Exam Fee to Authority Title and Escrow | $300.00 | |
| | | Title - Lender's Title Policy to Fidelity National Title Insurance Company | $232.50 | |
| | | Title - Mobile Notary Fee to PDQ Notary Inc. | $175.00 | |
| | | Title - Search Fee to Authority Title and Escrow | $300.00 | |
| | | Title - Owner's Title Policy to Fidelity National Title Insurance Company | $165.00 | |

Produced by Authority Title and Escrow
Using Qualia

AL-23-1489
Printed on 07/26/2023

| Seller | | | | Buyer | |
|---|---|---|---|---|---|
| Debit | Credit | | | Debit | Credit |
| $34,445.31 | $39,985.00 | | Subtotals | $70,612.05 | $93,242.36 |
| | | | Due to Buyer | $22,630.31 | |
| $5,539.69 | | | Due to Seller | | |
| $39,985.00 | $39,985.00 | | Totals | $93,242.36 | -$93,242.36 |

**Acknowledgement**

We/I have carefully reviewed the Settlement Statement and find it to be a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction and further certify that I have received a copy of the Settlement Statement.
We/I authorize Authority Title and Escrow to cause the funds to be disbursed in accordance with this statement.

FairOfferCashNow, Inc, a Tennessee Corporation

By: _____     _____
Abbigail Thompson, Authorized Signatory                    Date

_____     _____
Daniel Wayne Sullivan                                              Date

_____     _____
Mary Ann Sullivan                                                   Date

_____     _____
Settlement Agent                                                      Date

NOTE

Date: July 26, 2023
$92,700.00
Property Address: 225 Duren Ball Road Vina, AL 35593

FOR VALUE RECEIVED the undersigned jointly and severally promise(s) to pay to the order Justin Cutler, the principal sum of Ninety-Two Thousand Seven Hundred and no/dollars ($92,700.00) together with interest thereon from date at the rate of Fifteen (15.00%) percent per annum compounded daily until maturity, said Principal and Interest being payable at maturity or sooner. Maturity date of this note being February 1, 2024, at which time balance will become due and payable. Interest will continue to accrue until the balance is paid in full.

Payments to be remitted to 1204 15th Avenue South, Nashville, TN 37212 or at such place holder hereof may designate in writing from time to time.

I will pay principal and interest by making a payment monthly.

I will make my monthly payment of $1,100.00 on the 1st day of each month, beginning in September, 2023. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before the principal. If, on the maturity date, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

Each maker or endorser severally waives demand, protest and notice of maturity, non-payment or protest and all requirements necessary to hold each of them liable as makers and endorsers and should litigation be necessary to enforce this note, each maker and endorser waives trial by jury and consents to the personal jurisdiction and venue of a court of subject matter jurisdiction located in the State of Alabama and County of Winston.

Each maker and endorser further agree, jointly and severally, to pay all costs of collection, including a reasonable attorney's fee in case the principal of this note or any payment on the principal or any interest thereon is not paid at the respective maturity thereof, or in case it becomes necessary to protect the security hereof, whether suit be brought or not.

Loan Charges: if law which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected in connection with the loan exceed the permitted limits, then (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make his refund by reducing the principal I owe under this note by making a direct payment to me. If a refund reduces the principal, the reduction will be treated as a partial prepayment. The converse of this paragraph shall apply in the event that the interest or other loan charges collected or not collected in connection with the loan are deemed to be too minimal or insufficient by applicable law. In such event, I shall make necessary payment to the Note Holder to reconcile any such deficiencies.

This note is to be construed and enforced according to the laws of the State of Tennessee; upon default in the payment of principal and/or interest when due, the whole sum of principal and interest remaining unpaid shall, at the option of the holder, become immediately due and payable and it shall accrue interest at the highest rate allowable by law, or, if no highest rate is otherwise indicated, at eighteen (18%) percent, from the date of default.

If the Note Holder has not received the full amount of any payment by that payment's due date, Borrower will pay a late fee to the Note Holder. The late fee will be 10% of the amount of the overdue payment that remains unpaid more than one day after its due date.

Borrower shall not permit or cause any other encumbrance other than the deed of trust to be recorded pursuant to this loan. Borrower agrees that the recordation of any other lien that is superior or inferior to the deed of trust to be recorded in connection with this indebtedness established by this Promissory Note shall be an event of default which shall entitle the holder of the deed of trust to all rights and remedies established by the deed of trust.

Unless specifically disallowed by law, should litigation arise hereunder, service of process therefore may be obtained through certified mail, return receipt requested; the parties hereto waiving any and all rights they may have to object to the method by which service was perfected.

FairOfferCashNow, Inc.

By: Abbigail Thompson
Its: Authorized Signer

NOTICE

A SEPARATE AFFIDAVIT MUST BE COMPLETED FOR EACH SIGNER

NOTARY AFFIDAVIT

STATE OF Tennessee }

COUNTY OF Rutherford }

I hereby certify, under the penalty of perjury, that I am authorized to act as a Notary Public, in and for the above County and State, and that in performing my duties as a Notary Public, I have complied with all applicable State and Local Laws and that I have been presented with original government issued identification which has not expired and which bears a photo or physical description and has a signature which matches the signature on the documents being executed herein. A copy of the identification is attached.

I notarized the signature of Abbigail Thompson. (Enter one name only)

Date of Notarial acknowledgement: 7/26/23

Capacity of signer: Authorized Signer

Identification used: driver's license to purchase the property located at 225 Duren Ball Road Vina, AL 35593

_Elizabeth Reyes_
NOTARY PUBLIC SIGNATURE

Elizabeth Reyes
Print Name

PO Box 11891
Print Address

Murfreesboro, TN 37129

(615) 477-7494
Phone Number



Note: This document does not require recordation

Recording requested by:

Authority Title and Escrow of Alabama
4100 Market Stree SW, Suite 100
Huntsville, AL 35808
(256) 800-2294

File Number:     AL - 23-1489

## WARRANTY DEED

KNOW ALL MEN BY THESE PRESENTS that in consideration of the sum of THIRTY NINE THOUSAND NINE HUNDRED EIGHTY FIVE AND 00/100 ($39,985.00), and other good and valuable considerations, this day paid to **Daniel Wayne Sullivan and Mary Ann Sullivan, husband and wife, of 225 Duren Ball Road, Vina, AL 35593** (henceforth referred to as "Grantor"), the receipt of which is hereby acknowledged, the GRANTOR does hereby give, grant, bargain, sell and convey unto **FairOfferCashNow, Inc., a Tennessee Corporation, of PO Box 11891, Murfreesboro, TN 37129** (henceforth referred to as "Grantee"), in fee simple, the following described real estate located at **225 Duren Ball Road, Vina, AL 35593**:

### SEE ATTACHED "EXHIBIT A"

*Source of Title: Instrument Number 383-328 in the*
*Office of the Judge of Probate of Franklin County, Alabama.*

*No Title Opinion rendered or requested by Middleton Law Firm, PLLC.*
*Title Opinion rendered by Authority Title and Escrow of Alabama.*

TO HAVE AND TO HOLD the tract or parcel of land above described, together with all the rights, privileges, tenements, appurtenances, and improvements unto the said GRANTEE, their successors and/or assigns forever.

AND SAID GRANTOR, for said GRANTOR, GRANTOR'S heirs, successors, executors and administrators, covenants with GRANTEE, and with GRANTEE'S heirs and assigns, that GRANTOR is lawfully seized in fee simple of the said Real Estate; that said Real Estate is free and clear from all Liens and Encumbrances, except as hereinabove set forth, and except for ad valorem taxes which became due and payable on October 1, 2023, restrictions, building set-back lines, and easements as shown of record, if any; and that GRANTOR will, and GRANTOR'S heirs, executors and administrators shall, warrant and defend the same to said GRANTEE, and GRANTEE'S heirs and assigns, forever, against the lawful claims of all persons.

IN WITNESS WHEREOF, Grantor has hereunto set their hand and seal this _2 6_ day of July, 2023.

_D. Wayne Sulli_
Daniel Wayne Sullivan

_Mary Ann Su_
Mary Ann Sullivan

STATE OF _Alabama_

COUNTY OF _Morgan_

I, the undersigned Notary Public in and for said County and State, hereby certify that Daniel Wayne Sullivan and Mary Ann Sullivan whose names are signed to the foregoing conveyance, and who is known to me, acknowledged before me on this day that, being informed of the contents of the conveyance, they executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this _2 6_ day of July, 2023.

_Angela C. Griffin_
Notary Public
My Commission Expires: _2 - 2 - 2027_

This Form Prepared By:
Geoffrey K. Middleton
Middleton Law Firm, PLLC
303 Williams Avenue Southwest, Suite 931
Huntsville, AL 35801
(256) 427-2760

# EXHIBIT A
## LEGAL DESCRIPTION

A parcel of land located in South half of the Northwest quarter of section 29, township 8 South, range 14 West and described as follows, to-wit; to commence at the Northeast corner of the said South half of Northwest quarter and run South along said East line of Northwest quarter, 860 feet more or less, to the point of beginning; thence continue South along the said East line of the Northwest quarter, 250 feet, more or less, to the Billy Ray Childers Property line, thence West along the Childers line 360 feet, more or less to a point; thence North parallel to the East line of the Northwest quarter, 250 feet more or less to a point, thence East parallel to the Childers Property line, 360 feet, more or less back to the point of beginning. And also a 30 feet easement for driveway and utilities the South boundary of said easement more Particularly described as follows: beginning at the Southwest corner of the above described parcel; thence North 88 degrees 12 seconds 00 minutes West along the South boundary of said easement a distance of 183.34 feet to the East right-of-way of the old Hamilton to Vina Road, more particularly described as follows: A parcel of land lying in the Southeast 1/4 of the Northwest 1/4, section 29, township 8 South, range 14 West, Franklin county, Alabama; more particularly described as follows: Starting at the Southeast corner of said Southeast 1/4 of the Northwest 1/4; thence North 01 degrees 02 seconds 52 minutes West along the East boundary of said Southeast 1/4 of said Northwest 1/4 a distance of 210.19 feet to a found 1/4 inch iron pipe being the point of beginning; thence continue North 01 degrees 02 seconds 52 minutes West along the East boundary of said Southeast 1/4 of the Northwest 1/4 a distance of 250.00 feet to a placed 1/2 inch pin with cap; thence North 84 degrees 36 seconds 06 minutes West a distance 286.37 feet to a found 1/2 inch iron pipe set by owner and grantor; thence South 14 degrees 47 seconds 41 minutes West a distance of 274.69 feet to a placed 1/2 inch pin with cap; thence South 88 degrees 12 seconds 00 minutes East parallel to the South boundary of said Southeast 1/4 of Northwest 1/4 a distance of 360.00 feet to the point of beginning. parcel contains 1.92 acres, more or less.

And

Also a 30 feet easement for driveway and utilities the South boundary of said easement more particularly described as follows: Beginning at the Southwest corner of the above described parcel; thence North 88 degrees 12 seconds 00 minutes West along the South boundary of said easement a distance of 183.34 feet to the East right-of-way of the old Hamilton to Vina Road. Less and Except road right of ways of record.

This Form Prepared By:
Geoffrey K. Middleton
Middleton Law Firm, PLLC
303 Williams Avenue Southwest, Suite 931
Huntsville, AL 35801
(256) 427-2760

## Real Estate Sales Validation Form

*This Document must be filed in accordance with Code of Alabama 1975, Section 40-22-1*

| | | | |
|---|---|---|---|
| Grantor's Name | Daniel Wayne Sullivan and Mary Ann Sullivan | Grantee's Name | FairOfferCashNow, Inc |
| | | Mailing Address | PO Box 11891 |
| Mailing Address | 225 Duren Ball Road | | Murfreesboro, TN 37129 |
| | Vina, AL 35593 | | |
| | | Date of Sale | July 26, 2023 |
| Property Address | 225 Duren Ball Road | Total Purchase Price | $39,985.00 |
| | Vina, AL 35593 | Or | |
| | | Actual Value | $ |
| | | Or | |
| | | Assessor's Market Value | $ |

The purchase price or actual value claimed on this form can be verified in the following documentary evidence: (check one) (Recordation of documentary evidence is not required)

_____ Bill of Sale                                    _____ Appraisal
_____ Sales Contract                                _____ Other: _____

_____ Closing Statement                            _____

If the conveyance document presented for recordation contains all of the required information referenced above, the filing of this form is not required.

### Instructions

Grantor's name and mailing address - provide the name of the person or persons conveying interest to property and their current mailing address.

Grantee's name and mailing address - provide the name of the person or persons to whom interest to property is being conveyed.

Property address - the physical address of the property being conveyed, if available. Date of Sale - the date on which interest to the property was conveyed.

Total purchase price - the total amount paid for the purchase of the property, both real and personal, being conveyed by the instrument offered for record.

Actual value - if the property is not being sold, the true value of the property, both real and personal, being conveyed by the instrument offered for record. This may be evidenced by an appraisal conducted by a licensed appraiser or the assessor's current market value.

If no proof is provided and the value must be determined, the current estimate of fair market value, excluding current use valuation, of the property as determined by the local official charged with the responsibility of valuing property for property tax purposes will be used and the taxpayer will be penalized pursuant to Code of Alabama 1975 § 40-22-1 (h).

I attest, to the best of my knowledge and belief that the information contained in this document is true and accurate. I further understand that any false statements claimed on this form may result in the imposition of the penalty indicated in Code of Alabama 1975 § 40-22-1 (h).

Date  7-26-2023     Print  Daniel Wayne Sullivan
                                    Mary Ann Sullivan

_____ Unattested                                    Sign  _____
              (verified by)                                  (Grantor/Grantee/ Owner/Agent) circle one

                                                                    Wayne Sullivan           Form RT-1
                                                                    Grantor

MORTGAGOR(S):
FAIROFFERCASHNOW, INC.
P.O. Box 11891
Murfreesboro, TN 37129

This instrument was prepared by:
Authority Title & Escrow of Alabama
4100 Market St SW Ste 100
Huntsville, AL 35808

STATE OF ALABAMA )
COUNTY OF FRANKLIN )

### REAL ESTATE MORTGAGE
### AND
### SECURITY AGREEMENT

KNOW ALL MEN BY THESE PRESENTS: that

WHEREAS, FAIROFFERCASHNOW, INC., a Tennessee Corporation, whose address is, P.O. Box 11891, Murfreesboro, TN 37129 (hereinafter referred to as "Mortgagor) has become justly indebted to Justin Cutler, whose address is 1204 15th Avenue South, Nashville, TN 37212, (together with its successors and assigns, hereinafter called "Mortgagee") in the sum of Ninety-Two Thousand Seven Hundred and no/dollars ($92,700.00) together with interest thereon, as evidenced by a promissory note of even date, with a maturity date of February 1, 2024.

NOW, THEREFORE, in consideration of the premises and in order to secure the payment of said indebtedness and renewals or extensions thereof and all other indebtedness (including future advances) now or hereafter owed by any of the above-named to Mortgagee, whether such indebtedness is primary or secondary, direct or indirect, contingent or absolute, matured or unmatured, joint or several, and otherwise secured or not, and to secure compliance with all the covenants and stipulations hereinafter contained, the undersigned , FAIROFFERCASHNOW, INC., a Tennessee corporation (hereinafter called "Mortgagor") does hereby assign, grant, bargain sell and convey unto Mortgagee the following described real property located at 225 Duren Ball Road Vina, AL 35593, being situated in Franklin County, State of Alabama, viz:

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF FOR LEGAL DESCRIPTION.

This is a purchase money mortgage.

Together with all rents and other revenues thereof and all rights, privileges, easements, tenements, interests, improvements and appurtenances thereunto belonging or in anywise appertaining, including any after-acquired title and easements and all rights, title and interest now or hereafter owned by Mortgagor in and to all buildings and improvements, storm and screen windows and doors, gas, steam, electric, solar and other heating, lighting, ventilating, air-conditioning, refrigerating and cooking apparatus, elevators, plumbing, sprinkling, smoke, fire, and intrusion detection devices, and other equipment and fixtures now or hereafter attached or appertaining to said premises, all of which shall be deemed to be real property and conveyed by this mortgage, and all of which real property, equipment and fixtures are sometimes hereinafter called the "mortgaged property".

TO HAVE AND TO HOLD the same and every part thereof unto the Mortgagee, its successors and assigns forever.

And for the consideration aforesaid, and as additional security for all of the indebtedness described above, Mortgagor hereby assigns and transfers to Mortgagee, and grant to Mortgagee a security interest in, all building materials, household appliances, equipment, fixtures and fittings of every kind or character now owned or hereafter acquired by Mortgagor, or any of them, located, whether permanently or temporarily, on the mortgaged property, and all building materials, household appliances, equipment, fixtures and fittings now owned or hereafter acquired by Mortgagor, or any of them, located or stored on any other real property, which are or shall be purchased by Mortgagor, or any of them, for the purpose, or with the intention, of making improvements on the mortgaged property or to the premises located on said property. The personal property herein transferred includes, without limitation, all lumber, bricks, building stones, building blocks, sand, cement, roofing materials, paint, doors, windows, storm doors, storm windows, nails, wires and wiring, hardware, plumbing and plumbing fixtures, heating and air conditioning equipment and appliances, electrical and gas equipment and appliances, pipes and piping, ornamental and decorative fixtures, and in general all building materials, equipment and appliances of every kind and character used or useful in connection with improvements to real property.

For the purpose of further securing the payment of said indebtedness Mortgagor warrants, covenants and agrees with Mortgagee, its successors and assigns, as follows:

1. That it is lawfully seized in fee and possessed of the mortgaged property and has a good right to convey the same as aforesaid, that it will warrant and forever defend the title against the lawful claims of all persons whomsoever, and that the mortgaged property is free and clear of all encumbrances, easements and restrictions not herein specifically mentioned.

2. That it will pay all taxes, assessments, or other liens taking priority over this mortgage when imposed upon the mortgaged property, and should default be made in the payment of the same, or any part thereof, Mortgagee may pay the same (but Mortgagee is not obligated to do so).

3. That it will keep the buildings on the mortgaged property continuously insured in such amounts, in such manner and with such companies as may be satisfactory to Mortgagee against loss by fire (including so-called extended coverage), wind and such other hazards (including flood and water damage) as Mortgagee may specify from time to time, with loss, if any, payable to Mortgagee, and will deposit with Mortgagee policies of such insurance or, at Mortgagee's election, certificates thereof, and will pay the premiums therefore as the same become due. Mortgagor shall have the right to provide such insurance through a policy or policies independently obtained and paid for by Mortgagor or through an existing policy. Mortgagee may, for reasonable cause, refuse to accept any policy of insurance obtained by Mortgagor. Mortgagor shall give immediate notice in writing to Mortgagee of any loss or damage to the mortgaged property from any cause whatever. If Mortgagor fails to keep said property insured as above specified, Mortgagee may insure said property (but Mortgagee is not obligated to do so) for its insurable value against loss by fire, wind and other hazards for the benefit of Mortgagor and Mortgagee or for the benefit of Mortgagee alone, at Mortgagee's election. The proceeds of such insurance shall be paid by the insurer to Mortgagee, which is hereby granted full power to settle and compromise claims under all policies, to endorse in the name of Mortgagor any check or draft representing the proceeds of any such insurance, and to demand, receive and give receipt for all sums becoming due thereunder. Said insurance proceeds, if collected, may be credited on the indebtedness secured by this mortgage, less costs of collection, or may be used in repairing or reconstructing the premises on the mortgaged property, at Mortgagee's election. Any application of the insurance proceeds to repairing or reconstructing premises on the mortgaged property shall not extend or

postpone the due date of any installment payments of the indebtedness hereby secured or reduce the amount of such installments.

4. That commencing upon written request by Mortgagee and continuing until the indebtedness secured hereby is paid in full, Mortgagor will pay to Mortgagee concurrently with, and on the due dates of, payments on the indebtedness hereby secured a sum equal to the ground rents, if any, next due on the mortgaged property, plus the premiums that will next become due and payable on policies of fire and other hazard insurance covering the mortgaged property, plus water rents, fire district charges, taxes and assessments next due on the mortgaged property (all as estimated by Mortgagee), less any sums already paid to Mortgagee therefore, divided by the number of months or other payment periods to elapse before one month or payment period prior to the date when such ground rents, premiums, water rents, fire district charges, taxes and assessments will become due, such sums to be held by Mortgagee in trust, to pay said ground rents, premiums, water rents, fire district charges, taxes and assessments. All payments mentioned in the preceding sentence and the payments to be made on the indebtedness secured hereby shall be added together and the aggregate amount thereof shall be paid by Mortgagor each month or other payment period in a single payment to be applied by Mortgagee to the following items in order set forth: (a) ground rents, taxes, water rents, fire district charges, assessments, fire and other hazard insurance premiums; (b) interest on the indebtedness secured hereby; and (c) the balance, if any, shall be applied toward the payment of the sum hereby secured. Any deficiency in the amount of such aggregate monthly or other periodic payments shall constitute a default under this mortgage. Any excess funds accumulated under this paragraph after payment of the items herein mentioned shall be credited in calculating the monthly or other periodic payments of the same nature required hereunder in the subsequent year; but if the actual amount of any such items shall exceed the estimate therefore, Mortgagor shall without demand forthwith make good the deficiency. Failure by Mortgagor to do so before the due date of such item shall be a default hereunder. If the mortgaged property is sold under foreclosure or is otherwise acquired by Mortgagee after default, any remaining balance of the accumulations under this paragraph shall be credited to the principal of the secured indebtedness as of the date of the foreclosure sale or as of the date the property is otherwise acquired.

5. That it will take good care of the mortgaged property and the personal property described above and will not commit or permit any waste thereon or thereof, and that it will keep the same repaired and at all times will maintain the same in as good condition as it now is, reasonable wear and tear alone excepted. If Mortgagor fails to make repairs to the mortgaged property, Mortgagee may make such repairs at Mortgagor' expense (but Mortgagee is not obligated to do so). Mortgagee, its agents and employees, may enter the mortgaged property and any improvements thereon at any reasonable time for the purpose of inspecting or repairing such improvements.

6. That all amounts expended by Mortgagee for insurance or for the payment of taxes or assessments or to discharge liens on the mortgaged property or any improvements thereon shall become a debt due Mortgagee, shall be payable at once without demand upon or notice to any person, shall bear interest at the rate of interest payable on the principal sum of the note described above, or if no such rate of interest is specified in the note or if the rate specified would be unlawful, at the rate of 12% per annum from the date of payment by Mortgagee, and such debt and the interest thereon shall be secured by this mortgage. Upon failure of Mortgagor to reimburse Mortgagee for all amounts so expended, at the election of Mortgagee and with or without notice to any person, Mortgagee may declare the entire indebtedness secured by this mortgage due and payable and may foreclose this mortgage as hereinafter provided or as provided by law.

7. That no delay or failure of Mortgagee to exercise any option to declare the maturity of any debt secured by this mortgage shall be taken or deemed as a waiver of the right to exercise such option or to declare such forfeiture either as to past or present defaults on the part of Mortgagor, and that the procurement of insurance or payment of taxes or other liens or assessments or obligations by Mortgagee shall not be taken or deemed as a waiver of the right to accelerate the maturity of the indebtedness hereby secured by reason of the failure of Mortgagor to procure such insurance or to pay such taxes, liens, assessments or obligations, it being agreed by Mortgagor that no terms or conditions contained in this mortgage can be waived, altered or changed except by a writing signed by Mortgagee.

8. That the Mortgagor who is obligated to pay the indebtedness hereby secured will well and truly pay and discharge such indebtedness as it shall become due and payable, including the note or notes described above, any renewals or extensions thereof, and any other notes or obligations of such Mortgagor to Mortgagee, whether now or hereafter incurred.

9. That if default shall be made in the payment of any of the indebtedness hereby secured, or in the performance of any of the terms or conditions of this mortgage, Mortgagee may proceed to collect the rent, income and profits from the mortgaged property, either with or without the appointment of a receiver (to which appointment Mortgagor hereby consent), and Mortgagee may notify the lessees or other payors thereof to make payment directly to Mortgagee. Any rents, income and profits collected by Mortgagee prior to foreclosure of this mortgage, less the costs of collecting the same, including any real estate or property management commissions and attorney's fees incurred, shall be credited first to advances made by Mortgagee and the interest thereon, then to interest due on the indebtedness hereby secured, and the remainder, if any, shall be applied toward the payment of the principal sum hereby secured.

10. That if possession of the mortgaged property is allowed to remain in any other person or entity to the exclusion of Mortgagor for a period of one year or more, or if all or any part of the mortgaged property or any interest therein is sold, assigned, transferred or conveyed by Mortgagor, or any of them, without Mortgagee's prior written consent, excluding only (a) the creation of a lien or encumbrance expressly subordinate to this mortgage, (b) the creation of a purchase money security interest for household appliances, (c) a transfer by devise, descent or by operation of law upon the death of a joint tenant, or (d) the grant of any leasehold interest of one year or less (including all mandatory or optional renewal periods) not containing an option to purchase, Mortgagee may, at Mortgagee's option declare all indebtedness secured by this mortgage to be due and payable immediately with or without notice to Mortgagor. Mortgagee may condition its consent to any such transfer of possession of, or an interest in, the mortgaged property upon the transferee's agreeing to pay a greater rate of interest on all or any part of the indebtedness secured by this mortgage or to adjust the payment schedule of all or any part of the indebtedness secured by this mortgage, upon Mortgagee's approval of the creditworthiness of the transferee, and upon the transferee's payment to Mortgagee of a reasonable transfer or assumption fee. Upon breach by Mortgagor of the covenants herein contained, Mortgagee may, at its election, proceed to foreclose this mortgage as hereinafter provided or as provided by law.

11. That all the covenants and agreements of Mortgagor herein contained shall extend to and bind its successors and assigns, and that such covenants and agreements and all options, rights, privileges and powers herein given, granted or secured to Mortgagee shall inure to the benefit of the successors and assigns of Mortgagee.

12. That the provisions of this mortgage and the note or notes secured hereby are severable, and that the invalidity or unenforceability of any provision of this mortgage or of any such note or notes shall not affect the validity and enforceability of the other provisions of this mortgage or of such note or notes. The remedies provided to Mortgagee herein are cumulative with the rights and remedies of Mortgagee at law and in equity, and such rights and remedies may be exercised concurrently and consecutively. A carbon or photostat copy of this mortgage may be filed as a financing statement in any public office.

UPON CONDITION, HOWEVER, that if Mortgagor shall well and truly pay and discharge all the indebtedness hereby secured (including future advances) as the same shall become due and payable and shall in all things do and perform all acts and agreements by them herein agreed to be done according to the tenor and effect thereof, then and in that event only this conveyance and the security interest herein granted shall be and become null and void; but should default be made in the payment of any indebtedness hereby secured or any renewals or extensions thereof or should any interest thereon remain unpaid at maturity, or should default be made in the repayment of any sum expended by Mortgagee under the authority of any provision of this mortgage, or should the interest of Mortgagee in the mortgaged property or any of the personal property described above become endangered by reason of the enforcement of any lien or encumbrance thereon, or should a petition to condemn any part of the mortgaged property be filed by any authority, person or entity having power of eminent domain, or should any law, either state or federal, be passed imposing or authorizing the imposition of a specific tax upon this mortgage or the indebtedness hereby secured or permitting or authorizing the deduction of any such tax from the principal or interest secured by this mortgage or by virtue of which any tax or assessment upon the mortgaged property shall be charged against the owner of this mortgage, or should at any time any of the covenants contained in this mortgage or in any note or other evidence of indebtedness secured hereby be declared invalid or unenforceable by any court of competent jurisdiction, or should Mortgagor fail to do and perform any other act or thing herein required or agreed to be done, then in any of said events the whole of the indebtedness hereby secured, or any portion or part thereof which may at said date not have been paid, with interest thereon, shall at once become due and payable and this mortgage subject to foreclosure at the option of Mortgagee, notice of the exercise of such option being hereby expressly waived by Mortgagor, and Mortgagee shall have the right to enter upon and take possession of the mortgaged property and after or without taking such possession to sell the same before the Court House door of the County (or the division thereof) where said property, or any substantial part of said property, is located, at public outcry for cash, after first giving notice of the time, place and terms of such sale by publication once a week for three consecutive weeks prior to said sale in some newspaper published in said County; and upon the payment of the purchase price, Mortgagee or the auctioneer at said sale is authorized to execute to the purchaser for and in the name of Mortgagor a good and sufficient deed to the property sold. And upon the occurrence of any such event, Mortgagee shall have the rights and remedies of a secured party after default by its debtor under the Alabama Uniform Commercial Code, including, without limitation, the right to take possession of any of the property herein transferred which is personal property and to sell the same at one or more public or private sales, at the election of Mortgagee. At Mortgagee's request, Mortgagor agrees to assemble such property and to make the same available to Mortgagee at such place as Mortgagee shall reasonably designate. Mortgagor agrees that notice of the time and place of any public sale or of the time after which any private sale or other intended or disposition of said property, or of any part thereof, will be held shall be sufficient if delivered to Mortgagor or mailed to Mortgagor at the address set forth above, or such other address as Mortgagor shall have furnished to Mortgagee in writing for that purpose, not less than five days before the date of such sale or other intended disposition of said property. Mortgagee shall apply the proceeds of said sale or sales under this mortgage as follows: First, to the expense of advertising, selling and conveying, including a reasonable

attorneys' fee not exceeding 15% of the unpaid debt after default if the original amount financed exceeded $300; second, to the payment of any amounts that may have been expended or that may then be necessary to expend in paying insurance, taxes and other encumbrances, with interest thereon; third, to the payment of the indebtedness hereby secured and interest thereon in such order as Mortgagee may elect, whether such debts shall or shall not have fully matured at the date of sale; and fourth, the balance, if any, to be paid over to Mortgagor or to whomsoever then appears of record to be the owner of Mortgagor's interest in said property. Mortgagee may bid and become the purchaser of the mortgaged property at any foreclosure sale hereunder. Mortgagor hereby waives any requirement that the mortgaged property be sold in separate tracts and agree that Mortgagee may, at its option, sell said property en masse regardless of the number of parcels hereby conveyed.

IN WITNESS WHEREOF, the undersigned has hereunto set his signature and seal or has caused this instrument to be executed by its officer(s) thereunto duly authorized, this 26th day of July, 2023.

FAIROFFERCASHNOW, INC.
a Tennessee corporation

BY: _____
     Abbigail Thompson
     Its: Authorized Signer

STATE OF TENNESSEE }
RUTHERFORD COUNTY }

I, the undersigned, a Notary Public in and for said County, in said State, hereby certify that Abbigail Thompson whose name as Authorized signer of FAIROFFERCASHNOW, INC., a Tennessee corporation, is signed to the foregoing conveyance and who is known to me, acknowledged before me on this day that, being informed of the contents of the above and foregoing Mortgage, she in his capacity as such officer and with full authority executed the same voluntarily for and as the act of said corporation.

Given under my hand and official seal this 26th day of July, 2023.

_____
Notary Public
My Commission Expires: Aug. 15, 2026

Exhibit A

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTY OF Franklin, STATE OF ALABAMA AND IS DESCRIBED AS FOLLOWS:

A parcel of land located in South half of the Northwest quarter of section 29, township 8 South, range 14 West and described as follows, to-wit; to commence at the Northeast corner of the said South half of Northwest quarter and run South along said East line of Northwest quarter, 860 feet more or less, to the point of beginning; thence continue South along the said East line of the Northwest quarter, 250 feet, more or less, to the Billy Ray Childers Property line, thence West along the Childers line 360 feet, more or less to a point; thence North parallel to the East line of the Northwest quarter, 250 feet more or less to a point, thence East parallel to the Childers Property line, 360 feet, more or less back to the point of beginning. And also a 30 feet easement for driveway and utilities the South boundary of said easement more Particularly described as follows: beginning at the Southwest corner of the above described parcel; thence North 88 degrees 12 seconds 00 minutes West along the South boundary of said easement a distance of 183.34 feet to the East right-of-way of the old Hamilton to Vina Road, more particularly described as follows:

A parcel of land lying in the Southeast 1/4 of the Northwest 1/4, section 29, township 8 South, range 14 West, Franklin county, Alabama; more particularly described as follows:

Starting at the Southeast corner of said Southeast 1/4 of the Northwest 1/4; thence North 01 degrees 02 seconds 52 minutes West along the East boundary of said Southeast 1/4 of said Northwest 1/4 a distance of 210.19 feet to a found 1/4 inch iron pipe being the point of beginning; thence continue North 01 degrees 02 seconds 52 minutes West along the East boundary of said Southeast 1/4 of the Northwest 1/4 a distance of 250.00 feet to a placed 1/2 inch iron pipe with cap; thence North 84 degrees 36 seconds 06 minutes West a distance 286.37 feet to a found 1/2 inch iron pipe set by owner and grantor; thence South 14 degrees 47 seconds 41 minutes West a distance of 274.69 feet to a placed 1/2 inch iron pin with cap; thence s \88 degrees 12 seconds 00 minutes East parallel to the South boundary of said Southeast 1/4 of Northwest 1/4 a distance of 360.00 feet to the point of beginning. parcel contains 1.92 acres, more or less.

And

Also a 30 feet easement for driveway and utilities the South boundary of said easement more particularly described as follows:

Beginning at the Southwest corner of the above described parcel; thence North 88 degrees 12 seconds 00 minutes West along the South boundary of said easement a distance of 183.34 feet to the East right-of-way of the old Hamilton to Vina Road.

Less and Except and road right of ways of record.

Being the same property conveyed to Daniel Wayne Sullivan and Mary Ann Sullivan, husband and wife, by Quitclaim deed from Ditech Financial LLC, successor in interest to Green Tree Servicing LLC, as successor by merger to Walter Mortgage Company, LLC of record in Book 383, page 328, Office of the Judge of Probate for Franklin County, Alabama, dated January 07, 2019 and recorded on January 22, 2019.

Being the same property conveyed to FairOfferCashNow, Inc by Warranty Deed from Daniel Wayne Sullivan and Mary Ann Sullivan, husband and wife, dated July 26, 2023, of record in Book _____, Page_____, Office of the Judge of Probate for Franklin County, Alabama

Authority Title and Escrow of Alabama
4100 Market Street Southwest
Ste 100
Huntsville, AL 35808
(256) 800-2294

**ALTA Combined Settlement Statement**

| File #: | AL-23-1436 | Property | 816 19th St. N.W. | Settlement Date | 07/26/2023 |
|---|---|---|---|---|---|
| Prepared: | 07/21/2023 | | Fayette, AL 35555 | Disbursement Date | 07/26/2023 |
| Escrow Officer: | Geralyn Donnelly | Buyer | FairOfferCashNow, Inc. | | |
| | | | PO Box 11891 | | |
| | | | Murfreesboro, TN 37129 | | |
| | | Seller | Nicholl Graves and Derrick | | |
| | | | Graves | | |
| | | | 816 19th St. N.W. | | |
| | | | Fayette, AL 35555 | | |
| | | Lender | Justin Cutler | | |
| | | | 1204 15th Avenue South | | |
| | | | Nashville, TN 37212 | | |

| | Seller | | | Buyer | |
|---|---|---|---|---|---|
| Debit | Credit | | | Debit | Credit |
| | | **Primary Charges & Credits** | | | |
| | $100,000.00 | Sales Price of Property | | $100,000.00 | |
| | | Loan Amount | | | $164,800.00 |
| | | Funds Held for Future Draw | | $30,000.00 | |
| | | | | | |
| | | **Prorations/Adjustments** | | | |
| $634.74 | | County Taxes 10/01/2022 to 07/26/2023 | | | $634.74 |
| | | | | | |
| | | **Loan Charges** | | | |
| | | Origination Fee to Justin Cutler | | $4,800.00 | |
| | | | | | |
| | | **Payoffs/Payments** | | | |
| $65,000.00 | | Payoff to Thomas S. Avent | | | |
| | | Principal : $65,000.00 | | | |
| | | | | | |
| | | **Government Recording and Transfer Charges** | | | |
| | | Recording Fees | | $49.00 | |
| | | ---Deed: $20.00 | | | |
| | | ---Mortgage: $29.00 | | | |
| | | Deed Tax (State Deed Taxes) to Fayette County Recording Office | | $0.50 | |
| | | Mortgage Tax (State Security Instrument Taxes) to Fayette County Recording Office | | $247.20 | |
| | | | | | |
| | | **Title Charges** | | | |
| | | Title - Closing Fee Buyer to Authority Title and Escrow of Alabama | | $500.00 | |
| | | Title - Closing Fee Seller to Authority Title and Escrow of Alabama | | $500.00 | |
| | | Title - Courier Fee to Authority Title and Escrow of Alabama | | $100.00 | |
| | | Title - Deed Prep to Geoffrey Middleton | | $200.00 | |
| | | Title - Doc Prep Fee to Authority Title and Escrow of Alabama | | $250.00 | |
| | | Title - Exam Fee to Authority Title and Escrow of Alabama | | $800.00 | |
| | | Title - Lender's Title Policy to Fidelity National Title Insurance Company | | $380.00 | |
| | | Title - Mobile Notary Fee to PDQ Notary, Inc | | $175.00 | |
| | | Title - Search Fee to Authority Title and Escrow of Alabama | | $300.00 | |
| | | Title - Owner's Title Policy to Fidelity National Title Insurance Company | | $225.00 | |



|  | Seller | | | Buyer | |
|---|---|---|---|---|---|
|  | Debit | Credit |  | Debit | Credit |
|  | $65,634.74 | $100,000.00 | Subtotals | $138,026.70 | $165,434.74 |
|  |  |  | Due to Buyer | $27,408.04 |  |
|  | $34,365.26 |  | Due to Seller |  |  |
|  | $100,000.00 | $100,000.00 | Totals | $165,434.74 | $165,434.74 |

**Acknowledgement**

We/I have carefully reviewed the Settlement Statement and find it to be a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction and further certify that I have received a copy of the Settlement Statement.

We/I authorize Authority Title and Escrow of Alabama to cause the funds to be disbursed in accordance with this statement.

FairOfferCashNow, Inc., a Tennessee Corporation

By: _____ 7/26/23     _____ _____
Abbigail Thompson, Authorized Signatory     Date        Nicholl Graves                Date

_____ _____
Derrick Graves                Date

_____ 7/26/23
Settlement Agent                Date

Produced by Authority Title and Escrow of Alabama
Using Qualia
Page 2 of 2
AL-23-1436
Printed on 07/21/2023

Case 3:24-bk-03495   Claim 7-1 Part 3   Filed 10/14/24   Desc Exhibit Deed & DOT
Page 2 of 12

NOTE

Date: July 26, 2023
$164,800.00
Property Address: 816 19th St NW, Fayette, AL 35555

FOR VALUE RECEIVED the undersigned jointly and severally promise(s) to pay to the order Justin Cutler, the principal sum of One Hundred Sixty-Four Thousand Eight Hundred and no/dollars ($164,800.00) together with interest thereon from date at the rate of Fifteen (15.00%) percent per annum compounded daily until maturity, said Principal and Interest being payable at maturity or sooner. Maturity date of this note being February 1, 2024, at which time balance will become due and payable. Interest will continue to accrue until the balance is paid in full.

Payments to be remitted to 1204 15th Avenue South, Nashville, TN 37212 or at such place holder hereof may designate in writing from time to time.

I will pay principal and interest by making a payment monthly.

I will make my monthly payment of $2,000.00 on the 1st day of each month, beginning in September, 2023. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before the principal. If, on the maturity date, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

Each maker or endorser severally waives demand, protest and notice of maturity, non-payment or protest and all requirements necessary to hold each of them liable as makers and endorsers and should litigation be necessary to enforce this note, each maker and endorser waives trial by jury and consents to the personal jurisdiction and venue of a court of subject matter jurisdiction located in the State of Alabama and County of Winston.

Each maker and endorser further agree, jointly and severally, to pay all costs of collection, including a reasonable attorney's fee in case the principal of this note or any payment on the principal or any interest thereon is not paid at the respective maturity thereof, or in case it becomes necessary to protect the security hereof, whether suit be brought or not.

Loan Charges: if law which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected in connection with the loan exceed the permitted limits, then (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make his refund by reducing the principal I owe under this note by making a direct payment to me. If a refund reduces the principal, the reduction will be treated as a partial prepayment. The converse of this paragraph shall apply in the event that the interest or other loan charges collected or not collected in connection with the loan are deemed to be too minimal or insufficient by applicable law. In such event, I shall make necessary payment to the Note Holder to reconcile any such deficiencies.

This note is to be construed and enforced according to the laws of the State of Tennessee; upon default in the payment of principal and/or interest when due, the whole sum of principal and interest remaining unpaid shall, at the option of the holder, become immediately due and payable and it shall accrue interest at the highest rate allowable by law, or, if no highest rate is otherwise indicated, at eighteen (18%) percent, from the date of default.

If the Note Holder has not received the full amount of any payment by that payment's due date, Borrower will pay a late fee to the Note Holder. The late fee will be 10% of the amount of the overdue payment that remains unpaid more than one day after its due date.

Borrower shall not permit or cause any other encumbrance other than the deed of trust to be recorded pursuant to this loan. Borrower agrees that the recordation of any other lien that is superior or inferior to the deed of trust to be recorded in connection with this indebtedness established by this Promissory Note shall be an event of default which shall entitle the holder of the deed of trust to all rights and remedies established by the deed of trust.

Unless specifically disallowed by law, should litigation arise hereunder, service of process therefore may be obtained through certified mail, return receipt requested; the parties hereto waiving any and all rights they may have to object to the method by which service was perfected.

FairOfferCashNow, Inc.

By: Abbigail Thompson
Its: Authorized Signer

MORTGAGOR(S):                               This instrument was prepared by:
FAIROFFERCASHNOW, INC.                Authority Title & Escrow of Alabama
P.O. Box 11891                             4100 Market St SW Ste 100
Murfreesboro, TN 37129                Huntsville, AL 35808

STATE OF ALABAMA )
COUNTY OF FAYETTE )

REAL ESTATE MORTGAGE
AND
SECURITY AGREEMENT

KNOW ALL MEN BY THESE PRESENTS: that

WHEREAS, FAIROFFERCASHNOW, INC., a Tennessee Corporation, whose address is, P.O. Box 11891, Murfreesboro, TN 37129 (hereinafter referred to as "Mortgagor") has become justly indebted to Justin Cutler, whose address is 1204 15th Avenue South, Nashville, TN 37212, (together with its successors and assigns, hereinafter called "Mortgagee") in the sum of ONE HUNDRED SIXTY-FOUR THOUSAND EIGHT HUNDRED and 00/100 DOLLARS ($164,800.00) together with interest thereon, as evidenced by a promissory note of even date, with a maturity date of February 1, 2024.

NOW, THEREFORE, in consideration of the premises and in order to secure the payment of said indebtedness and renewals or extensions thereof and all other indebtedness (including future advances) now or hereafter owed by any of the above-named to Mortgagee, whether such indebtedness is primary or secondary, direct or indirect, contingent or absolute, matured or unmatured, joint or several, and otherwise secured or not, and to secure compliance with all the covenants and stipulations hereinafter contained, the undersigned , FAIROFFERCASHNOW, INC., a Tennessee corporation (hereinafter called "Mortgagor") does hereby assign, grant, bargain sell and convey unto Mortgagee the following described real property located at 816 19th St NW, Fayette, AL 35555, being situated in Fayette County, State of Alabama, viz:

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF FOR LEGAL DESCRIPTION.

This is a purchase money mortgage.

Together with all rents and other revenues thereof and all rights, privileges, easements, tenements, interests, improvements and appurtenances thereunto belonging or in anywise appertaining, including any after-acquired title and easements and all rights, title and interest now or hereafter owned by Mortgagor in and to all buildings and improvements, storm and screen windows and doors, gas, steam, electric, solar and other heating, lighting, ventilating, air-conditioning, refrigerating and cooking apparatus, elevators, plumbing, sprinkling, smoke, fire, and intrusion detection devices, and other equipment and fixtures now or hereafter attached or appertaining to said premises, all of which shall be deemed to be real property and conveyed by this mortgage, and all of which real property, equipment and fixtures are sometimes hereinafter called the "mortgaged property".

TO HAVE AND TO HOLD the same and every part thereof unto the Mortgagee, its successors and assigns forever.

And for the consideration aforesaid, and as additional security for all of the indebtedness described above, Mortgagor hereby assigns and transfers to Mortgagee, and grant to Mortgagee a security interest in, all building materials, household appliances, equipment, fixtures and fittings of every kind or character now owned or hereafter acquired by Mortgagor, or any of them, located, whether permanently or temporarily, on the mortgaged property, and all building materials, household appliances, equipment, fixtures and fittings now owned or hereafter acquired by Mortgagor, or any of them, located or stored on any other real property, which are or shall be purchased by Mortgagor, or any of them, for the purpose, or with the intention, of making improvements on the mortgaged property or to the premises located on said property. The personal property herein transferred includes, without limitation, all lumber, bricks, building stones, building blocks, sand, cement, roofing materials, paint, doors, windows, storm doors, storm windows, nails, wires and wiring, hardware, plumbing and plumbing fixtures, heating and air conditioning equipment and appliances, electrical and gas equipment and appliances, pipes and piping, ornamental and decorative fixtures, and in general all building materials, equipment and appliances of every kind and character used or useful in connection with improvements to real property.

For the purpose of further securing the payment of said indebtedness Mortgagor warrants, covenants and agrees with Mortgagee, its successors and assigns, as follows:

1. That it is lawfully seized in fee and possessed of the mortgaged property and has a good right to convey the same as aforesaid, that it will warrant and forever defend the title against the lawful claims of all persons whomsoever, and that the mortgaged property is free and clear of all encumbrances, easements and restrictions not herein specifically mentioned.

2. That it will pay all taxes, assessments, or other liens taking priority over this mortgage when imposed upon the mortgaged property, and should default be made in the payment of the same, or any part thereof, Mortgagee may pay the same (but Mortgagee is not obligated to do so).

3. That it will keep the buildings on the mortgaged property continuously insured in such amounts, in such manner and with such companies as may be satisfactory to Mortgagee against loss by fire (including so-called extended coverage), wind and such other hazards (including flood and water damage) as Mortgagee may specify from time to time, with loss, if any, payable to Mortgagee, and will deposit with Mortgagee policies of such insurance or, at Mortgagee's election, certificates thereof, and will pay the premiums therefore as the same become due. Mortgagor shall have the right to provide such insurance through a policy or policies independently obtained and paid for by Mortgagor or through an existing policy. Mortgagee may, for reasonable cause, refuse to accept any policy of insurance obtained by Mortgagor. Mortgagor shall give immediate notice in writing to Mortgagee of any loss or damage to the mortgaged property from any cause whatever. If Mortgagor fails to keep said property insured as above specified, Mortgagee may insure said property (but Mortgagee is not obligated to do so) for its insurable value against loss by fire, wind and other hazards for the benefit of Mortgagor and Mortgagee or for the benefit of Mortgagee alone, at Mortgagee's election. The proceeds of such insurance shall be paid by the insurer to Mortgagee, which is hereby granted full power to settle and compromise claims under all policies, to endorse in the name of Mortgagor any check or draft representing the proceeds of any such insurance, and to demand, receive and give receipt for all sums becoming due thereunder. Said insurance proceeds, if collected, may be credited on the indebtedness secured by this mortgage, less costs of collection, or may be used in repairing or reconstructing the premises on the mortgaged property, at Mortgagee's election. Any application of the insurance proceeds to repairing or reconstructing premises on the mortgaged property shall not extend or

postpone the due date of any installment payments of the indebtedness hereby secured or reduce the amount of such installments.

4. That commencing upon written request by Mortgagee and continuing until the indebtedness secured hereby is paid in full, Mortgagor will pay to Mortgagee concurrently with, and on the due dates of, payments on the indebtedness hereby secured a sum equal to the ground rents, if any, next due on the mortgaged property, plus the premiums that will next become due and payable on policies of fire and other hazard insurance covering the mortgaged property, plus water rents, fire district charges, taxes and assessments next due on the mortgaged property (all as estimated by Mortgagee), less any sums already paid to Mortgagee therefore, divided by the number of months or other payment periods to elapse before one month or payment period prior to the date when such ground rents, premiums, water rents, fire district charges, taxes and assessments will become due, such sums to be held by Mortgagee in trust, to pay said ground rents, premiums, water rents, fire district charges, taxes and assessments. All payments mentioned in the preceding sentence and the payments to be made on the indebtedness secured hereby shall be added together and the aggregate amount thereof shall be paid by Mortgagor each month or other payment period in a single payment to be applied by Mortgagee to the following items in order set forth: (a) ground rents, taxes, water rents, fire district charges, assessments, fire and other hazard insurance premiums; (b) interest on the indebtedness secured hereby; and (c) the balance, if any, shall be applied toward the payment of the sum hereby secured. Any deficiency in the amount of such aggregate monthly or other periodic payments shall constitute a default under this mortgage. Any excess funds accumulated under this paragraph after payment of the items herein mentioned shall be credited in calculating the monthly or other periodic payments of the same nature required hereunder in the subsequent year; but if the actual amount of any such items shall exceed the estimate therefore, Mortgagor shall without demand forthwith make good the deficiency. Failure by Mortgagor to do so before the due date of such item shall be a default hereunder. If the mortgaged property is sold under foreclosure or is otherwise acquired by Mortgagee after default, any remaining balance of the accumulations under this paragraph shall be credited to the principal of the secured indebtedness as of the date of the foreclosure sale or as of the date the property is otherwise acquired.

5. That it will take good care of the mortgaged property and the personal property described above and will not commit or permit any waste thereon or thereof, and that it will keep the same repaired and at all times will maintain the same in as good condition as it now is, reasonable wear and tear alone excepted. If Mortgagor fails to make repairs to the mortgaged property, Mortgagee may make such repairs at Mortgagor' expense (but Mortgagee is not obligated to do so). Mortgagee, its agents and employees, may enter the mortgaged property and any improvements thereon at any reasonable time for the purpose of inspecting or repairing such improvements.

6. That all amounts expended by Mortgagee for insurance or for the payment of taxes or assessments or to discharge liens on the mortgaged property or any improvements thereon shall become a debt due Mortgagee, shall be payable at once without demand upon or notice to any person, shall bear interest at the rate of interest payable on the principal sum of the note described above, or if no such rate of interest is specified in the note or if the rate specified would be unlawful, at the rate of 12% per annum from the date of payment by Mortgagee, and such debt and the interest thereon shall be secured by this mortgage. Upon failure of Mortgagor to reimburse Mortgagee for all amounts so expended, at the election of Mortgagee and with or without notice to any person, Mortgagee may declare the entire indebtedness secured by this mortgage due and payable and may foreclose this mortgage as hereinafter provided or as provided by law.

7. That no delay or failure of Mortgagee to exercise any option to declare the maturity of any debt secured by this mortgage shall be taken or deemed as a waiver of the right to exercise such option or to declare such forfeiture either as to past or present defaults on the part of Mortgagor, and that the procurement of insurance or payment of taxes or other liens or assessments or obligations by Mortgagee shall not be taken or deemed as a waiver of the right to accelerate the maturity of the indebtedness hereby secured by reason of the failure of Mortgagor to procure such insurance or to pay such taxes, liens, assessments or obligations, it being agreed by Mortgagor that no terms or conditions contained in this mortgage can be waived, altered or changed except by a writing signed by Mortgagee.

8. That the Mortgagor who is obligated to pay the indebtedness hereby secured will well and truly pay and discharge such indebtedness as it shall become due and payable, including the note or notes described above, any renewals or extensions thereof, and any other notes or obligations of such Mortgagor to Mortgagee, whether now or hereafter incurred.

9. That if default shall be made in the payment of any of the indebtedness hereby secured, or in the performance of any of the terms or conditions of this mortgage, Mortgagee may proceed to collect the rent, income and profits from the mortgaged property, either with or without the appointment of a receiver (to which appointment Mortgagor hereby consent), and Mortgagee may notify the lessees or other payors thereof to make payment directly to Mortgagee. Any rents, income and profits collected by Mortgagee prior to foreclosure of this mortgage, less the costs of collecting the same, including any real estate or property management commissions and attorney's fees incurred, shall be credited first to advances made by Mortgagee and the interest thereon, then to interest due on the indebtedness hereby secured, and the remainder, if any, shall be applied toward the payment of the principal sum hereby secured.

10. That if possession of the mortgaged property is allowed to remain in any other person or entity to the exclusion of Mortgagor for a period of one year or more, or if all or any part of the mortgaged property or any interest therein is sold, assigned, transferred or conveyed by Mortgagor, or any of them, without Mortgagee's prior written consent, excluding only (a) the creation of a lien or encumbrance expressly subordinate to this mortgage, (b) the creation of a purchase money security interest for household appliances, (c) a transfer by devise, descent or by operation of law upon the death of a joint tenant, or (d) the grant of any leasehold interest of one year or less (including all mandatory or optional renewal periods) not containing an option to purchase, Mortgagee may, at Mortgagee's option declare all indebtedness secured by this mortgage to be due and payable immediately with or without notice to Mortgagor. Mortgagee may condition its consent to any such transfer of possession of, or an interest in, the mortgaged property upon the transferee's agreeing to pay a greater rate of interest on all or any part of the indebtedness secured by this mortgage or to adjust the payment schedule of all or any part of the indebtedness secured by this mortgage, upon Mortgagee's approval of the creditworthiness of the transferee, and upon the transferee's payment to Mortgagee of a reasonable transfer or assumption fee. Upon breach by Mortgagor of the covenants herein contained, Mortgagee may, at its election, proceed to foreclose this mortgage as hereinafter provided or as provided by law.

11. That all the covenants and agreements of Mortgagor herein contained shall extend to and bind its successors and assigns, and that such covenants and agreements and all options, rights, privileges and powers herein given, granted or secured to Mortgagee shall inure to the benefit of the successors and assigns of Mortgagee.

12. That the provisions of this mortgage and the note or notes secured hereby are severable, and that the invalidity or unenforceability of any provision of this mortgage or of any such note or notes shall not affect the validity and enforceability of the other provisions of this mortgage or of such note or notes. The remedies provided to Mortgagee herein are cumulative with the rights and remedies of Mortgagee at law and in equity, and such rights and remedies may be exercised concurrently and consecutively. A carbon or photostat copy of this mortgage may be filed as a financing statement in any public office.

UPON CONDITION, HOWEVER, that if Mortgagor shall well and truly pay and discharge all the indebtedness hereby secured (including future advances) as the same shall become due and payable and shall in all things do and perform all acts and agreements by them herein agreed to be done according to the tenor and effect thereof, then and in that event only this conveyance and the security interest herein granted shall be and become null and void; but should default be made in the payment of any indebtedness hereby secured or any renewals or extensions thereof or should any interest thereon remain unpaid at maturity, or should default be made in the repayment of any sum expended by Mortgagee under the authority of any provision of this mortgage, or should the interest of Mortgagee in the mortgaged property or any of the personal property described above become endangered by reason of the enforcement of any lien or encumbrance thereon, or should a petition to condemn any part of the mortgaged property be filed by any authority, person or entity having power of eminent domain, or should any law, either state or federal, be passed imposing or authorizing the imposition of a specific tax upon this mortgage or the indebtedness hereby secured or permitting or authorizing the deduction of any such tax from the principal or interest secured by this mortgage or by virtue of which any tax or assessment upon the mortgaged property shall be charged against the owner of this mortgage, or should at any time any of the covenants contained in this mortgage or in any note or other evidence of indebtedness secured hereby be declared invalid or unenforceable by any court of competent jurisdiction, or should Mortgagor fail to do and perform any other act or thing herein required or agreed to be done, then in any of said events the whole of the indebtedness hereby secured, or any portion or part thereof which may at said date not have been paid, with interest thereon, shall at once become due and payable and this mortgage subject to foreclosure at the option of Mortgagee, notice of the exercise of such option being hereby expressly waived by Mortgagor, and Mortgagee shall have the right to enter upon and take possession of the mortgaged property and after or without taking such possession to sell the same before the Court House door of the County (or the division thereof) where said property, or any substantial part of said property, is located, at public outcry for cash, after first giving notice of the time, place and terms of such sale by publication once a week for three consecutive weeks prior to said sale in some newspaper published in said County; and upon the payment of the purchase price, Mortgagee or the auctioneer at said sale is authorized to execute to the purchaser for and in the name of Mortgagor a good and sufficient deed to the property sold. And upon the occurrence of any such event, Mortgagee shall have the rights and remedies of a secured party after default by its debtor under the Alabama Uniform Commercial Code, including, without limitation, the right to take possession of any of the property herein transferred which is personal property and to sell the same at one or more public or private sales, at the election of Mortgagee. At Mortgagee's request, Mortgagor agrees to assemble such property and to make the same available to Mortgagee at such place as Mortgagee shall reasonably designate. Mortgagor agrees that notice of the time and place of any public sale or of the time after which any private sale or other intended or disposition of said property, or of any part thereof, will be held shall be sufficient if delivered to Mortgagor or mailed to Mortgagor at the address set forth above, or such other address as Mortgagor shall have furnished to Mortgagee in writing for that purpose, not less than five days before the date of such sale or other intended disposition of said property. Mortgagee shall apply the proceeds of said sale or sales under this mortgage as follows: First, to the expense of advertising, selling and conveying, including a reasonable

attorneys' fee not exceeding 15% of the unpaid debt after default if the original amount financed exceeded $300; second, to the payment of any amounts that may have been expended or that may then be necessary to expend in paying insurance, taxes and other encumbrances, with interest thereon; third, to the payment of the indebtedness hereby secured and interest thereon in such order as Mortgagee may elect, whether such debts shall or shall not have fully matured at the date of sale; and fourth, the balance, if any, to be paid over to Mortgagor or to whomsoever then appears of record to be the owner of Mortgagor's interest in said property. Mortgagee may bid and become the purchaser of the mortgaged property at any foreclosure sale hereunder. Mortgagor hereby waives any requirement that the mortgaged property be sold in separate tracts and agree that Mortgagee may, at its option, sell said property en masse regardless of the number of parcels hereby conveyed.

IN WITNESS WHEREOF, the undersigned has hereunto set his signature and seal or has caused this instrument to be executed by its officer(s) thereunto duly authorized, this 26th day of July, 2023.

FAIROFFERCASHNOW, INC.
a Tennessee corporation

BY: _____
Abbigail Thomson
Its: Authorized Signer

STATE OF TENNESSEE )
RUTHERFORD COUNTY )

I, the undersigned, a Notary Public in and for said County, in said State, hereby certify that Abbigail Thomson whose name as Authorized signer of FAIROFFERCASHNOW, INC., a Tennessee corporation, is signed to the foregoing conveyance and who is known to me, acknowledged before me on this day that, being informed of the contents of the above and foregoing Mortgage, she in his capacity as such officer and with full authority executed the same voluntarily for and as the act of said corporation.

Given under my hand and official seal this 26th day of July, 2023.

_____
Notary Public
My Commission Expires: Aug. 15, 2026

ELIZABETH REYES
STATE OF TENNESSEE
NOTARY PUBLIC
RUTHERFORD COUNTY
MY COMMISSION EXPIRES AUGUST 15, 2026

Exhibit A

A part of Lot 36 and part of Lot 35 of the North Valley Acres, Sector 3 Subdivision of the City of Fayette as recorded in Map Book No. 1, at Page 195 of the Probate Records of Fayette County and being described as follows:

All of Lot 36 of Sector 3 of North Valley Acres Subdivision as recorded in Map Book 1, at Page 185 of the Probate Records of Fayette County, Alabama, less and except the following: Beginning at the Northwest corner of said Lot 36 and running Easterly along the North line of said Lot 36 for a distance of 131.9 feet to a point; thence deflect an angle of 94 degrees and 21 minutes to the right and run a distance of 21.4 feet to a point; thence deflect an angle of 94 degrees and 47 minutes right and run a distance of 134.4 feet to the point of beginning. Also a parcel of land located in Lot 35 of Sector 3 of the North Valley Acres Subdivision as recorded in Map Book 1, at Page 195 of the Probate Records of Fayette County, Alabama, and being described as follows: beginning at the Southeast corner of said Lot 35 and run Westerly along the South line of Lot 35 for a distance of 132.9 feet to a point; thence deflect an angle of 94 degrees 21 minutes right and run a distance of 21.1 feet to a point; thence deflect an angle of 94 degrees 45 minutes right and run a distance of 132.8 feet to the point of beginning.

NOTICE

A SEPARATE AFFIDAVIT MUST BE COMPLETED FOR EACH SIGNER

NOTARY AFFIDAVIT

STATE OF _Tennessee_

COUNTY OF _Rutherford_

I hereby certify, under the penalty of perjury, that I am authorized to act as a Notary Public, in and for the above County and State, and that in performing my duties as a Notary Public, I have complied with all applicable State and Local Laws and that I have been presented with original government issued identification which has not expired and which bears a photo or physical description and has a signature which matches the signature on the documents being executed herein. A copy of the identification is attached.

I notarized the signature of Abbigail Thomson. (Enter one name only)

Date of Notarial acknowledgement: _7/26/23_

Capacity of signer: Authorized Signer

Identification used: _Driver's License_ to purchase the property located at 816 19th St NW, Fayette, AL 35555.

_Elizabeth Reyes_
NOTARY PUBLIC SIGNATURE

_Elizabeth Reyes_
Print Name

_PO Box 11851_
Print Address

_Murfreesboro, TN 37129_

_(615) 477-7454_
Phone Number

Note: This document does not require recordation

ELIZABETH REYES
STATE OF TENNESSEE
NOTARY PUBLIC
RUTHERFORD COUNTY
MY COMMISSION EXPIRES AUGUST 15, 2026

## Clayton T. Sweeney, Attorney
### BORROWER'S AND SELLER'S COMBINED CLOSING STATEMENT

**B. Type of Loan**

| 1.☐ FHA  2.☐ RHS  3.☒ Conv. Unins. | 6. File Number | 7. Loan Number | 8. Mortgage Insurance Case Number |
|---|---|---|---|
| 4.☐ VA  5.☐ Conv. Ins. | 0323012 | | |

**C. Note:** This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for information purposes and are not included in the totals.

| D. Name and Address of Borrower | E. Name and Address of Seller | F. Name and Address of Lender |
|---|---|---|
| FairOfferCashNow, Inc.<br>P.O. Box 11891<br>Murfreesboro, TN 37129 | Marva Turnley<br>254 McGough Blvd<br>Florence, AL 35630 | Justin Cutler<br>1204 15th Avenue South<br>Nashville, TN 37212 |

| G. Property Location | H. Settlement Agent |
|---|---|
| 1534 County Road 573<br>Hanceville, AL 35077<br>Section 14 Township 11 South Range 3 West<br>Cullman County Alabama | Clayton T. Sweeney, Attorney |

| Place of Settlement | I. Settlement Date |
|---|---|
| 2700 Highway 280 East, Suite 160<br>Birmingham, Alabama 35223 | 03/17/2023<br><br>DD: 03/20/2023 |

| J. SUMMARY OF BORROWER'S TRANSACTION: | | K. SUMMARY OF SELLER'S TRANSACTION: | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER** | | **400. GROSS AMOUNT DUE TO SELLER** | |
| 101. Contract sales price | 60,000.00 | 401. Contract sales price | 60,000.00 |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | 5,495.40 | 403. | |
| 104. Future Draw | 30,000.00 | 404. | |
| 105. | | 405. | |
| **Adjustments for items paid by seller in advance** | | **Adjustments for items paid by seller in advance** | |
| 106. City/town taxes          to | | 406. City/town taxes          to | |
| 107. County taxes          to | | 407. County taxes          to | |
| 108. Assessments          to | | 408. Assessments          to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. GROSS AMOUNT DUE FROM BORROWER** | 95,495.40 | **420. GROSS AMOUNT DUE TO SELLER** | 60,000.00 |
| **200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER** | | **500. REDUCTIONS IN AMOUNT TO SELLER** | |
| 201. Deposit or earnest money | | 501. Excess Deposit (see instructions) | |
| 202. Principal amount of new loan(s) | 123,800.00 | 502. Settlement charges to seller (line 1400) | 42.50 |
| 203. Existing loan(s) taken subject to | | 503. Existing loans taken subject to | |
| 204. | | 504. Payoff of first mortgage loan | |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| **Adjustments for items unpaid by seller** | | **Adjustments for items unpaid by seller** | |
| 210. City/town taxes          to | | 510. City/town taxes          to | |
| 211. County taxes     10/01 to 03/17 | 102.36 | 511. County taxes     10/01 to 03/17 | 102.36 |
| 212. Assessments          to | | 512. Assessments          to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. TOTAL PAID BY / FOR BORROWER** | 123,702.36 | **520. TOTAL REDUCTION AMOUNT DUE SELLER** | 144.86 |
| **300. CASH AT SETTLEMENT FROM OR TO BORROWER** | | **600. CASH AT SETTLEMENT TO OR FROM SELLER** | |
| 301. Gross amount due from borrower (line 120) | 95,495.40 | 601. Gross amount due to seller (line 420) | 60,000.00 |
| 302. Less amounts paid by/for borrower (line 220) | 123,702.36 | 602. Less reduction amount due seller (line 520) | 144.86 |
| **303. CASH          TO          BORROWER** | 28,206.96 | **603. CASH          TO          SELLER** | 59,855.14 |

SUBSTITUTE FORM 1099 SELLER STATEMENT: The information contained herein is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction will be imposed on you if this item is required to be reported and the IRS determines that it has not been reported. The Contract Sales Price described on Line 401 above constitutes the Gross Proceeds of this transaction.

SELLER INSTRUCTIONS: To determine if you have to report the sale or exchange of your primary residence on your tax return, see the Schedule D (Form 1040) instructions. If the real estate was not your primary residence, complete the applicable parts of Form 4797, Form 6252, and /or Schedule D (Form 1040).

You are required by law to provide the settlement agent with your correct taxpayer identification number. If you do not provide your correct taxpayer identification number, you may be subject to civil or criminal penalties imposed by law. Under penalties of perjury, I certify that the number shown on this statement is my correct taxpayer identification number.

Title                                             Marva Turnley

| L. SETTLEMENT CHARGES:  File Number: 0323012 | | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|
| 700. | TOTAL SALES/BROKER'S COMMISSION based on price $ @ = | | |
| | Division of commission (line 700) as follows: | | |
| 701. | $ to | | |
| 702. | $ to | | |
| 703. | Commission paid at Settlement | | |
| 704. | | | |
| 800. | ITEMS PAYABLE IN CONNECTION WITH LOAN                    P.O.C. | | |
| 801. | Loan Origination Fee          %   Justin Cutler | 3,600.00 | |
| 802. | Loan Discount          % | | |
| 803. | Appraisal Fee          to | | |
| 804. | Credit Report          to | | |
| 805. | Lender's Inspection Fee          to | | |
| 806. | Mtg. Ins. Application Fee          to | | |
| 807. | Assumption Fee          to | | |
| 808. | | | |
| 809. | | | |
| 810. | | | |
| 811. | | | |
| 812. | | | |
| 813. | | | |
| 814. | | | |
| 815. | | | |
| 900. | ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE | | |
| 901. | Interest from          to          @$          /day | | |
| 902. | Mortgage Insurance Premium          to | | |
| 903. | Hazard Insurance Premium          yrs. to | | |
| 904. | | | |
| 905. | | | |
| 1000. | RESERVES DEPOSITED WITH LENDER FOR | | |
| 1001. | Hazard Insurance          mo. @$          / mo. | | |
| 1002. | Mortgage Insurance          mo. @$          / mo. | | |
| 1003. | City property taxes          mo. @$          / mo. | | |
| 1004. | County property taxes          mo. @$          / mo. | | |
| 1005. | Annual Assessments          mo. @$          / mo. | | |
| 1006. | mo. @$          / mo. | | |
| 1007. | mo. @$          / mo. | | |
| 1008. | Aggregate Reserve for Hazard/Flood Ins, City/Count | | |
| 1100. | TITLE CHARGES | | |
| 1101. | Settlement or closing fee          to   Clayton T. Sweeney, Attorney | 750.00 | |
| 1102. | Abstract or title search          to   Alabama Title Co., Inc. | 350.00 | |
| 1103. | Title examination          to | | |
| 1104. | Title insurance binder          to | | |
| 1105. | Document preparation          to | | |
| 1106. | Notary fees          to | | |
| 1107. | Attorney's fees          to | | |
| | (includes above item No:                    ) | | |
| 1108. | Title insurance          to   Alabama Title Co., Inc. | 515.00 | |
| | (includes above item No:                    ) | | |
| 1109. | Lender's coverage          123,600.00 — 305.00 | | |
| 1110. | Owner's coverage          60,000.00 — 210.00 | | |
| 1111. | Courier/Copies/Fax Fee to          Clayton T. Sweeney, Attorney | 25.00 | 25.00 |
| 1112. | Title - CPL for lender          Alabama Title Co., Inc. | 25.00 | |
| 1113. | | | |
| 1200. | GOVERNMENT RECORDING AND TRANSFER CHARGES | | |
| 1201. | Recording fees          Deed $  9.50   ; Mortgage $  34.50   ; Releases $ | 44.00 | |
| 1202. | City/county/stamps          Deed $          ; Mortgage $ | | |
| 1203. | State tax/stamps          Deed $  1.00   ; Mortgage $  185.40 | 186.40 | |
| 1204. | Record Quit Claim Deed Turnley to Weissend | | 13.00 |
| 1205. | Record Scrivener's Affidavit | | 4.50 |
| 1300. | ADDITIONAL SETTLEMENT CHARGES | | |
| 1301. | Survey          to | | |
| 1302. | Pest inspection          to | | |
| 1303. | | | |
| 1304. | | | |
| 1305. | | | |
| 1306. | | | |
| 1307. | | | |
| 1308. | | | |
| 1400. | TOTAL SETTLEMENT CHARGES          (enter on lines 103 and 502, Sections J and K) | 5,495.40 | 42.50 |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement. In the event of axxs is necessary for the current tax year said reprorations will be settled between the buyers and sellers

Abbigail Thomson, Authorized Signor

Marva Turnley

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement

Clayton T. Sweeney, Attorney          3-20-2023

March 17, 2023          Date

WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine or imprisonment. For details see Title 18 U.S. Code Section 1001 and Section 1010

| L. SETTLEMENT CHARGES:    File Number: 0323012 | | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|
| 700. | TOTAL SALES/BROKER'S COMMISSION based on price $    @    = | | |
| | Division of commission (line 700) as follows: | | |
| 701. | $    to | | |
| 702. | $    to | | |
| 703. | Commission paid at Settlement | | |
| 704. | | | |
| 800. | ITEMS PAYABLE IN CONNECTION WITH LOAN     P.O.C. | | |
| 801. | Loan Origination Fee    %    Justin Cutler | 3,600.00 | |
| 802. | Loan Discount    % | | |
| 803. | Appraisal Fee    to | | |
| 804. | Credit Report    to | | |
| 805. | Lender's Inspection Fee    to | | |
| 806. | Mtg. Ins. Application Fee    to | | |
| 807. | Assumption Fee    to | | |
| 808. | | | |
| 809. | | | |
| 810. | | | |
| 811. | | | |
| 812. | | | |
| 813. | | | |
| 814. | | | |
| 815. | | | |
| 900. | ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE | | |
| 901. | Interest from    to    @$    /day | | |
| 902. | Mortgage Insurance Premium    to | | |
| 903. | Hazard Insurance Premium    yrs. to | | |
| 904. | | | |
| 905. | | | |
| 1000. | RESERVES DEPOSITED WITH LENDER FOR | | |
| 1001. | Hazard Insurance    mo. @$    / mo. | | |
| 1002. | Mortgage Insurance    mo. @$    / mo. | | |
| 1003. | City property taxes    mo. @$    / mo. | | |
| 1004. | County property taxes    mo. @$    / mo. | | |
| 1005. | Annual Assessments    mo. @$    / mo. | | |
| 1006. |    mo. @$    / mo. | | |
| 1007. |    mo. @$    / mo. | | |
| 1008. | Aggregate Reserve for Hazard/Flood Ins, City/Count | | |
| 1100. | TITLE CHARGES | | |
| 1101. | Settlement or closing fee    to    Clayton T. Sweeney, Attorney | 750.00 | |
| 1102. | Abstract or title search    to    Alabama Title Co., Inc. | 350.00 | |
| 1103. | Title examination    to | | |
| 1104. | Title insurance binder    to | | |
| 1105. | Document preparation    to | | |
| 1106. | Notary fees    to | | |
| 1107. | Attorney's fees    to | | |
| | (includes above item No:    ) | | |
| 1108. | Title insurance    to    Alabama Title Co., Inc. | 515.00 | |
| | (includes above item No    ) | | |
| 1109. | Lender's coverage    123,600.00 --- 305.00 | | |
| 1110. | Owner's coverage    60,000.00 --- 210.00 | | |
| 1111. | Couner/Copies/Fax Fee to    Clayton T. Sweeney, Attorney | 25.00 | 25.00 |
| 1112. | Title - CPL for lender    Alabama Title Co., Inc. | 25.00 | |
| 1113. | | | |
| 1200. | GOVERNMENT RECORDING AND TRANSFER CHARGES | | |
| 1201. | Recording fees    Deed $   9.50  ; Mortgage $   34.50  ; Releases $ | 44.00 | |
| 1202. | City/county/stamps    Deed $   ; Mortgage $ | | |
| 1203. | State tax/stamps    Deed $   1.00  ; Mortgage $   185.40 | 186.40 | |
| 1204. | Record Quit Claim Deed Turnley to Weissend | | 13.00 |
| 1205. | Record Scrivener's Affidavit | | 4.50 |
| 1300. | ADDITIONAL SETTLEMENT CHARGES | | |
| 1301. | Survey    to | | |
| 1302. | Pest inspection    to | | |
| 1303. | | | |
| 1304. | | | |
| 1305. | | | |
| 1306. | | | |
| 1307. | | | |
| 1308. | | | |
| 1400. | TOTAL SETTLEMENT CHARGES    (enter on lines 103 and 502, Sections J and K) | 5,495.40 | 42.50 |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement. In the event of sales is necessary for the current tax year said reprorations will be settled between the buyers and sellers

Above information and Borrower Signature

Marva Turnley

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement

Clayton T. Sweeney, Attorney      5-20-2023

Date

WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine or imprisonment. For details see Title 18 U.S. Code Section 1001 and Section 1010.

THIS INSTRUMENT PREPARED BY:
Clayton T. Sweeney
Attorney at Law
2700 Hwy. 280 E., Ste. 160
Birmingham, AL 35223

Send Tax Notice To:
Ashley Weissend
Johnathan Ralph
4481 Co Rd 1718
Holly Pond, AL 35083

# STATE OF ALABAMA}
# COUNTY OF CULLMAN}

KNOW ALL MEN BY THESE PRESENTS, That for and in consideration of to **Clear Title** and Other Good and Valuable Consideration, in hand paid to the undersigned, the receipt whereof is hereby acknowledged, the undersigned **Melva Turnley, an unmarried woman** hereby remises, releases, quit claims, grants, sells, and conveys unto **Ashley Weissend and Johnathan Ralph,** all her rights, title, interests and claims in or to the following described real estate, situated in **Cullman** County, Alabama, to-wit:

A part of the NW 1/4 of the SE 1/4 of Section 14, Township 11 South, Range 3 West, Cullman County, Alabama being more particularly described as follows:

Commence at a point on the West line of the NW 1/4 of the SE 1/4 of Section 14, Township 11 South, Range 3 West where said line intersects the North margin of a county gravel road; thence run North and along said West line for a distance of 620.0 feet; thence run East for a distance of 70.0 feet, to the Point of Beginning; thence continue along same line for a distance of 150.0 feet to an old iron corner; thence run South and parallel to the West line for a distance of 150.0 feet; thence run North for a distance of 150.0 feet to the Point of Beginning.

Parcel ID#22-06-14-0-000-021.001

This deed is given to clear title to that certain deed recorded in Deed Book 723, Page 256, which erroneously included the above description. The above description should have been "Less and Excepted" from said deed.

Subject to:

Ad valorem taxes for 2023 and subsequent years not yet due and payable until October 1, 2023.

Existing covenants and restrictions, easements, building lines and limitations of record.

TO HAVE AND TO HOLD to said GRANTEES, their heirs and assigns, forever.

Pursuant to the provisions of *ALA. Code § 40-22-1 (1975)*, the following information is offered in lieu of submitting Form RT-1:

Grantor's Name and Address:
Marva Turnely
254 McGough Blvd
Florence, AL 35630

Grantees Name and Address:
Ashley Weissand
Johnathan Ralph
4481 Co Rd 1718
Holly Pond, 35083

Property Address: 1534County Rd 573
                  Hanceville, AL 35077

Date of Sale: March 17, 2023

Sales Price:     TO CLEAR TITLE to
                 Deed Book 723, Page 256

In WITNESS WHEREOF, said GRANTOR has hereunto set her hand and seal this the 17th day of March, 2023.

_____
Witness

*Marva Turnly*
_____
Marva Turnley

STATE OF ALABAMA}
COUNTY OF *Lauderdale*}

I, the undersigned authority, a Notary Public in and for said County, in said State, hereby certify that Marva Turnley, whose name is signed to the foregoing conveyance, and who is known to me, acknowledged before me on this day, that, being informed of the contents of the conveyance, she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this 17th day of March 2023.

_____
NOTARY PUBLIC

My Commission Expires: *12/30/2025*

[AFFIX SEAL]

This instrument was prepared by:
Clayton T. Sweeney, Attorney
2700 Highway 280 East, Suite 160
Birmingham, AL 35223

Send Tax Notice To:
FairOfferCashNow, Inc.
PO Box 11891
Murfreesboro, TN 37129

STATE OF ALABAMA          )

**GENERAL WARRANTY DEED**

COUNTY OF CULLMAN       )

**KNOW ALL MEN BY THESE PRESENTS**:  That, for and in consideration of **Sixty Thousand and No/100 Dollars, ($60,000.00)**, and other good and valuable consideration, this day in hand paid to the undersigned **Marva Turnley, an unmarried woman** (hereinafter referred to as GRANTOR), in hand paid by the GRANTEE herein, the receipt whereof is hereby acknowledged, the GRANTOR does hereby give, grant, bargain, sell and convey unto the GRANTEE, **FairOfferCashNow, Inc., a Tennessee corporation** (hereinafter referred to as GRANTEE), its successors and assigns, the following described Real Estate, lying and being in the County of **Cullman** State of Alabama, to-wit:

A part of the NW 1/4 of the SE 1/4 of Section 14, Township 11 South, Range 3 West, Cullman County, Alabama being more particularly described as follows:

Begin at a point where the West line of the NW 1/4 of the SE 1/4 of Section 14, Township 11 South, Range 3 West intersects the North margin of Beech Grove Road in Cullman County, Alabama; thence run Southeasterly along the North margin of said road for 225.0 feet to the Southwest corner of the Jarrett W. Lynch Lot as recorded in Book 294, page 939; thence run North and parallel to the West line of said 1/4- 1/4 section for 640.0 feet; thence run West for 220.0 feet more or less to a point on the West line of said 1/4 -1/4 section; thence run South 620.0 feet, more or less to the Point of Beginning.

Less and except the following:

Commence at a point on the West line of the NW 1/4 of the SE 1/4 of Section 14, Township 11 South, Range 3 West where said line intersects the North margin of a county gravel road; thence run North and along said West line for a distance of 620.0 feet; thence run East for a distance of 70.0 feet, to the Point of Beginning; thence continue along same line for a distance of 150.0 feet to an old iron corner; thence run South and parallel to the West line for a distance of 150.0 feet; thence run North for a distance of 150.0 feet to the Point of Beginning.

Subject To:

Ad valorem taxes for 2023 and subsequent years not yet due and payable until October 1, 2023.

Existing covenants and restrictions, easements, building lines and limitations of record.

TO HAVE AND TO HOLD, the tract or parcel of land above described together with all and singular the rights, privileges, tenements, appurtenances, and improvements unto the said GRANTEE, its successors and assigns, forever.

AND SAID GRANTOR, for said GRANTOR, GRANTOR'S heirs, successors, executors and administrators, covenants with GRANTEE, and with GRANTEE'S successors and assigns, that GRANTOR is lawfully seized in fee simple of the said Real Estate; that said Real Estate is free and clear from all Liens and Encumbrances, except as hereinabove set forth, and except for taxes due for the current and subsequent years, and except for any Restrictions pertaining to the Real Estate of record in the Probate Office of said County; that GRANTOR has a good right to sell and convey said Real Estate; and that GRANTORS will, and GRANTOR'S her heirs, successors, executors and assigns shall, warrant and defend the same to said GRANTEE, and GRANTEE'S successors and assigns, forever against the lawful claims of all persons.

IN WITNESS WHEREOF, said GRANTOR has hereunto set her hand and seal this the ⅃⅂ day of **March, 2023.**

_____
**Witness**

_Marva Turnely_
**Marva Turnely**

STATE OF ALABAMA)
COUNTY OF _Lauderdale_ )

I, the undersigned, a Notary Public, in and for said County and State, hereby certify that **Marva Turnley**, whose name is signed to the foregoing conveyance and who is known to me, acknowledged before me on this day that, being informed of the contents of the Instrument, she executed the same voluntarily on the day the same bears date.

IN WITNESS WHEREOF, I have hereunto set my hand and seal this the _17th_ day of March, 2023.

_____
**NOTARY PUBLIC**
**My Commission Expires:** _12/28/2025_

(must affix seal)

**Real Estate Sales Validation Form**

*This Document must be filed in accordance with Code of Alabama 1975, Section 40-22-1*

| | | | |
|---|---|---|---|
| Grantor's Name | Marva Turnley | Grantee's Name | FairOfferCash Now, Inc. |

| | | | |
|---|---|---|---|
| Mailing Address | 254 McGough Blvd<br>Florence, AL 35630 | Mailing Address | PO Box 11891<br>Murfreesboro, TN 37129 |

| | | | |
|---|---|---|---|
| Property Address | 1534 County Road 573<br>Hanceville, AL 35077 | Date of Sale | March 17, 2023 |
| | | Total Purchase Price | $ 60,000.00 |
| | | or | |
| | | Actual Value | $ |
| | | or | |
| | | Assessor's Market Value | $ |

The purchase price or actual value claimed on this form can be verified in the following documentary evidence:
(check one)  (Recordation of documentary evidence is not required)

- ☐ Bill of Sale
- ☐ Sales Contract
- ☒ Closing Statement

- ☐ Appraisal/ Assessor's Appraised Value
- ☐ Other – property tax redemption

If the conveyance document presented for recordation contains all of the required information referenced above, the filing of this form is not required.

**Instructions**

Grantor's name and mailing address - provide the name of the person or persons conveying interest to property and their current mailing address.

Grantee's name and mailing address - provide the name of the person or persons to whom interest to property is being conveyed.

Property address - the physical address of the property being conveyed, if available. Date of Sale - the date on which interest to the property was conveyed.

Total purchase price - the total amount paid for the purchase of the property, both real and personal, being conveyed by the instrument offered for record.

Actual value - if the property is not being sold, the true value of the property, both real and personal, being conveyed by the instrument offered for record. This may be evidenced by an appraisal conducted by a licensed appraiser or the assessor's current market value.

If no proof is provided and the value must be determined, the current estimate of fair market value, excluding current use valuation, of the property as determined by the local official charged with the responsibility of valuing property for property tax purposes will be used and the taxpayer will be penalized pursuant to Code of Alabama 1975 § 40-22-1 (h).

I attest, to the best of my knowledge and belief that the information contained in this document is true and accurate. I further understand that any false statements claimed on this form may result in the imposition of the penalty indicated in Code of Alabama 1975 § 40-22-1 (h).

Date _Merch 17th_

X ____Unattested____
(verified by)

Print__Marva Turnley____

Sign__Marva Turnley____
(Grantor/Grantee/Owner/Agent) circle one

1/2574676 Case 3:24-bk-03495    Claim 8-1 Part 3    Filed 10/14/24    Desc Exhibit Note & Dot   Form RT-1
Page 8 of 24

## RECEIPT OF TITLE INSURANCE COMMITMENT

I, Abbigail Thompson, Authorized Signer for FairOfferCashNow, Inc. have been provided with a copy of the title insurance commitment which shows me as a proposed insured. The final title policy, which will be sent several weeks after closing will insure the title to the real property known as 1534 County Road 573, Hanceville, AL 35077, in the County of Cullman, State of Alabama, subject to a number of exceptions or exclusions, which are listed in the title commitment received at closing.

Some of the possible exceptions are:
1) restrictive covenants, if any
2) easements and other restrictions upon the property
3) any lien, or right to a lien, for services, labor or material heretofore or hereafter furnished, imposed by law and not shown by the public records
4) any claims of adverse possession
5) any matter disclosed by survey
6) any mortgages, if any, executed at the time of closing

Further, the closing attorney or his representative has advised me that the final title insurance policy contains an arbitration agreement between me and the title company. The title company was not selected by the closing attorney. Rather, by contract, the seller or the seller's representatives selected the title insurance company.

If the sale contract required delivery of restrictive covenants to the undersigned, the undersigned acknowledge(s) receipt of said covenants or have elected to proceed with closing without said covenants. The undersigned is/are aware that the closing attorney does not do any title research and does not have the restrictive covenants at the closing.

Date: March 17, 2023

PURCHASER:
FairOfferCashNow, Inc.
a Tennessee Corporation

By: Abbigail Thomson
Its: Authorized Signer

# NOTE

**Date: March 17, 2023**

**$123,600.00**

Property Address: **1534 County Road 573, Hanceville, AL  35077**

FOR VALUE RECEIVED the undersigned jointly and severally promise(s) to pay to the order **Justin Cutler**, the principal sum of **One Hundred Twenty Thousand Six Hundred and no/dollars ($123,600.00)** together with interest thereon from date at the rate of **Fifteen (15.00%)** percent per annum compounded daily until maturity, said Principal and Interest being payable at maturity or sooner. Maturity date of this note being **September 12th, 2023**, at which time balance will become due and payable. Interest will continue to accrue until the balance is paid in full.

Payments to be remitted to **1204 15ª Avenue South, Nashville, TN 37212** or at such place holder hereof may designate in writing from time to time.

I will pay principal and interest by making a payment monthly.

I will make my monthly payment of $1,500 on the 1st day of each month, beginning **in May, 2023.** I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before the principal. If, on the maturity date, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

Each maker or endorser severally waives demand, protest and notice of maturity, non-payment or protest and all requirements necessary to hold each of them liable as makers and endorsers and should litigation be necessary to enforce this note, each maker and endorser waives trial by jury and consents to the personal jurisdiction and venue of a court of subject matter jurisdiction located in the State of **Alabama** and County of **Cullman.**

Each maker and endorser further agree, jointly and severally, to pay all costs of collection, including a reasonable attorney's fee in case the principal of this note or any payment on the principal or any interest thereon is not paid at the respective maturity thereof, or in case it becomes necessary to protect the security hereof, whether suit be brought or not.

Loan Charges: if law which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected in connection with the loan exceed the permitted limits, then (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make his refund by reducing the principal I owe under this note by making a direct payment to me. If a refund reduces the principal, the reduction will be treated as a partial prepayment. The converse of this paragraph shall apply in the event that the interest or other loan charges collected or not collected in connection with the loan are deemed to be too minimal

or insufficient by applicable law. In such event, I shall make necessary payment to the Note Holder to reconcile any such deficiencies.

This note is to be construed and enforced according to the laws of the State of Tennessee; upon default in the payment of principal and/or interest when due, the whole sum of principal and interest remaining unpaid shall, at the option of the holder, become immediately due and payable and it shall accrue interest at the highest rate allowable by law, or, if no highest rate is otherwise indicated, at eighteen (18%) percent, from the date of default.

If the Note Holder has not received the full amount of any payment by that payment's due date, Borrower will pay a late fee to the Note Holder. The late fee will be 10% of the amount of the overdue payment that remains unpaid more than one day after its due date.

Borrower shall not permit or cause any other encumbrance other than the deed of trust to be recorded pursuant to this loan. Borrower agrees that the recordation of any other lien that is superior or inferior to the deed of trust to be recorded in connection with this indebtedness established by this Promissory Note shall be an event of default which shall entitle the holder of the deed of trust to all rights and remedies established by the deed of trust.

Unless specifically disallowed by law, should litigation arise hereunder, service of process therefore may be obtained through certified mail, return receipt requested; the parties hereto waiving any and all rights they may have to object to the method by which service was perfected.

FairOfferCashNow, Inc.

By: Abbigail Thomson
Its: Authorized Signer

MORTGAGOR(S):
FAIROFFERCASHNOW, INC.
P.O. Box 11891
Murfreesboro, TN 37129

This instrument was prepared by:
Clayton T. Sweeney, Attorney
2700 Highway 280 E, Suite 160
Birmingham, AL 35223

STATE OF ALABAMA )
COUNTY OF CULLMAN )

### REAL ESTATE MORTGAGE
### AND
### SECURITY AGREEMENT

KNOW ALL MEN BY THESE PRESENTS: that

WHEREAS, **FAIROFFERCASHNOW, INC., a Tennessee Corporation,** whose

address is, P.O. Box 11891, Murfreesboro, TN 37129 (hereinafter referred to as "Mortgagor) has

become justly indebted to **Justin Cutler**, whose address is 1204 15th Avenue South, Nashville,

TN 37212, (together with its successors and assigns, hereinafter called "Mortgagee") in the sum

of **ONE HUNDRED TWENTY THOUSAND SIX HUNDRED and 00/100 DOLLARS**
**($123,600.00)** together with interest thereon, as evidenced by a promissory note of even date. (If
the maturity date is 20 years or longer, indicate the maturity date.)

NOW, THEREFORE, in consideration of the premises and in order to secure the payment

of said indebtedness and renewals or extensions thereof and all other indebtedness (including

future advances) now or hereafter owed by any of the above-named to Mortgagee, whether such

indebtedness is primary or secondary, direct or indirect, contingent or absolute, matured or

unmatured, joint or several, and otherwise secured or not, and to secure compliance with all the

covenants and stipulations hereinafter contained, the undersigned , **FAIROFFERCASHNOW,**

**INC.,** a Tennessee corporation (hereinafter called "Mortgagor") does hereby assign, grant, bargain

sell and convey unto Mortgagee the following described real property located at 1534 County Road 573 Hanceville, AL 35077, being situated in Cullman County, State of Alabama, viz:

**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF FOR LEGAL DESCRIPTION.**

This is a purchase money mortgage.

Together with all rents and other revenues thereof and all rights, privileges, easements, tenements, interests, improvements and appurtenances thereunto belonging or in anywise appertaining, including any after-acquired title and easements and all rights, title and interest now or hereafter owned by Mortgagor in and to all buildings and improvements, storm and screen windows and doors, gas, steam, electric, solar and other heating, lighting, ventilating, air-conditioning, refrigerating and cooking apparatus, elevators, plumbing, sprinkling, smoke, fire, and intrusion detection devices, and other equipment and fixtures now or hereafter attached or appertaining to said premises, all of which shall be deemed to be real property and conveyed by this mortgage, and all of which real property, equipment and fixtures are sometimes hereinafter called the "mortgaged property".

TO HAVE AND TO HOLD the same and every part thereof unto the Mortgagee, its successors and assigns forever.

And for the consideration aforesaid, and as additional security for all of the indebtedness described above, Mortgagor hereby assigns and transfers to Mortgagee, and grant to Mortgagee a security interest in, all building materials, household appliances, equipment, fixtures and fittings of every kind or character now owned or hereafter acquired by Mortgagor, or any of them, located, whether permanently or temporarily, on the mortgaged property, and all building materials, household appliances, equipment, fixtures and fittings now owned or hereafter

acquired by Mortgagor, or any of them, located or stored on any other real property, which are or shall be purchased by Mortgagor, or any of them, for the purpose, or with the intention, of making improvements on the mortgaged property or to the premises located on said property. The personal property herein transferred includes, without limitation, all lumber, bricks, building stones, building blocks, sand, cement, roofing materials, paint, doors, windows, storm doors, storm windows, nails, wires and wiring, hardware, plumbing and plumbing fixtures, heating and air conditioning equipment and appliances, electrical and gas equipment and appliances, pipes and piping, ornamental and decorative fixtures, and in general all building materials, equipment and appliances of every kind and character used or useful in connection with improvements to real property.

For the purpose of further securing the payment of said indebtedness Mortgagor warrants, covenants and agrees with Mortgagee, its successors and assigns, as follows:

1. That it is lawfully seized in fee and possessed of the mortgaged property and has a good right to convey the same as aforesaid, that it will warrant and forever defend the title against the lawful claims of all persons whomsoever, and that the mortgaged property is free and clear of all encumbrances, easements and restrictions not herein specifically mentioned.

2. That it will pay all taxes, assessments, or other liens taking priority over this mortgage when imposed upon the mortgaged property, and should default be made in the payment of the same, or any part thereof, Mortgagee may pay the same (but Mortgagee is not obligated to do so).

3. That it will keep the buildings on the mortgaged property continuously insured in such amounts, in such manner and with such companies as may be satisfactory to Mortgagee against loss by fire (including so-called extended coverage), wind and such other hazards (including flood

and water damage) as Mortgagee may specify from time to time, with loss, if any, payable to Mortgagee, and will deposit with Mortgagee policies of such insurance or, at Mortgagee's election, certificates thereof, and will pay the premiums therefore as the same become due. Mortgagor shall have the right to provide such insurance through a policy or policies independently obtained and paid for by Mortgagor or through an existing policy. Mortgagee may, for reasonable cause, refuse to accept any policy of insurance obtained by Mortgagor. Mortgagor shall give immediate notice in writing to Mortgagee of any loss or damage to the mortgaged property from any cause whatever. If Mortgagor fails to keep said property insured as above specified, Mortgagee may insure said property (but Mortgagee is not obligated to do so) for its insurable value against loss by fire, wind and other hazards for the benefit of Mortgagor and Mortgagee or for the benefit of Mortgagee alone, at Mortgagee's election. The proceeds of such insurance shall be paid by the insurer to Mortgagee, which is hereby granted full power to settle and compromise claims under all policies, to endorse in the name of Mortgagor any check or draft representing the proceeds of any such insurance, and to demand, receive and give receipt for all sums becoming due thereunder. Said insurance proceeds, if collected, may be credited on the indebtedness secured by this mortgage, less costs of collection, or may be used in repairing or reconstructing the premises on the mortgaged property, at Mortgagee's election. Any application of the insurance proceeds to repairing or reconstructing premises on the mortgaged property shall not extend or postpone the due date of any installment payments of the indebtedness hereby secured or reduce the amount of such installments.

    4.     That commencing upon written request by Mortgagee and continuing until the indebtedness secured hereby is paid in full, Mortgagor will pay to Mortgagee concurrently with, and on the due dates of, payments on the indebtedness hereby secured a sum equal to the ground

rents, if any, next due on the mortgaged property, plus the premiums that will next become due and payable on policies of fire and other hazard insurance covering the mortgaged property, plus water rents, fire district charges, taxes and assessments next due on the mortgaged property (all as estimated by Mortgagee), less any sums already paid to Mortgagee therefore, divided by the number of months or other payment periods to elapse before one month or payment period prior to the date when such ground rents, premiums, water rents, fire district charges, taxes and assessments will become due, such sums to be held by Mortgagee in trust, to pay said ground rents, premiums, water rents, fire district charges, taxes and assessments. All payments mentioned in the preceding sentence and the payments to be made on the indebtedness secured hereby shall be added together and the aggregate amount thereof shall be paid by Mortgagor each month or other payment period in a single payment to be applied by Mortgagee to the following items in order set forth: (a) ground rents, taxes, water rents, fire district charges, assessments, fire and other hazard insurance premiums; (b) interest on the indebtedness secured hereby; and (c) the balance, if any, shall be applied toward the payment of the sum hereby secured. Any deficiency in the amount of such aggregate monthly or other periodic payments shall constitute a default under this mortgage. Any excess funds accumulated under this paragraph after payment of the items herein mentioned shall be credited in calculating the monthly or other periodic payments of the same nature required hereunder in the subsequent year; but if the actual amount of any such items shall exceed the estimate therefore, Mortgagor shall without demand forthwith make good the deficiency. Failure by Mortgagor to do so before the due date of such item shall be a default hereunder. If the mortgaged property is sold under foreclosure or is otherwise acquired by Mortgagee after default, any remaining balance of the accumulations under this paragraph shall be credited to the principal of the secured indebtedness as of the date of the foreclosure sale or as of

the date the property is otherwise acquired.

5.     That it will take good care of the mortgaged property and the personal property described above and will not commit or permit any waste thereon or thereof, and that it will keep the same repaired and at all times will maintain the same in as good condition as it now is, reasonable wear and tear alone excepted.  If Mortgagor fails to make repairs to the mortgaged property, Mortgagee may make such repairs at Mortgagor' expense (but Mortgagee is not obligated to do so).  Mortgagee, its agents and employees, may enter the mortgaged property and any improvements thereon at any reasonable time for the purpose of inspecting or repairing such improvements.

6.     That all amounts expended by Mortgagee for insurance or for the payment of taxes or assessments or to discharge liens on the mortgaged property or any improvements thereon shall become a debt due Mortgagee, shall be payable at once without demand upon or notice to any person, shall bear interest at the rate of interest payable on the principal sum of the note described above, or if no such rate of interest is specified in the note or if the rate specified would be unlawful, at the rate of 12% per annum from the date of payment by Mortgagee, and such debt and the interest thereon shall be secured by this mortgage.  Upon failure of Mortgagor to reimburse Mortgagee for all amounts so expended, at the election of Mortgagee and with or without notice to any person, Mortgagee may declare the entire indebtedness secured by this mortgage due and payable and may foreclose this mortgage as hereinafter provided or as provided by law.

7.     That no delay or failure of Mortgagee to exercise any option to declare the maturity of any debt secured by this mortgage shall be taken or deemed as a waiver of the right to exercise such option or to declare such forfeiture either as to past or present defaults on the part of Mortgagor, and that the procurement of insurance or payment of taxes or other liens or

assessments or obligations by Mortgagee shall not be taken or deemed as a waiver of the right to accelerate the maturity of the indebtedness hereby secured by reason of the failure of Mortgagor to procure such insurance or to pay such taxes, liens, assessments or obligations, it being agreed by Mortgagor that no terms or conditions contained in this mortgage can be waived, altered or changed except by a writing signed by Mortgagee.

8. That the Mortgagor who is obligated to pay the indebtedness hereby secured will well and truly pay and discharge such indebtedness as it shall become due and payable, including the note or notes described above, any renewals or extensions thereof, and any other notes or obligations of such Mortgagor to Mortgagee, whether now or hereafter incurred.

9. That if default shall be made in the payment of any of the indebtedness hereby secured, or in the performance of any of the terms or conditions of this mortgage, Mortgagee may proceed to collect the rent, income and profits from the mortgaged property, either with or without the appointment of a receiver (to which appointment Mortgagor hereby consent), and Mortgagee may notify the lessees or other payors thereof to make payment directly to Mortgagee. Any rents, income and profits collected by Mortgagee prior to foreclosure of this mortgage, less the costs of collecting the same, including any real estate or property management commissions and attorney's fees incurred, shall be credited first to advances made by Mortgagee and the interest thereon, then to interest due on the indebtedness hereby secured, and the remainder, if any, shall be applied toward the payment of the principal sum hereby secured.

10. That if possession of the mortgaged property is allowed to remain in any other person or entity to the exclusion of Mortgagor for a period of one year or more, or if all or any part of the mortgaged property or any interest therein is sold, assigned, transferred or conveyed by Mortgagor, or any of them, without Mortgagee's prior written consent, excluding only (a) the

creation of a lien or encumbrance expressly subordinate to this mortgage, (b) the creation of a purchase money security interest for household appliances, (c) a transfer by devise, descent or by operation of law upon the death of a joint tenant, or (d) the grant of any leasehold interest of one year or less (including all mandatory or optional renewal periods) not containing an option to purchase, Mortgagee may, at Mortgagee's option declare all indebtedness secured by this mortgage to be due and payable immediately with or without notice to Mortgagor. Mortgagee may condition its consent to any such transfer of possession of, or an interest in, the mortgaged property upon the transferee's agreeing to pay a greater rate of interest on all or any part of the indebtedness secured by this mortgage or to adjust the payment schedule of all or any part of the indebtedness secured by this mortgage, upon Mortgagee's approval of the creditworthiness of the transferee, and upon the transferee's payment to Mortgagee of a reasonable transfer or assumption fee. Upon breach by Mortgagor of the covenants herein contained, Mortgagee may, at its election, proceed to foreclose this mortgage as hereinafter provided or as provided by law.

11. That all the covenants and agreements of Mortgagor herein contained shall extend to and bind its successors and assigns, and that such covenants and agreements and all options, rights, privileges and powers herein given, granted or secured to Mortgagee shall inure to the benefit of the successors and assigns of Mortgagee.

12. That the provisions of this mortgage and the note or notes secured hereby are severable, and that the invalidity or unenforceability of any provision of this mortgage or of any such note or notes shall not affect the validity and enforceability of the other provisions of this mortgage or of such note or notes. The remedies provided to Mortgagee herein are cumulative with the rights and remedies of Mortgagee at law and in equity, and such rights and remedies may be exercised concurrently and consecutively. A carbon or photostat copy of this mortgage may be

filed as a financing statement in any public office.

UPON CONDITION, HOWEVER, that if Mortgagor shall well and truly pay and discharge all the indebtedness hereby secured (including future advances) as the same shall become due and payable and shall in all things do and perform all acts and agreements by them herein agreed to be done according to the tenor and effect thereof, then and in that event only this conveyance and the security interest herein granted shall be and become null and void; but should default be made in the payment of any indebtedness hereby secured or any renewals or extensions thereof or should any interest thereon remain unpaid at maturity, or should default be made in the repayment of any sum expended by Mortgagee under the authority of any provision of this mortgage, or should the interest of Mortgagee in the mortgaged property or any of the personal property described above become endangered by reason of the enforcement of any lien or encumbrance thereon, or should a petition to condemn any part of the mortgaged property be filed by any authority, person or entity having power of eminent domain, or should any law, either state or federal, be passed imposing or authorizing the imposition of a specific tax upon this mortgage or the indebtedness hereby secured or permitting or authorizing the deduction of any such tax from the principal or interest secured by this mortgage or by virtue of which any tax or assessment upon the mortgaged property shall be charged against the owner of this mortgage, or should at any time any of the covenants contained in this mortgage or in any note or other evidence of indebtedness secured hereby be declared invalid or unenforceable by any court of competent jurisdiction, or should Mortgagor fail to do and perform any other act or thing herein required or agreed to be done, then in any of said events the whole of the indebtedness hereby secured, or any portion or part thereof which may at said date not have been paid, with interest thereon,

shall at once become due and payable and this mortgage subject to foreclosure at the option of Mortgagee, notice of the exercise of such option being hereby expressly waived by Mortgagor, and Mortgagee shall have the right to enter upon and take possession of the mortgaged property and after or without taking such possession to sell the same before the Court House door of the County (or the division thereof) where said property, or any substantial part of said property, is located, at public outcry for cash, after first giving notice of the time, place and terms of such sale by publication once a week for three consecutive weeks prior to said sale in some newspaper published in said County; and upon the payment of the purchase price, Mortgagee or the auctioneer at said sale is authorized to execute to the purchaser for and in the name of Mortgagor a good and sufficient deed to the property sold. And upon the occurrence of any such event, Mortgagee shall have the rights and remedies of a secured party after default by its debtor under the Alabama Uniform Commercial Code, including, without limitation, the right to take possession of any of the property herein transferred which is personal property and to sell the same at one or more public or private sales, at the election of Mortgagee. At Mortgagee's request, Mortgagor agrees to assemble such property and to make the same available to Mortgagee at such place as Mortgagee shall reasonably designate. Mortgagor agrees that notice of the time and place of any public sale or of the time after which any private sale or other intended or disposition of said property, or of any part thereof, will be held shall be sufficient if delivered to Mortgagor or mailed to Mortgagor at the address set forth above, or such other address as Mortgagor shall have furnished to Mortgagee in writing for that purpose, not less than five days before the date of such sale or other intended disposition of said property. Mortgagee shall apply the proceeds of said sale or sales under this mortgage

as follows: First, to the expense of advertising, selling and conveying, including a reasonable attorneys' fee not exceeding 15% of the unpaid debt after default if the original amount financed exceeded $300; second, to the payment of any amounts that may have been expended or that may then be necessary to expend in paying insurance, taxes and other encumbrances, with interest thereon; third, to the payment of the indebtedness hereby secured and interest thereon in such order as Mortgagee may elect, whether such debts shall or shall not have fully matured at the date of sale; and fourth, the balance, if any, to be paid over to Mortgagor or to whomsoever then appears of record to be the owner of Mortgagor's interest in said property. Mortgagee may bid and become the purchaser of the mortgaged property at any foreclosure sale hereunder. Mortgagor hereby waives any requirement that the mortgaged property be sold in separate tracts and agree that Mortgagee may, at its option, sell said property en masse regardless of the number of parcels hereby conveyed.

IN WITNESS WHEREOF, the undersigned has hereunto set his signature and seal or has caused this instrument to be executed by its officer(s) thereunto duly authorized, this 17 day of March, 2023.

FAIROFFERCASHNOW, INC.
a Tennessee corporation

BY: _____

Abbigail Thomson
Its:    Authorized Signer

STATE OF TENNESSEE      )

**Rutherford** COUNTY      )

I, the undersigned, a Notary Public in and for said County, in said State, hereby certify

that Abbigail Thomson whose name as Authorized signer of

FAIROFFERCASHNOW, INC., a Tennessee corporation, is signed to the foregoing

conveyance and who is known to me, acknowledged before me on this day that, being

informed of the contents of the above and foregoing Mortgage, she in his capacity as

such officer and with full authority executed the same voluntarily for and as the act of

said corporation.

Given under my hand and official seal this __**7**__ day of March, 2023.

Notary Public

My Commission Expires: **Aug. 15. 2026**

# EXHIBIT "A"
## Legal Description

A part of the NW ¼ of the SE ¼ of Section 14, Township 11 South, Range 3 West, Cullman County, Alabama being more particularly described as follows:

Begin at a point where the West line of the NW ¼ of the SE ¼ of Section 14, Township 11 South, Range 3 West intersects the North margin of Beech Grove Road in Cullman County, Alabama; thence run Southeasterly along the North margin of said road for 225.0 feet to the Southwest corner of the Jarrett W. Lynch Lot as recorded in Book 294, page 939; thence run North and parallel to the West line of said ¼- ¼ section for 640.0 feet; thence run West for 220.0 feet more or less to a point on the West line of said ¼ -1 4/ section; thence run South 620.0 feet, more or less to the Point of Beginning.

Less and except the following:

Commence at a point on the West line of the NW ¼ of the SE ¼ of Section 14, Township 11 South, Range 3 West where said line intersects the North margin of a county gravel road; thence run North and along said West line for a distance of 620.0 feet; thence run East for a distance of 70.0 feet, to the Point of Beginning; thence continue along same line for a distance of 150.0 feet to an old iron corner; thence run South and parallel to the West line for a distance of 150.0 feet; thence run North for a distance of 150.0 feet to the Point of Beginning.

Authority Title and Escrow
745 South Church Street
#407
Murfreesboro, TN 37130
(615) 819-5880

ALTA Borrower's Settlement Statement

| File #: | TN-23-1524 | Property | 1968 Crossville Highway | Settlement Date | 08/29/2023 |
|---------|------------|----------|-------------------------|-----------------|------------|
| Prepared: | 08/29/2023 | | Sparta, TN 38583 | Disbursement Date | 08/29/2023 |
| Escrow Officer: | Melanie Harper | Borrower | FairOfferCashNow, Inc | | |
| | | | PO Box 11891 | | |
| | | | Murfreesboro, TN 37129 | | |
| | | Lender | Justin Cutler | | |
| | | | 1204 15th Avenue South | | |
| | | | Nashville, TN 37212 | | |

| Description | Borrower | |
|-------------|----------|----------|
| | **Debit** | **Credit** |
| **Primary Charges & Credits** | | |
| Loan Amount | | $144,020.00 |
| | | |
| **Loan Charges** | | |
| Origination Fee to Justin Cutler | $4,020.00 | |
| . | | |
| **Payoffs/Payments** | | |
| Payoff to Equity Trust Company, Custodian FBO Justin Cutler | $6,291.22 | |
| Principal : $6,278.17 | | |
| Additional Interest : $13.05 | | |
| | | |
| **Government Recording and Transfer Charges** | | |
| Recording Fees | $23.00 | |
| ---Mortgage: $23.00 | | |
| Mortgage Tax (Mortgage) to White County Register of Deeds | $163.32 | |
| Record Release to White County Register of Deeds | $12.00 | |
| | | |
| **Title Charges** | | |
| Title - Courier Fee to Authority Title and Escrow | $150.00 | |
| Title - Doc Prep Fee to Authority Title and Escrow | $250.00 | |
| Title - Mobile Notary to PDQ Notary Inc | $175.00 | |
| Title - Search Fee to Authority Title and Escrow | $300.00 | |
| Title - Settlement or Closing Fee to Authority Title and Escrow | $500.00 | |
| | | |
| **Miscellaneous Charges** | | |
| 2022 County Taxes to White County Trustee | $219.00 | |
| Payoff Judgment to 3D Financial | $811.10 | |
| | | |
| | **Debit** | **Credit** |
| Subtotals | $12,914.64 | $144,020.00 |
| Due to Borrower | $131,105.36 | |
| Totals | $144,020.00 | $144,020.00 |

Produced by Authority Title and Escrow
Using Qualia
Case 3:24-bk-03495   Claim 9-1 Part 3   Filed 10/14/24   Desc Exhibit Note & DOT
Page 1 of 9
TN-23-1524
Printed on 08/29/2023

**Acknowledgement**

We/I have carefully reviewed the Settlement Statement and find it to be a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction and further certify that I have received a copy of the Settlement Statement.

We/I authorize Authority Title and Escrow to cause the funds to be disbursed in accordance with this statement.

FairOfferCashNow, Inc, a Corporation

By: _____          8-29-23
Brad Smotherman, Authorized Signatory                          Date

_____          8/29/23
Settlement Agent                                                          Date

NOTE

Date: August 29, 2023

$144,020.00

Property Address: 1968 Crossville Highway, Sparta, TN 38583.

   FOR VALUE RECEIVED the undersigned jointly and severally promise(s) to pay to the order **Justin Cutler,** the principal sum of One Hundred Forty-Four Thousand Twenty dollars and NO/100 ($144,020.00) together with interest thereon from date at the rate of **Fifteen (15.00%)** percent per annum compounded daily until maturity, said Principal and Interest being payable at maturity or sooner. Maturity date of this note being March 1, 2033, at which time balance will become due and payable. Interest will continue to accrue until the balance is paid in full.

        Payments to be remitted to **1204 15**ᵗʰ **Avenue South, Nashville TN 37212** or at such place holder hereof may designate in writing from time to time.

     I will pay principal and interest by making a payment monthly.

     I will make my monthly payment on the 1st day of each month, beginning on October 1, 2023.  I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note.  Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on March 1, 2033, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

        My monthly payment will be in the amount of U.S. $1,800.00.

        Each maker or endorser severally waives demand, protest and notice of maturity, non-payment or protest and all requirements necessary to hold each of them liable as makers and endorsers and should litigation be necessary to enforce this note, each maker and endorser waives trial by jury and consents to the personal jurisdiction and venue of a court of subject matter jurisdiction located in the State of Tennessee and County of White.

        Each maker and endorser further agrees, jointly and severally, to pay all costs of collection, including a reasonable attorney's fee in case the principal of this note or any payment on the principal or any interest thereon is not paid at the respective maturity thereof, or in case it becomes necessary to protect the security hereof, whether suit be brought or not.

        Loan Charges: if law which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected in connection with the loan exceed the permitted limits, then (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make his refund by reducing the principal I owe under this note by making a direct payment to me. If a refund reduces the principal, the reduction

will be treated as a partial prepayment. The converse of this paragraph shall apply in the event that the interest or other loan charges collected or not collected in connection with the loan are deemed to be to minimal or insufficient by applicable law. In such event, I shall make necessary payment to the Note Holder to reconcile any such deficiencies.

This note is to be construed and enforced according to the laws of the State of Tennessee; upon default in the payment of principal and/or interest when due, the whole sum of principal and interest remaining unpaid shall, at the option of the holder, become immediately due and payable and it shall accrue interest at the highest rate allowable by law, or, if no highest rate is otherwise indicated, at eighteen (18%) percent, from the date of default.

If the Note Holder has not received the full amount of any payment by that payment's due date, Borrower will pay a late fee to the Note Holder. The late fee will be 10% of the amount of the overdue payment that remains unpaid more than one day after its due date.

Borrower shall not permit or cause any other encumbrance other than the deed of trust to be recorded pursuant to this loan. Borrower agrees that the recordation of any other lien that is superior or inferior to the deed of trust to be recorded in connection with this indebtedness established by this Promissory Note shall be an event of default which shall entitle the holder of the deed of trust to all rights and remedies established by the deed of trust.

Unless specifically disallowed by law, should litigation arise hereunder, service of process therefore may be obtained through certified mail, return receipt requested; the parties hereto waiving any and all rights they may have to object to the method by which service was perfected.

FairOfferCashNow, Inc

_____

Brad Smotherman, authorized signatory

PREPARED BY:
**Authority Title and Escrow**
745 S Church St Ste 407
Murfreesboro, TN 37130
615-819-5880
File #TN-23-1524


The MAXIMUM PRINCIPAL INDEBTEDNESS for
Tennessee Recording Tax Purposes is **$144,020.00**

State of Tennessee:


# DEED OF TRUST


**1. DATE AND PARTIES.** The date of this Deed of Trust (Security Instrument) is **August 29, 2023** and the parties, their addresses and tax identification numbers, if required, are as follows:

GRANTOR:     **FairOfferCashNow, Inc**
P.O. Box 11891 Murfreesboro, TN 37129


TRUSTEE:     **Authority Title and Escrow of Rutherford County**
745 S Church St, Ste 407, Murfreesboro, TN 37130


LENDER:     **Justin Cutler**
1204 15th Ave S, Nashville, TN 37212


**2. CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (defined below) and Grantor's performance under this Security Instrument, Grantor irrevocably grants, conveys and sells to Trustee, in trust for benefit of Lender, with power of sale, the following described property:

SEE EXHIBIT A

The property is located in **WHITE** County, Tennessee at: **1968 Crossville Highway, Sparta, TN 38583**
together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, ditches, and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above (all referred to as "Property").
**3. MAXIMUM OBLIGATION LIMIT,** The total principal amount secured by this Security Instrument at any one time shall not exceed $144,020.00. This limitation of amount does not include interest and other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument. **Notice: Pursuant to Tenn. Code Ann. § 47-28-105, Borrower may reduce the limit on the maximum amount of total principal indebtedness to be secured under this Deed of Trust.**
**4. SECURED DEBT AND FUTURE ADVANCES.** The term "Secured Debt" is defined as follows:
     A. Debt incurred under the terms of all promissory note(s), contract(s), guaranty(ies) or other evidence of debt described below and all their extensions, renewals, modifications or substitutions. ( When referencing the debts below it is suggested that you include items such as borrowers' names, note amounts, interest rates, maturity dates, etc.)

Note of even date, and maturity date of March 1, 2033, executed simultaneously herewith

     B. All future advances from Lender to Grantor or other future obligations of Grantor to Lender under any promissory note, contract, guaranty, or other evidence of debt executed by Grantor in favor of Lender after this Security Instrument whether or not this Security instrument is specifically referenced. If more than one person signs this Security Instrument, each Grantor agrees that this Security Instrument will secure all future advances and future obligations that are given to or incurred by any one or more Grantor, or any one or more Grantor and others. All future advances and other future obligations are secured by this Security Instrument even though all or part may not yet be advanced. All future advances and other future obligations are secured as if made on the date of this Security Instrument. Nothing in this Security Instrument shall constitute a commitment to make additional or future loans or advances in any amount. Any such commitment must be agreed to in a separate writing.
     C. All obligations Grantor owes to Lender, which may later arise, to the extent not prohibited by law, including but not limited to, liabilities for overdrafts relating to any deposit account agreement between Grantor and Lender.
     D. All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument. This Security Instrument will not secure any other debt if Lender fails to give any required notice of the right of rescission.
**5. PAYMENTS.** Grantor agrees that all payment under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument.
**6. WARRANTY OF TITLE.** Grantor warrants that Grantor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to irrevocably grant, convey and sell the Property to Trustee, in trust, with power to sale. Grantor also warrants that the Property is unencumbered, except for encumbrances of record.
**7. PRIOR SECURITY INTERESTS.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Grantor agrees:
     A. To make all payments when due and to perform or comply with all covenants.
     B. To promptly deliver to Lender any notices that Grantor receives from the holder.
     C. Not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written consent.
**8. CLAIMS AGAINST TITLE.** Grantor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Grantor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Grantor's payment. Grantor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Grantor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Grantor may have against parties who supply labor or materials to maintain or improve the Property.
**9. DUE ON SALE OR ENCUMBRANCE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of the Property with exception to a transfer to Benton Investment Group, LLC. This right is subject to the restrictions imposed by federal law (12 C.F.R. 59), as applicable. This covenant shall run with the Property and shall remain in effect until the Secured Debt is paid in full and this Security Instrument is released.
**10. PROPERTY CONDITION, ALTERATIONS AND INSPECTION.** Grantor will keep the Property in good condition and make all

repairs that are reasonably necessary. Grantor shall not commit or allow any waste, impairment, or deterioration of the Property. Grantor will keep the Property free of noxious weeds and grasses. Grantor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Grantor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Grantor will notify Lender of all demands, proceedings, claims and actions against Grantor, and of any loss or damage to the Property. Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Grantor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Grantor will in no way rely on Lender's inspection.

**11. AUTHORITY TO PERFORM.** If Grantor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Grantor appoints Lender as attorney in fact to sign Grantor's name or pay any amount necessary for performance. Lender's right to perform for Grantor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may take all steps necessary to protect Lender's security interest in the Property, including completion of the construction.

**12. ASSIGNMENT OF LEASES AND RENTS.** Grantor irrevocably grants, conveys and sells to Trustee, in trust for the benefit of Lender, as additional security all the right, title and interest in and to any and all existing or future leases, subleases, and any other written or verbal agreements for the use and occupancy of any portion of the Property, including any extensions, renewals, modifications or substitutions of such agreements (all referred to as "Leases") and rents, issues and profits (all referred to as "Rents"). Grantor will promptly provide Lender with true and correct copies of all existing and future Leases. Grantor may collect, receive, enjoy and use the Rents so long as Grantor is not in default under the terms of this Security Instrument. Grantor agrees that this assignment is immediately effective between the parties to this Security Instrument and effective as to third parties on the recording of this Deed of Trust. This assignment will remain in effect during any redemption period until the Secured Debt is satisfied. Grantor agrees that Lender or Trustee may take actual possession of the Property without the necessity of commencing legal action and that actual possession is deemed to occur when Lender, or its agent, notifies Grantor of default and demands that any tenant pay all future Rents directly to Lender. On receiving notice of default, Grantor will endorse and deliver to Lender any payment of Rents in Grantor's possession and will receive any Rents in trust for Lender and will not commingle the Rents with any other funds. Any amounts collected will be applied in this Security Instrument. Grantor warranty that no default exists under the Leases or any applicable landlord/tenant law. Grantor also agrees to maintain and require any tenant to comply with the terms of the Leases and applicable law.

**13. LEASEHOLDS, CONDOMINIUMS; PLANNED UNIT DEVELOPMENTS.** Grantor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the Property includes a unit in a condominium or a planned unit development, Grantor will perform all of Grantor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

**14. DEFAULT.** Grantor will be in default in any party obligated on the Secured Debt fails to make payment when due. Grantor will be in default if a breach occurs under the terms of this Security Instrument or any other document executed for the purpose of creating, securing or guarantying the Secured Debt. A good faith belief by Lender that Lender at any time is insecure with respect to any person or entity obligated on the Secured Debt or that the prospect of any payment or the value of the Property is impaired shall also constitute an event of default.

**15. REMEDIES ON DEFAULT.** In some instances, federal and state law will require Lender to provide Grantor with notice of the right to cure or other notices and may establish time schedules for foreclosure actions. Subject to these limitations, if any, Lender may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by law if Grantor is in default. At the option of Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. In addition, Lender shall be entitled to all the remedies provided by law, the terms of the Secured Debt, this Security Instrument and any related documents, including without limitation, the power to sell the Property. If there is a default, Trustee shall, in addition to any other permitted remedy, at the request of the Lender, advertise and sell the Property as a whole or in separate parcels at public outcry of the Property to the highest bidder for cash and convey absolute title free and clear of all right, title and interest of Grantor at such time and place as Trustee designates. Trustee shall give notice of sale including the time, terms and place of sale and a description of the Property to be sold as required by the applicable law in effect at the time of the proposed sale. Upon sale of the Property and to the extent not prohibited by law, Trustee shall make and deliver a deed to the Property sold which conveys absolute title to the purchaser, and after first paying all fees, charges and costs, shall pay to Lender all moneys advanced for repairs, taxes, insurance, liens, assessments and prior encumbrances and interest thereon, and the principal and interest on the Secured Debt, paying the surplus, if any, to Grantor. Lender may purchase the Property. The recitals in any deed of conveyance shall be prima facie evidence of the facts set forth therein. All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether or not expressly set forth. The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require complete cure of any existing default. By not exercising any remedy on Grantor's default, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

**16. EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** Except when prohibited by law, Grantor agrees to pay all of Lender's expenses if Grantor breaches any covenant in this Security Instrument. Grantor will also pay on demand any amount incurred by Lender for insuring, inspecting, preserving or otherwise protecting the Property and Lender's security interest. These expenses will bear interest from the date of the payment until paid in full at the highest interest rate in effect as provided in terms of the Secured Debt. Grantor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount may include, but is not limited to, attorneys' fees, court costs, and other legal expenses. This Security Instrument shall remain in effect until released.

**17. ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), and all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substance defined as "hazardous material," "toxic substances," "hazardous waste," "hazardous substance," or "regulated substance," under any Environmental Law. Grantor represents, warrants and agrees that:

A. Except as previously disclosed and acknowledged in writing to Lender, on Hazardous Substance is or will be located, stored or released on or in the Property. This restriction does not apply to small quantities of Hazardous Substances that are generally recognized to be appropriate for the normal use and maintenance of the Property.

B. Except as previously disclosed and acknowledged in writing to Lender, Grantor and every tenant have been, are, and shall remain in full compliance with any applicable Environmental Law.

C. Grantor shall immediately notify Lender if a release or threatened release of a Hazardous Substance occurs on, under or about the Property or there is a violation of any Environmental Law concerning the Property. In such an event, Grantor shall take all necessary remedial action in accordance with any Environmental Law.

D. Grantor shall immediately notify Lender in writing as soon as Grantor has reason to believe there is any pending or threatened investigation, claim, or proceeding relating to the release or threatened release of any Hazardous Substance or the violation of any Environmental Law.

**18. CONDEMNATION.** Grantor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through, eminent domain, or any other means. Grantor authorizes Lender to intervene in Grantor's name in any of the above described actions or claims. Grantor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other Grantor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

**19. INSURANCE.** Grantor shall keep Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires. What Lender requires pursuant to the preceding two sentences can change during the term of the Secured Debt. The insurance carrier providing the insurance shall be chosen by Grantor subject to Lender's approval, which shall not be unreasonably withheld. If Grantor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Security Instrument. All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause." Grantor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Grantor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Grantor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Grantor. Unless otherwise agreed in writing, all insurance proceeds shall be applied to the restoration or repair of the Property or the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due

date of the scheduled payment or change the amount of any payment. Any excess will be paid to Grantor. If the Property acquired by Lender, Grantor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

**20. ESCROW FOR TAXES AND INSURANCE.** Unless otherwise provided in a separate agreement, Grantor will not be required to pay to Lender funds for taxes and insurance in escrow.

**21. FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Grantor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Grantor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Grantor's Obligations under this Security Instrument and Lender's lien status on the Property.

**22. JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Security Instrument are joint and individual. If Grantor signs this Security Instrument but does not sign an evidence of debt, Grantor does so only to mortgage Grantor's interest in the Property to secure payment of the Secured Debt and Grantor does not agree to be personally liable on the Secured Debt. If this Security Instrument secures a guaranty between Lender and Grantor, Grantor agrees to waive any rights that may prevent Lender from bringing any action or claim against Grantor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws. Grantor agrees that Lender and any party to this Security Instrument may extend, modify or make any change in the terms of this Security Instrument or any evidence of debt without Grantor's consent. Such a change will not release Grantor form the terms of this Security Instrument. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Grantor and Lender.

**23. APPLICABLE LAW; SEVERABILITY; INTERPRETATION.** This Security Instrument is governed by the laws of the jurisdiction in which Lender is located, except to the extent otherwise required by the laws of the jurisdiction where the Property is located. This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, this section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

**24. SUCCESSOR TRUSTEE.** Lender, at Lender's option, may from time to time remove Trustee and appoint a successor trustee without any other formality than the designation in writing. The successor trustee, without conveyance of the Property, shall succeed to all the title, power and duties conferred upon Trustee by this Security Instrument and applicable law.

**25. NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Security Instrument, or any other address designated in writing. Notice to one grantor will be deemed to be notice to all grantors.

**26. WAIVERS.** Except to the extent prohibited by law, Grantor waives all rights to homestead, curtesy and dower, appraisement, and the marshalling of liens and assets relating to the Property. In addition, statutory rights of redemption by Grantor after foreclosure sale are expressly waived to the extent not prohibited by law.

**27. OTHER TERMS.** If checked, the following are applicable to this Security Instrument:

\_\_\_\_ **OPEN END MORTGAGE.** This Deed of Trust is an "Open End Mortgage" as defined under Tenn. Code Anno, g 47-28-103 and secures the Secured Debt which includes a revolving line of credit provision. The Secured Debt is due and payable on _____ if not paid earlier. The due date may not be more than twenty years after the date of the Secured Debt. Although the Secured Debt may be reduced to a zero balance, this Security Instrument will remain in effect until released.

\_\_\_ **FIXTURE FILING.** Grantor grants to Lender a security interest in all goods that Grantor owns now or in the future and that are or will become fixtures related to the Property. This Security Instrument suffices as a financing statement and any carbon, photographic or other reproduction may be filed of record for purposes of Article 9 of the Uniform Commercial Code.

\_X\_ **RIDERS.** The covenants and agreements of each of the riders checked below are incorporated into and supplement and amend the terms of this Security Instrument. (Check all Applicable boxes) \_\_ Condominium Rider \_\_ Planned Unit Development Rider Other: X Exhibit A – Legal Description _____ \_\_ Additional Terms.

**SIGNATURES:** By singing below, Grantor agrees to the terms and covenants contained in this Security Instrument and in any attachments. Grantor also acknowledges receipt of a copy of this Security Instrument on the date stated on Page 1.

Dated: August 29, 2023.

FairOfferCashNow, Inc

Brad Smotherman, Authorized signatory

> KAY H STORY
> Notary Public - State of Florida
> Commission # GG 341182
> My Comm. Expires Sep 2, 2023
> Bonded through National Notary Assn.

STATE OF FLORIDA
COUNTY OF WALTON

On this 29th day of August, 2023, before me personally appeared Brad Smotherman known to me known (or proved to me on the basis of satisfactory evidence) to be the person(s) described in and who executed the foregoing instrument, and acknowledged that such person executed the same as such person's free act and deed and who further acknowledged that he is the Authorized Signatory of FairOfferCashNow, Inc and that he is authorized by FairOfferCashNow, Inc to execute this instrument on its behalf.

Sworn to and subscribed before me this the 29th day of August, 2023.

NOTARY PUBLIC: _____
My Commission Expires: _09.02.23_

DL provided

# EXHIBIT A

Land in White County, Tennessee, being described as follows:

Beginning at a metal pin in the Southern most right-of-way of State Highway 70 and lying approximately 400 feet West of Kitty Lou Carson Intersection, said pin is the Northwest corner of this described tract and also a corner Phillips, also this pin lies 32.7 feet West of a State right-of-way maker; thence leaving aforementioned right-of-way going with Phillips, South 7 degrees 19 minutes 25 seconds West 72.95 feet to an 8 inch white oak in the line of Phillips, said tree is the Southwest corner of this described tract and also a corner for Frasier; thence leaving Phillips and going with Frasier South 84 degrees 43 minutes 16 seconds East 186.64 feet to an "X" painter on a flat rock, said "X" is the Southeast corner of this tract; thence leaving Frasier and going with White North 10 degrees 58 minutes 13 seconds East 99.21 feet to a Utility pole located in the Southern right-of-way of Highway No. 70; thence leaving White and going with said right of way South 87 degrees 42 minutes 08 seconds West 196.78 feet to the beginning containing 0.38 acres, more or less as surveyed by David H. Bradley, RLS No. 1137, on April 10. 1980.

Being the same property conveyed to Brad Smotherman by Warranty Deed from David L. Kirby, unmarried, of record in Book RB430, Page 714, Register's Office for White County, Tennessee, dated March 01, 2019 and recorded on March 14, 2019.

Being the same property conveyed to Maribeth Jason and Wanetta Sigler by Warranty Deed from Brad Smotherman of record in Book RB455, Page 119, Register's Office for White County, Tennessee, dated March 06, 2020 and recorded on May 11, 2020.

Being the same property conveyed to FairOfferCashNow, Inc, by Trustee's Deed from R. Houston Akin, Trustee for Brad Smotherman, dated August 8, 2023, of record in Book RB536, Page 710, Register's Office for White County, Tennessee.

File #TN-23-1524
1968 Crossville Highway, Sparta, TN 38583

**PERSONAL GUARANTEE**

This Personal Guarantee is given by Brad Smotherman (Guarantor), as of the 29th day of August, 2023 in order to induce **Justin Cutler** (Lender) to loan the amount of $144,020.00 to FairOfferCashNow, Inc (Borrower) secured by a Deed of Trust mortgage on property located at 1968 Crossville Highway, Sparta, TN 38583.

Guarantor hereby absolutely and unconditionally personally guarantees the full, prompt and faithful performance of the Note and all of the terms, covenants and conditions of the Note and Deed of Trust to be kept or performed by the Borrower, including all payments, additional obligations and all other charges, expenses and costs of every kind and nature which are or may be due now or in the future under the terms of the Note and Deed of Trust irrespective of the validity, regularity or enforceability of the documents.

This Personal Guarantee extends to any and all liability which Borrower has or may have to Lender by reason of matters occurring before, during and after the term of the Guarantee.   In the event there is a default by the Borrower, Guarantor shall pay, reimburse and indemnify Lender for any and all damages, costs, expenses, losses and other liabilities arising or resulting from the default.  The liability of Guarantor is primary, direct, immediate, absolute, continuing, unlimited and Lender may, at its option, proceed against Guarantor without having commenced any action or having obtained any judgment against the Borrower.

Guarantor shall not be discharged or released for any reason including bankruptcy, receivership or other proceedings by or against the Borrower.  The Guarantor hereby waives notice of default in the payment of the Note or violation of the covenants or conditions of the Deed of Trust.  This Personal Guarantee is binding upon Guarantor, his heirs, his legal representatives and assigns and is binding upon and shall inure to the benefit of Lender and its successors and assigns.  No assignment or delegation by Guarantor shall release Guarantor of its obligations under this Personal Guarantee.

This Personal Guarantee shall not be modified orally, but only by a writing signed by both Guarantor and Lender.

In witness whereof, Guarantor has duly signed this Personal Guarantee on the date stated above.

Guarantor:

Brad Smotherman

State of Florida
County of Walton

Personally appeared before me, the undersigned, a notary public in and for said county and state, the within named Brad Smotherman with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who, upon oath, acknowledged that she executed the within instrument for the purposes therein contained.

Witness my hand and official seal at city of Santa Rosa Beach, FL, this 29th day of August, 2023.

Notary Public at Large
My Commission Expires: 09.02.23

DL provided

KAY H STORY
Notary Public - State of Florida
Commission # GG 341182
My Comm. Expires Sep 2, 2023
Bonded through National Notary Assn.

NOTE

Date: September 13, 2021

$61,800.00

Property Address: 2279 Juno Bargerton Rd, Lexington, TN 38351.

    FOR VALUE RECEIVED the undersigned jointly and severally promise(s) to pay to the order **Justin Cutler,** the principal sum of Sixty-One Thousand Eight Hundred dollars and NO/100 ($61,800.00) together with interest thereon from date at the rate of **Fifteen (15.00%)** percent per annum compounded daily until maturity, said Principal and Interest being payable at maturity or sooner. Maturity date of this note being May 1st, 2022, at which time balance will become due and payable. Interest will continue to accrue until the balance is paid in full.

    Payments to be remitted to **1204 15th Avenue South, Nashville TN 37212** or at such place holder hereof may designate in writing from time to time.

    I will pay principal and interest by making a payment monthly.

    I will make my monthly payment on the 1st day of each month, beginning on November 1st, 2021. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on May 1st, 2022, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

    My monthly payment will be in the amount of U.S. $800.00.

    Each maker or endorser severally waives demand, protest and notice of maturity, non-payment or protest and all requirements necessary to hold each of them liable as makers and endorsers and should litigation be necessary to enforce this note, each maker and endorser waives trial by jury and consents to the personal jurisdiction and venue of a court of subject matter jurisdiction located in the State of Tennessee and County of Chattanooga.

    Each maker and endorser further agrees, jointly and severally, to pay all costs of collection, including a reasonable attorney's fee in case the principal of this note or any payment on the principal or any interest thereon is not paid at the respective maturity thereof, or in case it becomes necessary to protect the security hereof, whether suit be brought or not.

    Loan Charges: if law which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected in connection with the loan exceed the permitted limits, then (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make his refund by reducing the principal I owe under this note by making a direct payment to me. If a refund reduces the principal, the reduction

will be treated as a partial prepayment. The converse of this paragraph shall apply in the event that the interest or other loan charges collected or not collected in connection with the loan are deemed to be to minimal or insufficient by applicable law. In such event, I shall make necessary payment to the Note Holder to reconcile any such deficiencies.

This note is to be construed and enforced according to the laws of the State of Tennessee; upon default in the payment of principal and/or interest when due, the whole sum of principal and interest remaining unpaid shall, at the option of the holder, become immediately due and payable and it shall accrue interest at the highest rate allowable by law, or, if no highest rate is otherwise indicated, at eighteen (18%) percent, from the date of default.

If the Note Holder has not received the full amount of any payment by that payment's due date, Borrower will pay a late fee to the Note Holder. The late fee will be 10% of the amount of the overdue payment that remains unpaid more than one day after its due date.

Borrower shall not permit or cause any other encumbrance other than the deed of trust to be recorded pursuant to this loan. Borrower agrees that the recordation of any other lien that is superior or inferior to the deed of trust to be recorded in connection with this indebtedness established by this Promissory Note shall be an event of default which shall entitle the holder of the deed of trust to all rights and remedies established by the deed of trust.

Unless specifically disallowed by law, should litigation arise hereunder, service of process therefore may be obtained through certified mail, return receipt requested; the parties hereto waiving any and all rights they may have to object to the method by which service was perfected.

FairOfferCashNow, Inc

BY: _____

James Garland, authorized signatory

PREPARED BY:
**Regal Title, LLC**
316 W Main St
Murfreesboro, TN 37130
615-295-8042
File #21080752

The MAXIMUM PRINCIPAL INDEBTEDNESS for
Tennessee Recording Tax Purposes is **$61,800.00**

State of Tennessee:

# DEED OF TRUST

**1. DATE AND PARTIES.** The date of this Deed of Trust (Security Instrument) is **September 13, 2021** and the parties, their addresses and tax identification numbers, if required, are as follows:

GRANTOR: **FairOfferCashNow, Inc.**
P.O. Box 11891 Murfreesboro, TN 37129

TRUSTEE: **David B. East of Rutherford County**
316 W Main St, Murfreesboro, TN 37130

LENDER: **Justin Cutler**
1204 15th Ave S, Nashville, TN 37212

**2. CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (defined below) and Grantor's performance under this Security Instrument, Grantor irrevocably grants, conveys and sells to Trustee, in trust for benefit of Lender, with power of sale, the following described property:

**SEE EXHIBIT A**

The property is located in **HENDERSON** County, Tennessee at: **2279 Juno Bargerton Rd, Lexington, TN 38351** together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, ditches, and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above (all referred to as "Property").

**3. MAXIMUM OBLIGATION LIMIT.** The total principal amount secured by this Security Instrument at any one time shall not exceed **$61,800.00.** This limitation of amount does not include interest and other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument. **Notice: Pursuant to Tenn. Code Ann. § 47-28-105, Borrower may reduce the limit on the maximum amount of total principal indebtedness to be secured under this Deed of Trust.**

**4. SECURED DEBT AND FUTURE ADVANCES.** The term "Secured Debt" is defined as follows:

A. Debt incurred under the terms of all promissory note(s), contract(s), guaranty(ies) or other evidence of debt described below and all their extensions, renewals, modifications or substitutions, ( When referencing the debts below it is suggested that you include items such as borrowers' names, note amounts, interest rates, maturity dates, etc.)

Note of even date, and maturity date of May 1, 2022, executed simultaneously herewith

B. All future advances from Lender to Grantor or other future obligations of Grantor to Lender under any promissory note, contract, guaranty, or other evidence of debt executed by Grantor in favor of Lender after this Security Instrument whether or not this Security instrument is specifically referenced. If more than one person signs this Security Instrument, each Grantor agrees that this Security Instrument will secure all future advances and future obligations that are given to or incurred by any one or more Grantor, or any one or more Grantor and others. All future advances and other future obligations are secured by this Security Instrument even though all or part may not yet be advanced. All future advances and other future obligations are secured as if made on the date of this Security Instrument. Nothing in this Security Instrument shall constitute a commitment to make additional or future loans or advances in any amount. Any such commitment must be agreed to in a separate writing.

C. All obligations Grantor owes to Lender, which may later arise, to the extent not prohibited by law, including but not limited to, liabilities for overdrafts relating to any deposit account agreement between Grantor and Lender.

D. All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument. This Security Instrument will not secure any other debt if Lender fails to give any required notice of the right of rescission.

**5. PAYMENTS.** Grantor agrees that all payment under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument.

**6. WARRANTY OF TITLE.** Grantor warrants that Grantor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to irrevocably grant, convey and sell the Property to Trustee, in trust, with power to sale. Grantor also warrants that the Property is unencumbered, except for encumbrances of record.

**7. PRIOR SECURITY INTERESTS.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Grantor agrees:

A. To make all payments when due and to perform or comply with all covenants.

B. To promptly deliver to Lender any notices that Grantor receives from the holder.

C. Not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written consent.

**8. CLAIMS AGAINST TITLE.** Grantor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Grantor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Grantor's payment. Grantor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Grantor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Grantor may have against parties who supply labor or materials to maintain or improve the Property.

**9. DUE ON SALE OR ENCUMBRANCE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of the Property with exception to a transfer to Benton Investment Group, LLC. This right is subject to the restrictions imposed by federal law (12 C.F.R. 59), as applicable. This covenant shall run with the Property and shall remain in effect until the Secured Debt is paid in full and this Security Instrument is released.

**10. PROPERTY CONDITION, ALTERATIONS AND INSPECTION.** Grantor will keep the Property in good condition and make all repairs that are reasonably necessary. Grantor shall not commit or allow any waste, impairment, or deterioration of the Property. Grantor will

keep the Property free of noxious weeds and grasses. Grantor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Grantor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Grantor will notify Lender of all demands, proceedings, claims and actions against Grantor, and of any loss or damage to the Property. Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Grantor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Grantor will in no way rely on Lender's inspection.

**11. AUTHORITY TO PERFORM.** If Grantor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Grantor appoints Lender as attorney in fact to sign Grantor's name or pay any amount necessary for performance. Lender's right to perform for Grantor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may take all steps necessary to protect Lender's security interest in the Property, including completion of the construction.

**12. ASSIGNMENT OF LEASES AND RENTS.** Grantor irrevocably grants, conveys and sells to Trustee, in trust for the benefit of Lender, as additional security all the right, title and interest in and to any and all existing or future Leases, subleases, and any other written or verbal agreements for the use and occupancy of any portion of the Property, including any extensions, renewals, modifications or substitutions of such agreements (all referred to as "Leases") and rents, issues and profits (all referred to as "Rents"). Grantor will promptly provide Lender with true and correct copies of all existing and future Leases. Grantor may collect, receive, enjoy and use the Rents so long as Grantor is not in default under the terms of this Security Instrument. Grantor agrees that this assignment is immediately effective between the parties to this Security Instrument and effective as to third parties on the recording of this Deed of Trust. This assignment will remain in effect during any redemption period until the Secured Debt is satisfied. Grantor agrees that Lender or Trustee may take actual possession of the Property without the necessity of commencing legal action and that actual possession is deemed to occur when Lender, or its agent, notifies Grantor of default and demands that any tenant pay all future Rents directly to Lender. On receiving notice of default, Grantor will endorse and deliver to Lender any payment of Rents in Grantor's possession and will receive any Rents in trust for Lender and will not commingle the Rents with any other funds. Any amounts collected will be applied in this Security Instrument. Grantor warranty that no default exists under the Leases or any applicable landlord/tenant law. Grantor also agrees to maintain and require any tenant to comply with the terms of the Leases and applicable law.

**13. LEASEHOLDS; CONDOMINIUMS; PLANNED UNIT DEVELOPMENTS.** Grantor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the Property includes a unit in a condominium or a planned unit development, Grantor will perform all of Grantor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

**14. DEFAULT.** Grantor will be in default in any party obligated on the Secured Debt fails to make payment when due. Grantor will be in default if a breach occurs under the terms of this Security Instrument or any other document executed for the purpose of creating, securing or guarantying the Secured Debt. A good faith belief by Lender that Lender at any time is insecure with respect to any person or entity obligated on the Secured Debt or that the prospect of any payment or the value of the Property is impaired shall also constitute an event of default.

**15. REMEDIES ON DEFAULT.** In some instances, federal and state law will require Lender to provide Grantor with notice of the right to cure or other notices and may establish time schedules for foreclosure actions. Subject to these limitations, if any, Lender may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by law if Grantor is in default. At the option of Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. In addition, Lender shall be entitled to all the remedies provided by law, the terms of the Secured Debt, this Security Instrument and any related documents, including without limitation, the power to sell the Property. If there is a default, Trustee shall, in addition to any other permitted remedy, at the request of the Lender, advertise and sell the Property as a whole or in separate parcels at public outcry of the Property to the highest bidder for cash and convey absolute title free and clear of all right, title and interest of Grantor at such time and place as Trustee designates. Trustee shall give notice of sale including the time, terms and place of sale and a description of the Property to be sold as required by the applicable law in effect at the time of the proposed sale. Upon sale of the Property and to the extent not prohibited by law, Trustee shall make and deliver a deed to the Property sold which conveys absolute title to the purchaser, and after first paying all fees, charges and costs, shall pay to Lender all moneys advanced for repairs, taxes, insurance, liens, assessments and prior encumbrances and interest thereon, and the principal and interest on the Secured Debt, paying the surplus, if any, to Grantor. Lender may purchase the Property. The recitals in any deed of conveyance shall be prima facie evidence of the facts set forth therein. All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether or not expressly set forth. The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require complete cure of any existing default. By not exercising any remedy on Grantor's default, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

**16. EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** Except when prohibited by law, Grantor agrees to pay all of Lender's expenses if Grantor breaches any covenant in this Security Instrument. Grantor will also pay on demand any amount incurred by Lender for insuring, inspecting, preserving or otherwise protecting the Property and Lender's security interest. These expenses will bear interest from the date of the payment until paid in full at the highest interest rate in effect as provided in terms of the Secured Debt. Grantor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount may include, but is not limited to, attorneys' fees, court costs, and other legal expenses. This Security Instrument shall remain in effect until released.

**17. ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), and all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substance defined as "hazardous material," " toxic substances," "hazardous waste," "hazardous substance," or "regulated substance," under any Environmental Law. Grantor represents, warrants and agrees that:

    A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance is or will be located, stored or released on or in the Property. This restriction does not apply to small quantities of Hazardous Substances that are generally recognized to be appropriate for the normal use and maintenance of the Property.

    B. Except as previously disclosed and acknowledged in writing to Lender, Grantor and every tenant have been, are, and shall remain in full compliance with any applicable Environmental Law.

    C. Grantor shall immediately notify Lender if a release or threatened release of a Hazardous Substance occurs on, under or about the Property or there is a violation of any Environmental Law concerning the Property. In such an event, Grantor shall take all necessary remedial action in accordance with any Environmental Law.

    D. Grantor shall immediately notify Lender in writing as soon as Grantor has reason to believe there is any pending or threatened investigation, claim, or proceeding relating to the release or threatened release of any Hazardous Substance or the violation of any Environmental Law.

**18. CONDEMNATION.** Grantor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through, eminent domain, or any other means. Grantor authorizes Lender to intervene in Grantor's name in any of the above described actions or claims. Grantor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other Grantor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

**19. INSURANCE.** Grantor shall keep Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires. What Lender requires pursuant to the preceding two sentences can change during the term of the Secured Debt. The insurance carrier providing the insurance shall be chosen by Grantor subject to Lender's approval, which shall not be unreasonably withheld. If Grantor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Security Instrument. All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause." Grantor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Grantor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Grantor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss in not made immediately by Grantor. Unless otherwise agreed in writing, all insurance proceeds shall be applied to the restoration or repair of the Property or the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of the scheduled payment or change the amount of any payment. Any excess will be paid to Grantor. If the Property acquired by Lender,

Grantor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

**20. ESCROW FOR TAXES AND INSURANCE.** Unless otherwise provided in a separate agreement, Grantor will not be required to pay to Lender funds for taxes and insurance in escrow.

**21. FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Grantor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Grantor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Grantor's Obligations under this Security Instrument and Lender's lien status on the Property.

**22. JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Security Instrument are joint and individual. If Grantor signs this Security Instrument but does not sign an evidence of debt, Grantor does so only to mortgage Grantor's interest in the Property to secure payment of the Secured Debt and Grantor does not agree to be personally liable on the Secured Debt. If this Security Instrument secures a guaranty between Lender and Grantor, Grantor agrees to waive any rights that may prevent Lender from bringing any action or claim against Grantor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws. Grantor agrees that Lender and any party to this Security Instrument may extend, modify or make any change in the terms of this Security Instrument or any evidence of debt without Grantor's consent. Such a change will not release Grantor form the terms of this Security Instrument. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Grantor and Lender.

**23. APPLICABLE LAW; SEVERABILITY; INTERPRETATION.** This Security Instrument is governed by the laws of the jurisdiction in which Lender is located, except to the extent otherwise required by the laws of the jurisdiction where the Property is located. This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, this section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

**24. SUCCESSOR TRUSTEE.** Lender, at Lender's option, may from time to time remove Trustee and appoint a successor trustee without any other formality than the designation in writing. The successor trustee, without conveyance of the Property, shall succeed to all the title, power and duties conferred upon Trustee by this Security Instrument and applicable law.

**25. NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Security Instrument, or any other address designated in writing. Notice to one grantor will be deemed to be notice to all grantors.

**26. WAIVERS.** Except to the extent prohibited by law, Grantor waives all rights to homestead, curtsey and dower, appraisement, and the marshalling of liens and assets relating to the Property. In addition, statutory rights of redemption by Grantor after foreclosure sale are expressly waived to the extent not prohibited by law.

**27. OTHER TERMS.** If checked, the following are applicable to this Security Instrument:

    _____ **OPEN END MORTGAGE.** This Deed of Trust is an "Open End Mortgage" as defined under Tenn. Code Anno, g 47-28-103 and secures the Secured Debt which includes a revolving line of credit provision. The Secured Debt is due and payable on _____ _____ if not paid earlier. The due date may not be more than twenty years after the date of the Secured Debt. Although the Secured Debt may be reduced to a zero balance, this Security Instrument will remain in effect until released.

    _X_ **FIXTURE FILING.** Grantor grants to Lender a security interest in all goods that Grantor owns now or in the future and that are or will become fixtures related to the Property. This Security Instrument suffices as a financing statement and any carbon, photographic or other reproduction may be filed of record for purposes of Article 9 of the Uniform Commercial Code.

    _X_ **RIDERS.** The covenants and agreements of each of the riders checked below are incorporated into and supplement and amend the terms of this Security Instrument. (Check all Applicable boxes) __ **Condominium Rider** __ **Planned Unit Development Rider Other:** <u>X</u> <u>Exhibit A – Legal Description</u> __ **Additional Terms.**

**SIGNATURES:** By singing below, Grantor agrees to the terms and covenants contained in this Security Instrument and in any attachments. Grantor also acknowledges receipt of a copy of this Security Instrument on the date stated on Page 1.

**Dated:** <u>September 13, 2021.</u>

FairOfferCashNow, Inc

BY: _____

    James Garland, authorized signatory

STATE OF TENNESSEE
COUNTY OF RUTHERFORD

On this 13th day of September, 2021, before me personally appeared James Garland known to me known (or proved to me on the basis of satisfactory evidence) to be the person(s) described in and who executed the foregoing instrument, and acknowledged that such person executed the same as such person's free act and deed and who further acknowledged that he is the authorized signatory for FairOfferCashNow, Inc. and that he is authorized by FairOfferCashNow, Inc. to execute this instrument on its behalf.

Sworn to and subscribed before me this the 13th day of September, 2021.

NOTARY PUBLIC:
My Commission Expires: _____

# EXHIBIT A

A certain tract or parcel of land lying and being situated in the First Civil District of Henderson County, Tennessee, and being more particularly described as follows, to wit:

Beginning on a found iron pin (set by Randy Green) in the Northern margin of Juno-Bargerton Road (paved county road 50 foot R/W) at the Southeast corner of a 3.00 acre tract, said iron pin being located South 84 degrees 25 minutes 55 seconds East a distance of 470.14 feet from the Southeast corner of Shannon Burton (DB 181, page 716, Tax map 54, Parcel 13.01); thence leaving the road and running with the Eastern line of the 3 acre tract, North 01 degrees 13 minutes 30 seconds East passing an existing iron pin on the line at 300 feet, a total distance of 625.47 feet to a found iron pin; thence with a new distance line of Wilkes, Jones, Haggard, and Hight as follows: South 75 degrees 00 minutes 00 seconds East, passing a steel post set on line at 225.00 feet, a total distance of 240.00 feet to a point in the center of a ditch; thence with the center of this ditch, South 01 degrees 43 minutes 22 seconds West a distance of 396.71 feet to the intersection of said ditch with another ditch from the East; thence continuing with the center of the ditch, South 13 degrees 50 minutes 16 seconds West a distance of 190.51 feet to a point in the Northern margin of the Juno-Bargerton Road about 10 feet North of the Northern end of a metal culvert; thence with the Northern margin of said road, North 84 degrees 25 minutes 55 seconds West a distance of 188.59 feet to the beginning, contain 135,930 square feet, or 2.12 acres, surveyed by Denny Bush, Tennessee RLS Number 1577, on April 21, 1997. Bearings are magnetic.

Also situated on this property is a 2003 Fleetwood Sand Ponte 28' x 80' mobile home. Serial No. TNFL327A/858830-SP-12.

Being the same property conveyed to Kimberly Little and Dewayne Shields, married by Cash Deed for Tennessee from The Secretary of Housing and Urban Development of Washington, D. C. of record in Book 255, page 331, Register's Office for Henderson County, Tennessee, dated May 23, 2013 and recorded on May 29, 2013. Dewayne Shields having since died March 29, 2016, leaving title solely vested in Kimberly Little.

Further being the same property conveyed to FairOfferCashNow, Inc by Warranty Deed from Kimberly Little, widowed, dated September 13, 2021, of record in Book _____, Page _____, Register's Office for Henderson County, Tennessee.

**Regal Title, LLC**
**ALTA Universal ID 1144484**
**316 West Main Street**
**Murfreesboro, TN 37130**

| | |
|---|---|
| **File No./Escrow No.:** | 21080752 |
| **Print Date & Time:** | September 10, 2021 at 01:31 PM |
| **Officer/Escrow Officer:** | |
| **Settlement Location:** | 316 W Main St, Murfreesboro, TN 37130 |
| **Property Address:** | 2279 Juno Bargerton Rd |
| | Lexington, TN 38351 |
| **Borrower:** | FairOfferCashNow Inc. |
| **Seller:** | Kimberly Little |
| **Lender:** | Justin Cutler |
| **Settlement Date:** | September 13, 2021 |
| **Disbursement Date:** | September 13, 2021 |

| Seller | | Description | Borrower/Buyer | |
|---|---|---|---|---|
| **Debit** | **Credit** | | **Debit** | **Credit** |
| | | **Financial** | | |
| | $ 35,000.00 | Sale Price of Property | $ 35,000.00 | |
| | | Loan Amount | | $ 61,800.00 |
| | | **Prorations/Adjustments** | | |
| $ 289.23 | | County Taxes | | $ 289.23 |
| | | 01/01/21 to 09/13/21 | | |
| | | **Loan Charges to Justin Cutler** | | |
| | | Origination Fee | $ 1,800.00 | |
| | | **Other Loan Charges** | | |
| | | **Impounds** | | |
| | | **Title Charges & Escrow / Settlement Charges** | | |
| | | Title - Lender's Title Insurance | $ 270.00 | |
| | | to  Regal Title, LLC | | |
| | | Coverage:     $ 61,800.00 | | |
| | | Premium:     $ 134.38 | | |
| | | Title - Owner's Title Insurance (optional) | $ 29.38 | |
| | | to  Regal Title, LLC | | |
| | | Coverage:     $ 35,000.00 | | |
| | | Premium:     $ 165.00 | | |
| | | Title - Closing Fee Seller     to  Regal Title, LLC | $ 500.00 | |

Copyright 2015 American Land Title Association

| Seller | | | | Borrower/Buyer | |
|---|---|---|---|---|---|
| Debit | Credit | | | Debit | Credit |
| | | Title - Closing Fee Buyer | to Regal Title, LLC | $ 200.00 | |
| | | Title - Doc Prep | to Regal Title, LLC | $ 150.00 | |
| | | Title - Search Fee | to Regal Title, LLC | $ 300.00 | |
| | | **Government Recording and Transfer Charges** | | | |
| | | Recording Fees | to Henderson County Register of Deeds | $ 36.00 | |
| | | Deed:$13.00 Mortgage:$23.00 | | | |
| | | Transfer Tax - Deed | to Henderson County Register of Deeds | $ 129.50 | |
| | | Transfer Tax - Mortgage | to Henderson County Register of Deeds | $ 68.77 | |
| | | **Payoffs** | | | |
| | | **Miscellaneous** | | | |
| $ 457.00 | | 2020 County Taxes | to Henderson County Trustee | | |
| $ 746.23 | $ 35,000.00 | **Subtotals** | | $ 38,483.65 | $ 62,089.23 |
| $ 34,253.77 | | **Balance Due TO** | | $ 23,605.58 | |
| $ 35,000.00 | $ 35,000.00 | **TOTALS** | | $ 62,089.23 | $ 62,089.23 |

## Acknowledgement

We/I have carefully reviewed the ALTA Settlement Statement and find it to be a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction and further certify that I have received a copy of the ALTA Settlement Statement. We/I authorize Regal Title, LLC to cause the funds to be disbursed in accordance with this statement.

FairOfferCashNow Inc.

BY: _____

 James Garland, authorized signatory

Kimberly Little

, Escrow Officer

# Settlement Statement

## Your Order Summary

| | | | | | |
|---|---|---|---|---|---|
| FILE # | GNT-23-3118 | PROPERTY ADDRESS | 2701 Benton Avenue<br>Chattanooga, TN 37406 | LOAN # | |
| PREPARED | 12/15/2023 | | FairOfferCashNow, Inc.<br>PO Box 11891<br>Murfreesboro, TN 37129 | TITLE BY | Greater Nashville Title, LLC |
| SETTLEMENT | 12/19/2023 | BUYER | | OUR ADDRESS | 4603 Gallatin Pike<br>Nashville, TN 37216 |
| DISBURSEMENT | 12/19/2023 | | Fifty One Bricks At A<br>Time Properties, LLC | OUR PHONE # | (615) 865-1470 |
| SETTLEMENT LOCATION | 4603 Gallatin Pike<br>Nashville, TN 37216 | SELLER | 3661 Brainerd Road<br>Suite 302<br>Chattanooga, TN 37411 | ATTORNEY | Steven Disser |
| | | LENDER | Justin Cutler<br>1204 15th Avenue South<br>Nashville, TN 37212 | | |

## Charges

| SELLER DEBIT | SELLER CREDIT | PRIMARY CHARGES & CREDITS | BUYER DEBIT | BUYER CREDIT |
|---|---|---|---|---|
| | $58,000.00 | Sales Price of Property | $58,000.00 | |
| | | Loan Amount ($131,840.00) | | $131,840.00 |
| | | Funds Retained | $45,000.00 | |

| SELLER DEBIT | SELLER CREDIT | PRORATIONS/ADJUSTMENTS | BUYER DEBIT | BUYER CREDIT |
|---|---|---|---|---|
| | $24.05 | City/Town Taxes 12/19/2023 to 01/01/2024 | $24.05 | |
| | $17.55 | County Taxes 12/19/2023 to 01/01/2024 | $17.55 | |

| SELLER DEBIT | SELLER CREDIT | LOAN CHARGES | BUYER DEBIT | BUYER CREDIT |
|---|---|---|---|---|
| | | 3% of Loan Amount (Points) | $3,840.00 | |
| | | Future Release Doc Prep to Greater Nashville Title, LLC | $25.00 | |
| | | Future Release recording fee to Greater Nashville Title, LLC | $22.00 | |
| | | Prepaid Interest ($54.18 per day from 12/19/2023 to 12/01/2023) | | |

| SELLER DEBIT | SELLER CREDIT | PAYOFFS | BUYER DEBIT | BUYER CREDIT |
|---|---|---|---|---|
| $35,031.01 | | Payoff to SmartBank | | |
| | | Principal : $34,818.32 | | |
| | | Interest : $173.21 | | |
| | | Late Charge : $39.48 | | |

| SELLER DEBIT | SELLER CREDIT | GOVERNMENT RECORDING AND TRANSFER CHARGES | BUYER DEBIT | BUYER CREDIT |
|---|---|---|---|---|
| | | Recording Fees | $66.00 | |
| | | ---Deed: $23.00 | | |
| | | ---Mortgage: $43.00 | | |
| | | Mortgage Tax (Deed of Trust) to Hamilton County Recording Office | $149.32 | |
| | | Realty Transfer Tax (Deed) to Hamilton County Recording Office | $214.60 | |

| SELLER DEBIT | SELLER CREDIT | TITLE CHARGES | BUYER DEBIT | BUYER CREDIT |
|---|---|---|---|---|
| | | Title - Buyer Settlement Fee to Greater Nashville Title, LLC | $100.00 | |
| | | Title - Lender's Title Policy to Fidelity National Title Insurance Company | $993.69 | |
| | | Title - Secure Storage Fee to Greater Nashville Title, LLC | $35.00 | |
| | | Title - Seller Settlement Fee to Greater Nashville Title, LLC | $250.00 | |
| | | Title - Title Search and Examination Fee to Greater Nashville Title, LLC | $300.00 | |
| | | Title - Wire Fee for Payoff to Greater Nashville Title, LLC | $25.00 | |
| | | Title - Owner's Title Policy to Fidelity National Title Insurance Company | $101.41 | |

| SELLER DEBIT | SELLER CREDIT | MISCELLANEOUS CHARGES | BUYER DEBIT | BUYER CREDIT |
|---|---|---|---|---|
| | | E-Recording Fee to Simplifile | $10.00 | |
| | | Mobile Notary Fee to Network Transaction Solutions | $150.00 | |
| | | UPS Reimbursement to Greater Nashville Title, LLC | $40.00 | |

| SELLER DEBIT | SELLER CREDIT | TOTALS | BUYER DEBIT | BUYER CREDIT |
|---|---|---|---|---|
| $35,031.01 | $58,041.60 | | $109,363.62 | $131,840.00 |

**CASH TO BUYER**   $22,476.38

**CASH TO SELLER**   $23,010.59

**See signature addendum**

# Signature Addendum

## Acknowledgement

We/I have carefully reviewed this settlement statement and find it to be a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction and further certify that I have received a copy of this settlement statement.

We/I authorize **Greater Nashville Title, LLC** to cause the funds to be disbursed in accordance with this statement.

**Buyer**

FairOfferCashNow, Inc., a Tennessee Corporation

By: _Elizabeth Reyes_ 12/18/23
Elizabeth Reyes, Authorized Agent          Date

**Seller**

Fifty One Bricks At A Time Properties, LLC, a Wyoming Limited Liability Company

By: _____
Cassandra Renee Ford, Sole Member          Date

## Settlement Agency

_____
Settlement Agent          Date

## BUYER CERTIFICATION AND AGREEMENT (the "Agreement")

For and in consideration of the closing services provided by the Settlement Agents and Underwriter (identified in Paragraph 1, below), the undersigned BUYER (identified in Paragraph 1, below) warrants, represents, and agrees as follows:

1. **Definitions.** "**Buyer**" is FairOfferCashNow, Inc.
   "**Seller**" is Fifty One Bricks At A Time Properties, LLC
   "**Buyer Title Agent**" is Greater Nashville Title, LLC
   "**Seller Title Agent**" is Greater Nashville Title, LLC
   "**Disbursing Title Agent**" is Buyer Title Agent in a lender-financed transaction or Seller Title Agent in cash only transaction
   "**Title Insurance Company**" is Fidelity National Title Insurance Company
   "**Real Property**" means 2701 Benton Avenue, Chattanooga, TN 37406
   "**Premises**" means the Real Property including any and all personal property remaining on the Real Property.
   "**Settlement Agents**" means Buyer Title Agent and Seller Title Agent, individually and collectively.
   "**Settlement Agents and Underwriter**" means Buyer Title Agent, Seller Title Agent, and Title Insurance Company, individually and collectively

2. **Property Taxes; Rollback Taxes.** If the Buyer and Seller have agreed in their purchase and sale agreement to prorate current year property taxes, such tax proration will be based on the actual tax bill when available. During the period when the actual current year's tax bill is not available (usually January through early October), the proration will be made based on an estimate using last year's property tax bill(s), or, less commonly the purchase price of the Premises. Buyer/Borrower agrees notwithstanding anything in this Agreement or the purchase and sale agreement to the contrary, that the Settlement Agents shall not be responsible for contacting the Buyer or Seller regarding any tax adjustment or for determining or enforcing rollback taxes or any amount to be prorated, and shall be held harmless by Seller from any claim, disagreement, lawsuit, or dispute involving the matters in this paragraph.

3. **Shortages.** If after closing it is discovered Buyer paid to the Disbursing Title Agent amounts in excess of the amount needed to pay off an account, the Disbursing Title Agent will provide reasonable assistance to the Buyer/Borrower in order to recover the balance. If after closing it is discovered there are any shortages in any amounts due by Buyer/Borrower to any entity being paid in the course of this real estate transaction, or if there is a shortage in the amount collected from Buyer/Borrower at closing, Buyer/Borrower will immediately and fully pay to the Disbursing Title Agent, or to the designated entity, all funds necessary to pay the amount(s) due (including any late charges) in full. This obligation may apply to any person, or entity to which funds are owed, including without limitation, the Settlement Agents and Underwriter, the Buyer, and/or any lender, entity, or creditor which has received, or is to receive, payment from the Disbursing Title Agent for debt(s) owed by the Buyer/Borrower, and includes, without limitation, amounts which may have been inadvertently misstated or omitted from the HUD-1 or ALTA Settlement Statement. If an account is closed or if a creditor refuses to accept payment, the Disbursing Title Agent shall have the right to deposit the funds in a court of competent jurisdiction and thereupon be discharged from all liabilities and duties with respect to the funds.

4. (a) **Correction of Documents.** Buyer/Borrower agrees to cooperate and assist in the correction, initialing, or signing of all documents and of all typographical, clerical, mathematical, and/or other mistakes, errors, or omissions, or to sign new documents in the event the original documents are lost, or misplaced, were inadvertently not signed, or inadvertently destroyed. Buyer/Borrower agrees to correct, initial, or sign additional and/or corrected documents upon the request of the Settlement Agents or either of them within five (5) business days from the date of request. Any written request by the Title Agent to the Buyer/Borrower's last known address to correct, initial, or sign replacement, additional documents or corrective documents shall be prima facie evidence of the necessity of the request, and Buyer/Borrower's failure or refusal to take the requested action shall be in breach of this Agreement. The remedies available to the Title Agent include, but are not limited to, injunctive relief and damages.

   (b) **Temporary Limited Power of Attorney.** Each Buyer/Borrower, individually, appoints Buyer/Borrower's Title Agent and its designated employee as Buyer/Borrower's respective attorney in fact to correct any typographical or clerical errors (but not mathematical errors), and to initial and or sign same for each Buyer/Borrower, and then to provide a copy of same to Buyer/Borrower. This power of attorney is durable and coupled with an interest and shall survive the disability of the grantor and shall be irrevocable until it **automatically terminates 120 days from this date.**

6. **Settlement Agents may share documents with Realtors, HOA's, Lenders, and Underwriter.** Buyer/Borrower hereby authorizes the Settlement Agents or either of them to provide copies of documents pertaining to this transaction which may or may

not be deemed nonpublic personal information to the real estate brokers and real estate agents, if any, the mortgage lender(s), if any, the homeowners association and property managers, if any, and the Underwriter, if any, involved in this transaction.

**7. Services Provided Acknowledgment.** Buyer hereby acknowledge that neither Greater Nashville Title, LLC nor its attorney(s) ("Settlement Agent") have represented themselves as a law firm, nor have they rendered any legal, tax or financial advice in connection with the closing of this transaction or otherwise. We hereby understand and acknowledge that the purpose of the Settlement Agent is to close this transaction in accordance with the terms and agreements set forth in the Real Estate Contract entered into by the parties.

**8. Intended Use.** Buyer hereby acknowledges Settlement Agent has not guaranteed any particular intended use of the property to the Buyer. Buyer hereby acknowledges that due diligence to determine suitability for any intended use is the sole responsibility of the Buyer and should be discussed with Buyer 's Agent prior to the closing of the real estate transaction.

**9. Consideration and Buyer/Borrower Indemnity.** Buyer/Borrower understands and acknowledges (a) this Agreement and the Exhibits attached hereto and/or incorporated herein by reference, are made for the purpose of inducing the Settlement Agents to close this transaction, disburse funds, and prepare documents, and (b) the Settlement Agents are relying upon the accuracy, correctness, completeness, and truthfulness of the statements made and information provided herein, and (c) that the foregoing is good and sufficient consideration. Buyer/Borrower expressly agrees to indemnify and hold harmless the Settlement Agents from any and all loss arising from any inaccuracies contained herein, including, without limitation, all costs, expenses, damages, awards, attorney fees, court costs, and filing fees.

**10. Miscellaneous.** This Agreement shall be construed under the laws of the State of Tennessee. If the Settlement Agents and Underwriter, or any of them, files a lawsuit or commences any action to enforce this Agreement, the prevailing party shall be entitled to all costs, expenses, and fees, including without limitation, court costs and attorney fees. Venue for enforcement of this Agreement shall be in the courts located in the county in which the Real Property is located, and Seller irrevocably submits to jurisdiction and venue in those courts. This Agreement is severable; therefore, in the event any provision of this Agreement conflicts with applicable law, such conflict shall not affect other provisions of this Agreement that can be given effect without the conflicting provision. This Agreement shall survive closing and shall not merge. Captions are for convenience only, and shall not be considered in the construction of this Agreement. This document may be signed in counterparts.

IN WITNESS WHEREOF, Buyer's signature is set forth below as of this the **19th day of December, 2023**

**FairOfferCashNow, Inc., a Tennessee Corporation**

By: _Elizabeth Reyes_
Elizabeth Reyes, Authorized Agent

# EXHIBIT "A"
## Property Description

**Closing Date:**       **December 19, 2023**

**Borrower(s):**       **FairOfferCashNow, Inc.**

**Property Address:**    **2701 Benton Avenue, Chattanooga, TN 37406**

PROPERTY DESCRIPTION:

Land in Hamilton County, Tennessee, within the City of Chattanooga, being the South 100 feet of Block No. 21 on the Plan of Anderson's Addition to East Chattanooga of record in Plat Book 3, Page 12, in the Register's Office for Hamilton County, Tennessee, to which Plan reference is hereby made for a more complete description of the property.

EXCEPT any alley running North and South through said property.

Being the same property conveyed to Charles L. Ford and wife, Sara A. Ford by Warranty Deed from Hannah T. Thomas, Widow of Rufus R. Thomas, Sr., by and through her Attorney in fact, Amanda T. Ruff of record in Book 5607, Page 839, Register's Office for Hamilton County, Tennessee, dated May 30, 2000 and recorded on May 31, 2000. (Value or consideration shown in aforementioned deed $22,000.00.)

Being the same property conveyed to Fifty One Bricks At A Time Properties, LLC, a Wyoming Limited Liability Company, by Quitclaim Deed from Charles L. Ford and wife, Sara A. Ford of record in Book 13310, Page 656, Register's Office for Hamilton County, Tennessee, dated June 04, 2023 and recorded on June 06, 2023.

Being known as 2701 Benton Avenue, Chattanooga, Tennessee 37406.

For record title, see deed recorded immediately prior hereto at Instrument No. _____ or Book _____ Page _____, Register's Office for

Hamilton County, State of Tennessee.

## SELLERS FINAL PROPERTY DISCLOSURE

RE: 2701 Benton Avenue

Pursuant to the disclosure requirements of the "Tennessee Property Disclosure Act" <u>Tennessee Code Annotated</u>, *66-5-201,* et seq., the undersigned Seller(s) hereby supplements the Residential Property Condition Disclosure information previously furnished by Seller(s) to Buyer(s), as follows:

(Seller is to initial appropriate line and describe the changes, if any)

_____ **NO CHANGES:** To the best of the knowledge, information and belief of the undersigned, the condition of the property sold is substantially the same as it was when the Residential Property Condition Disclosure form was provided to the Buyer.

_____ **CHANGES TO REPORT:** The changes shown below, which may be material to the physical condition of the Property, have occurred or been observed since the Residential Property Condition Disclosure form was provided to the Buyer. This statement is given in good faith to the best of Seller's knowledge, information and belief, and is not intended to create warranties or guarantees which are not already made in the specific provisions of the contract or imposed by applicably law.

_____ **EXEMPT TRANSACTION: The Property meets one of the exemptions as found in The Tennessee Residential Property Disclosure Act (*Tennessee Code Annotated 66-5-201, et seq.),* incorporated herein by reference, and is therefore exempt from the Tennessee Residential Property Disclosure Act.**

CHANGES REPORTED: _____

_____

IN WITNESS WHEREOF. the information hereon is certified by Seller(s) and acknowledged as received by Buyer(s) upon the dated indicated.

Fifty One Bricks At A Time Properties, LLC, a Wyoming Limited Liability Company

By: _____
    Cassandra Renee Ford, Sole Member

Date: _____ Time: _____

FairOfferCashNow, Inc., a Tennessee Corporation

By: *Elizabeth Reyes*
    Elizabeth Reyes, Authorized Agent

Date: _12/18/23_ Time: _2:00 pm_

# Greater Nashville Title, LLC
## PRIVACY POLICY

Attorneys, like other professionals who advise on personal financial matters or who provide real estate settlement services, are now required by a new Federal law to inform their clients (customers) of their policies regarding privacy of client information. Attorneys have been and continue to be bound by professional standards of conduct that are even more stringent than those required by this new law. Therefore, we have always protected your right to privacy.

### Types of Nonpublic Personal Information We Collect

We collect nonpublic personal information about you from the following sources:

> Information we receive from you, such as your personal financial information, your name, address, telephone number, or social security number;
> Information about your transactions with us, or others. We receive this information from your lender, accountant, attorney, real estate broker, etc.;
> Information we receive about you that is obtained by us with your authorization; and
> Information from public records.

### Parties to Whom We Disclose Information

For current and former clients, we do not disclose any nonpublic personal information obtained in the course of our practice to people outside our firm except as agreed to by you or as required or permitted by law. We restrict access to nonpublic personal information about you to people in our firm who need to know that information to provide products or services to you or requested by you or your Lender. In all such situations, we stress the confidential nature of information being shared.

### Protecting the Confidentiality and Security of Current and Former Clients' Information

We retain records relating to professional services that we provide so that we are better able to assist you with your professional needs and, in some cases, to comply with professional guidelines. In order to guard your nonpublic personal information, we maintain physical, electronic and procedural safeguards that comply with appropriate federal and state regulations and with our professional standards.

*Buyer(s):*

FairOfferCashNow, Inc., a Tennessee Corporation

By: _Elizabeth Reyes_
   Elizabeth Reyes, Authorized Agent

*Seller(s):*

Fifty One Bricks At A Time Properties, LLC, a Wyoming Limited Liability Company

By: _____
   Cassandra Renee Ford, Sole Member

NOTE

Date: December 19th, 2023

$131,840.00

Property Address: 2701 Benton Avenue, Chattanooga, TN 37406

   FOR VALUE RECEIVED the undersigned jointly and severally promise(s) to pay to the order **Justin Cutler,** the principal sum of **ONE HUNDRED THIRTY ONE THOUSAND EIGHT HUNDRED FORTY AND 00/100 ($131,840.00)** together with interest thereon from date at the rate of **FIFTEEN (15%)** percent per annum compounded daily until maturity, said Principal and Interest being payable at maturity or sooner. Maturity Date of this note being **June 1, 2024,** at which time balance will become due and payable. Interest will continue to accrue until the balance is paid in full.

   Payments to be remitted to **1204 15th Avenue South, Nashville TN 37212** or at such place holder hereof may designate in writing from time to time.

   I will make my monthly payment of **$1,600.00** on the **1st** day of each month, beginning on **January 1, 2024**. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before the Principal. If, on the Maturity Date, I still owe amounts under this Note, I will pay those amounts in full on that date.

   Each maker or endorser severally waives demand, protest and notice of maturity, non-payment or protest and all requirements necessary to hold each of them liable as makers and endorsers and should litigation be necessary to enforce this note, each maker and endorser waives trial by jury and consents to the personal jurisdiction and venue of a court of subject matter jurisdiction located in the **State of TN and County of Hamilton.**

   Each maker and endorser further agrees, jointly and severally, to pay all costs of collection, including a reasonable attorney's fee in case the principal of this note or any payment on the principal or any interest thereon is not paid at the respective maturity thereof, or in case it becomes necessary to protect the security hereof, whether suit be brought or not.

   Loan Charges: if law which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected in connection with the loan exceed the permitted limits, then (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make his refund by reducing the principal I owe under this note by making a direct payment to me. If a refund reduces the principal, the reduction will be treated as a partial prepayment. The converse of this paragraph shall apply in the event that the interest or other loan charges collected or not collected in connection with the loan are deemed to be too minimal or insufficient by applicable law. In such event, I shall make necessary payment to the Note Holder to reconcile any such deficiencies.

This note is to be construed and enforced according to the laws of the **State of Tennessee**; upon default in the payment of principal and/or interest when due, the whole sum of principal and interest remaining unpaid shall, at the option of the holder, become immediately due and payable and it shall accrue interest at the highest rate allowable by law, or, if no highest rate is otherwise indicated, at eighteen (18%) percent, from the date of default.

If the Note Holder has not received the full amount of any payment by that payment's due date, Borrower will pay a late fee to the Note Holder of 10% of the amount of the overdue payment that remains unpaid more than one day after its due date.

Borrower shall not permit or cause any other encumbrance other than the deed of trust to be recorded pursuant to this loan. Borrower agrees that the recordation of any other lien that is superior or inferior to the deed of trust to be recorded in connection with this indebtedness established by this Promissory Note shall be an event of default which shall entitle the holder of the deed of trust to all rights and remedies established by the deed of trust.

Unless specifically disallowed by law, should litigation arise hereunder, service of process therefore may be obtained through certified mail, return receipt requested; the parties hereto waiving any and all rights they may have to object to the method by which service was perfected.

FairOfferCashNow, Inc., a Tennessee Corporation

By: _Elizabeth Reyes_
Elizabeth Reyes, Authorized Agent

PREPARED BY:
Greater Nashville Title, LLC
4603 Gallatin Pike
Nashville, TN 37216
615-865-1470

The MAXIMUM PRINCIPAL INDEBTEDNESS for Tennessee Recording Tax Purposes is $131,840.00.

## DEED OF TRUST

**1. DATE AND PARTIES.** The date of this Deed of Trust (Security Instrument) is 19th day of December, 2023 and the parties, their addresses and tax identification numbers, if required, are as follows:

GRANTOR: FairOfferCashNow, Inc.
PO Box 11891, Murfreesboro, TN 37129

TRUSTEE: Greater Nashville Title, LLC, a resident of Davidson County, Tennessee
4603 Gallatin Pike, Nashville, TN 37216

LENDER: Justin Cutler
1204 15th Avenue South, Nashville, TN 37212

**2. CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (defined below) and Grantor's performance under this Security Instrument, Grantor irrevocably grants, conveys and sells to Trustee, in trust for benefit of Lender, with power of sale, the following described property:

### SEE EXHIBIT A

The property is located in **Hamilton County, Tennessee** at: **2701 Benton Avenue, Chattanooga, TN 37406** together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, ditches, and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above (all referred to as "Property").

**3. MAXIMUM OBLIGATION LIMIT,** The total principal amount secured by this Security Instrument at any one time shall not exceed **$131,840.00.** This limitation of amount does not include interest and other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument. **Notice: Pursuant to Tenn. Code Ann. § 47-28-105, Borrower may reduce the limit on the maximum amount of total principal indebtedness to be secured under this Deed of Trust.**

**4. SECURED DEBT AND FUTURE ADVANCES.** The term "Secured Debt" is defined as follows:

A. Debt incurred under the terms of all promissory note(s), contract(s), guaranty(ies) or other evidence of debt described below and all their extensions, renewals, modifications or substitutions, ( When referencing the debts below it is suggested that you include items such as borrowers' names, note amounts, interest rates, maturity dates, etc.)

Note of even date, and maturity date of June 1, 2024, executed simultaneously herewith

B. All future advances from Lender to Grantor or other future obligations of Grantor to Lender under any promissory note, contract, guaranty, or other evidence of debt executed by Grantor in favor of Lender after this Security Instrument whether or not this Security instrument is specifically referenced. If more than one person signs this Security Instrument, each Grantor agrees that this Security Instrument will secure all future advances and future obligations that are given to or incurred by any one or more Grantor, or any one or more Grantor and others. All future advances and other future obligations are secured by this Security Instrument even though all or part may not yet be advanced. All future advances and other future obligations are secured as if made on the date of this Security Instrument. Nothing in this Security Instrument shall constitute a commitment to make additional or future loans or advances in any amount. Any such commitment must be agreed to in a separate writing.

C. All obligations Grantor owes to Lender, which may later arise, to the extent not prohibited by law, including but not limited to, liabilities for overdrafts relating to any deposit account agreement between Grantor and Lender.

D. All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument. This Security Instrument will not secure any other debt if Lender fails to give any required notice of the right of rescission.

**5. PAYMENTS.** Grantor agrees that all payment under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument.

**6. WARRANTY OF TITLE.** Grantor warrants that Grantor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to irrevocably grant, convey and sell the Property to Trustee, in trust, with power to sale. Grantor also warrants that the Property is unencumbered, except for encumbrances of record.

**7. PRIOR SECURITY INTERESTS.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Grantor agrees:

A. To make all payments when due and to perform or comply with all covenants.

B. To promptly deliver to Lender any notices that Grantor receives from the holder.

C. Not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written consent.

**8. CLAIMS AGAINST TITLE.** Grantor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Grantor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Grantor's payment. Grantor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Grantor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Grantor may have against parties who supply labor or materials to maintain or improve the Property.

**9. DUE ON SALE OR ENCUMBRANCE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of the Property with exception to a transfer to Benton Investment Group, LLC. This right is subject to the restrictions imposed by federal law (12 C.F.R. 59), as applicable. This covenant shall run with the Property and shall remain in effect until the Secured Debt is paid in full and this Security Instrument is released.

**10. PROPERTY CONDITION, ALTERATIONS AND INSPECTION.** Grantor will keep the Property in good condition and make all repairs that are reasonably necessary. Grantor shall not commit or allow any waste, impairment, or deterioration of the Property. Grantor will keep the Property free of noxious weeds and grasses. Grantor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Grantor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Grantor will notify Lender of all demands, proceedings, claims and actions against Grantor, and of any loss or damage to the Property. Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Grantor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Grantor will in no way rely on Lender's inspection.

**11. AUTHORITY TO PERFORM.** If Grantor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Grantor appoints Lender as attorney in fact to sign Grantor's name or pay any amount necessary for performance. Lender's right to perform for Grantor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument. If any construction

on the Property is discontinued or not carried on in a reasonable manner, Lender may take all steps necessary to protect Lender's security interest in the Property, including completion of the construction.

**12. ASSIGNMENT OF LEASES AND RENTS.** Grantor irrevocably grants, conveys and sells to Trustee, in trust for the benefit of Lender, as additional security all the right, title and interest in and to any and all existing or future leases, subleases, and any other written or verbal agreements for the use and occupancy of any portion of the Property, including any extensions, renewals, modifications or substitutions of such agreements (all referred to as "Leases") and rents, issues and profits (all referred to as "Rents"). Grantor will promptly provide Lender with true and correct copies of all existing and future Leases. Grantor may collect, receive, enjoy and use the Rents so long as Grantor is not in default under the terms of this Security Instrument. Grantor agrees that this assignment is immediately effective between the parties to this Security Instrument and effective as to third parties on the recording of this Deed of Trust. This assignment will remain in effect during any redemption period until the Secured Debt is satisfied. Grantor agrees that Lender or Trustee may take actual possession of the Property without the necessity of commencing legal action and that actual possession is deemed to occur when Lender, or its agent, notifies Grantor of default and demands that any tenant pay all future Rents directly to Lender. On receiving notice of default, Grantor will endorse and deliver to Lender any payment of Rents in Grantor's possession and will receive any Rents in trust for Lender and will not commingle the Rents with any other funds. Any amounts collected will be applied in this Security Instrument. Grantor warranty that no default exists under the Leases or any applicable landlord/tenant law. Grantor also agrees to maintain and require any tenant to comply with the terms of the Leases and applicable law.

**13. LEASEHOLDS, CONDOMINIUMS: PLANNED UNIT DEVELOPMENTS.** Grantor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the Property includes a unit in a condominium or a planned unit development, Grantor will perform all of Grantor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

**14. DEFAULT.** Grantor will be in default in any party obligated on the Secured Debt fails to make payment when due. Grantor will be in default if a breach occurs under the terms of this Security Instrument or any other document executed for the purpose of creating, securing, or guarantying the Secured Debt. A good faith belief by Lender that Lender at any time is insecure with respect to any person or entity obligated on the Secured Debt or that the prospect of any payment or the value of the Property is impaired shall also constitute an event of default.

**15. REMEDIES ON DEFAULT.** In some instances, federal and state law will require Lender to provide Grantor with notice of the right to cure or other notices and may establish time schedules for foreclosure actions. Subject to these limitations, if any, Lender may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by law if Grantor is in default. At the option of Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. In addition, Lender shall be entitled to all the remedies provided by law, the terms of the Secured Debt, this Security Instrument, and any related documents, including without limitation, the power to sell the Property. If there is a default, Trustee shall, in addition to any other permitted remedy, at the request of the Lender, advertise and sell the Property as a whole or in separate parcels at public outcry of the Property to the highest bidder for cash and convey absolute title free and clear of all right, title and interest of Grantor at such time and place as Trustee designates. Trustee shall give notice of sale including the time, terms and place of sale and a description of the Property to be sold as required by the applicable law in effect at the time of the proposed sale. Upon sale of the Property and to the extent not prohibited by law, Trustee shall make and deliver a deed to the Property sold which conveys absolute title to the purchaser, and after first paying all fees, charges and costs, shall pay to Lender all moneys advanced for repairs, taxes, insurance, liens, assessments, and prior encumbrances and interest thereon, and the principal and interest on the Secured Debt, paying the surplus, if any, to Grantor. Lender may purchase the Property. The recitals in any deed of conveyance shall be prima facie evidence of the facts set forth therein. All remedies are distinct, cumulative, and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether or not expressly set forth. The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require complete cure of any existing default. By not exercising any remedy on Grantor's default, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

**16. EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** Except when prohibited by law, Grantor agrees to pay all of Lender's expenses if **Grantor** breaches any covenant in this Security Instrument. Grantor will also pay on demand any amount incurred by Lender for insuring, inspecting, preserving or otherwise protecting the Property and Lender's security interest. These expenses will bear interest

from the date of the payment until paid in full at the highest interest rate in effect as provided in terms of the Secured Debt. Grantor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount may include, but is not limited to, attorneys' fees, court costs, and other legal expenses. This Security Instrument shall remain in effect until released.

**17. ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), and all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substance defined as "hazardous material," " toxic substances," "hazardous waste," "hazardous substance," or "regulated substance," under any Environmental Law. Grantor represents, warrants and agrees that:

A. Except as previously disclosed and acknowledged in writing to Lender, on Hazardous Substance is or will be located, stored or released on or in the Property. This restriction does not apply to small quantities of Hazardous Substances that are generally recognized to be appropriate for the normal use and maintenance of the Property.

B. Except as previously disclosed and acknowledged in writing to Lender, Grantor and every tenant have been, are, and shall remain in full compliance with any applicable Environmental Law.

C. Grantor shall immediately notify Lender if a release or threatened release of a Hazardous Substance occurs on, under or about the Property or there is a violation of any Environmental Law concerning the Property. In such an event, Grantor shall take all necessary remedial action in accordance with any Environmental Law.

D. Grantor shall immediately notify Lender in writing as soon as Grantor has reason to believe there is any pending or threatened investigation, claim, or proceeding relating to the release or threatened release of any Hazardous Substance or the violation of any Environmental Law.

**18. CONDEMNATION.** Grantor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through, eminent domain, or any other means. Grantor authorizes Lender to intervene in Grantor's name in any of the above-described actions or claims, Grantor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other Grantor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

**19. INSURANCE.** Grantor shall keep Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires. What Lender requires pursuant to the preceding two sentences can change during the term of the Secured Debt. The insurance carrier providing the insurance shall be chosen by Grantor subject to Lender's approval, which shall not be unreasonably withheld. If Grantor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Security Instrument. All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause." Grantor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Grantor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Grantor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss in not made immediately by Grantor. Unless otherwise agreed in writing, all insurance proceeds shall be applied to the restoration or repair of the Property or the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of the scheduled payment or change the amount of any payment. Any excess will be paid to Grantor. If the Property acquired by Lender, Grantor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

**20. ESCROW FOR TAXES AND INSURANCE.** Unless otherwise provided in a separate agreement, Grantor will not be required to pay to Lender funds for taxes and insurance in escrow.

**21. FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Grantor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Grantor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue,

and preserve Grantor's Obligations under this Security Instrument and Lender's lien status on the Property.

**22. JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Security Instrument are joint and individual. If Grantor signs this Security Instrument but does not sign an evidence of debt, Grantor does so only to mortgage Grantor's interest in the Property to secure payment of the Secured Debt and Grantor does not agree to be personally liable on the Secured Debt. If this Security Instrument secures a guaranty between Lender and Grantor, Grantor agrees to waive any rights that may prevent Lender from bringing any action or claim against Grantor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws. Grantor agrees that Lender and any party to this Security Instrument may extend, modify, or make any change in the terms of this Security Instrument or any evidence of debt without Grantor's consent. Such a change will not release Grantor from the terms of this Security Instrument. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Grantor and Lender.

**23. APPLICABLE LAW; SEVERABILITY; INTERPRETATION.** This Security Instrument is governed by the laws of the jurisdiction in which Lender is located, except to the extent otherwise required by the laws of the jurisdiction where the Property is located. This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, this section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

**24. SUCCESSOR TRUSTEE.** Lender, at Lender's option, may from time to time remove Trustee and appoint a successor trustee without any other formality than the designation in writing. The successor trustee, without conveyance of the Property, shall succeed to all the title, power and duties conferred upon Trustee by this Security Instrument and applicable law.

**25. NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Security Instrument, or any other address designated in writing. Notice to one grantor will be deemed to be notice to all grantors.

**26. WAIVERS.** Except to the extent prohibited by law, Grantor waives all rights to homestead, curtesy and dower, appraisement, and the marshalling of liens and assets relating to the Property. In addition, statutory rights of redemption by Grantor after foreclosure sale are expressly waived to the extent not prohibited by law.

**27. OTHER TERMS.** If checked, the following are applicable to this Security Instrument:

    ____ **OPEN END MORTGAGE.** This Deed of Trust is an "Open End Mortgage" as defined under Tenn. Code Anno, g 47-28-103 and secures the Secured Debt which includes a revolving line of credit provision. The Secured Debt is due and payable on _____ if not paid earlier. The due date may not be more than twenty years after the date of the Secured Debt. Although the Secured Debt may be reduced to a zero balance, this Security Instrument will remain in effect until released.

    _X_ **FIXTURE FILING.** Grantor grants to Lender a security interest in all goods that Grantor owns now or in the future and that are or will become fixtures related to the Property. This Security Instrument suffices as a financing statement and any carbon, photographic or other reproduction may be filed of record for purposes of Article 9 of the Uniform Commercial Code.

    _X_ **RIDERS.** The covenants and agreements of each of the riders checked below are incorporated into and supplement and amend the terms of this Security Instrument. (Check all Applicable boxes) __ **Condominium Rider** __ **Planned Unit Development Rider** <u>XX</u> **Other:** <u>Exhibit A – Legal Description</u>
__ **Additional Terms.**

**SIGNATURES:** By signing below, Grantor agrees to the terms and covenants contained in this Security Instrument and in any attachments. Grantor also acknowledges receipt of a copy of this Security Instrument on the date stated

on Page 1.

Dated: **December 19, 2023**

**FairOfferCashNow, Inc., a Tennessee Corporation**

By: _Elizabeth Reyes_
        **Elizabeth Reyes, Authorized Agent**

STATE OF TENNESSEE
COUNTY OF RUTHERFORD

Before me, _Amber Baker_ of the state and county mentioned, personally appeared Elizabeth Reyes, Authorized Agent of FairOfferCashNow, Inc., with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who, upon oath, acknowledged such person to be Authorized Agent of FairOfferCashNow, Inc., the within named bargainor, a Corporation, and that such Elizabeth Reyes, Authorized Agent of FairOfferCashNow, Inc. as such Authorized Agent, executed the foregoing instrument for the purpose therein contained, by personally signing the name of the Corporation as Authorized Agent.

Witness my hand and seal, at office in Murfreesboro, this 15th day of December, 2023.

Notary Signature

Printed Name: Amber Baker

My commission expires: October 16, 2027



AMBER BAKER
STATE
OF
TENNESSEE
NOTARY
PUBLIC
RUTHERFORD COUNTY
MY COMMISSION EXPIRES: OCTOBER 16, 2027

# EXHIBIT A

Land in Hamilton County, Tennessee, within the City of Chattanooga, being the South 100 feet of Block No. 21 on the Plan of Anderson's Addition to East Chattanooga of record in Plat Book 3, Page 12, in the Register's Office for Hamilton County, Tennessee, to which Plan reference is hereby made for a more complete description of the property.

EXCEPT any alley running North and South through said property.

Being the same property conveyed to Charles L. Ford and wife, Sara A. Ford by Warranty Deed from Hannah T. Thomas, Widow of Rufus R. Thomas, Sr., by and through her Attorney in fact, Amanda T. Ruff of record in Book 5607, Page 839, Register's Office for Hamilton County, Tennessee, dated May 30, 2000 and recorded on May 31, 2000. (Value or consideration shown in aforementioned deed $22,000.00.)

Being the same property conveyed to Fifty One Bricks At A Time Properties, LLC, a Wyoming Limited Liability Company, by Quitclaim Deed from Charles L. Ford and wife, Sara A. Ford of record in Book 13310, Page 656, Register's Office for Hamilton County, Tennessee, dated June 04, 2023 and recorded on June 06, 2023.

Being known as 2701 Benton Avenue, Chattanooga, Tennessee 37406.

For record title, see Instrument No. _____ or Book _____, Page _____, Register's office for Hamilton County, recorded prior to this instrument.

# Settlement Statement

## Your Order Summary

| | | | | | |
|---|---|---|---|---|---|
| FILE # | GNT-23-3118 | PROPERTY ADDRESS | 2701 Benton Avenue<br>Chattanooga, TN 37406 | LOAN # | |
| PREPARED | 12/15/2023 | | FairOfferCashNow, Inc.<br>PO Box 11891<br>Murfreesboro, TN 37129 | TITLE BY | Greater Nashville Title, LLC |
| SETTLEMENT | 12/19/2023 | BUYER | | OUR ADDRESS | 4603 Gallatin Pike<br>Nashville, TN 37216 |
| DISBURSEMENT | 12/19/2023 | | Fifty One Bricks At A<br>Time Properties, LLC | OUR PHONE # | (615) 865-1470 |
| SETTLEMENT LOCATION | 4603 Gallatin Pike<br>Nashville, TN 37216 | SELLER | 3661 Brainerd Road<br>Suite 302<br>Chattanooga, TN 37411 | ATTORNEY | Steven Disser |
| | | LENDER | Justin Cutler<br>1204 15th Avenue South<br>Nashville, TN 37212 | | |

## Charges

| SELLER DEBIT | SELLER CREDIT | PRIMARY CHARGES & CREDITS | BUYER DEBIT | BUYER CREDIT |
|---|---|---|---|---|
| | $58,000.00 | Sales Price of Property | $58,000.00 | |
| | | Loan Amount ($131,840.00) | | $131,840.00 |
| | | Funds Retained | $45,000.00 | |

| SELLER DEBIT | SELLER CREDIT | PRORATIONS/ADJUSTMENTS | BUYER DEBIT | BUYER CREDIT |
|---|---|---|---|---|
| | $24.05 | City/Town Taxes 12/19/2023 to 01/01/2024 | $24.05 | |
| | $17.55 | County Taxes 12/19/2023 to 01/01/2024 | $17.55 | |

| SELLER DEBIT | SELLER CREDIT | LOAN CHARGES | BUYER DEBIT | BUYER CREDIT |
|---|---|---|---|---|
| | | 3% of Loan Amount (Points) | $3,840.00 | |
| | | Future Release Doc Prep to Greater Nashville Title, LLC | $25.00 | |
| | | Future Release recording fee to Greater Nashville Title, LLC | $22.00 | |
| | | Prepaid Interest ($54.18 per day from 12/19/2023 to 12/01/2023) | | |

| SELLER DEBIT | SELLER CREDIT | PAYOFFS | BUYER DEBIT | BUYER CREDIT |
|---|---|---|---|---|
| $35,031.01 | | Payoff to SmartBank | | |
| | |    Principal : $34,818.32 | | |
| | |    Interest : $173.21 | | |
| | |    Late Charge : $39.48 | | |

| SELLER DEBIT | SELLER CREDIT | GOVERNMENT RECORDING AND TRANSFER CHARGES | BUYER DEBIT | BUYER CREDIT |
|---|---|---|---|---|
| | | Recording Fees | $66.00 | |
| | | ---Deed: $23.00 | | |
| | | ---Mortgage: $43.00 | | |
| | | Mortgage Tax (Deed of Trust) to Hamilton County Recording Office | $149.32 | |
| | | Realty Transfer Tax (Deed) to Hamilton County Recording Office | $214.60 | |

| SELLER DEBIT | SELLER CREDIT | TITLE CHARGES | BUYER DEBIT | BUYER CREDIT |
|---|---|---|---|---|
| | | Title - Buyer Settlement Fee to Greater Nashville Title, LLC | $100.00 | |
| | | Title - Lender's Title Policy to Fidelity National Title Insurance Company | $993.69 | |
| | | Title - Secure Storage Fee to Greater Nashville Title, LLC | $35.00 | |
| | | Title - Seller Settlement Fee to Greater Nashville Title, LLC | $250.00 | |
| | | Title - Title Search and Examination Fee to Greater Nashville Title, LLC | $300.00 | |
| | | Title - Wire Fee for Payoff to Greater Nashville Title, LLC | $25.00 | |
| | | Title - Owner's Title Policy to Fidelity National Title Insurance Company | $101.41 | |

| SELLER DEBIT | SELLER CREDIT | MISCELLANEOUS CHARGES | BUYER DEBIT | BUYER CREDIT |
|---|---|---|---|---|
| | | E-Recording Fee to Simplifile | $10.00 | |
| | | Mobile Notary Fee to Network Transaction Solutions | $150.00 | |
| | | UPS Reimbursement to Greater Nashville Title, LLC | $40.00 | |

| SELLER DEBIT | SELLER CREDIT | TOTALS | BUYER DEBIT | BUYER CREDIT |
|---|---|---|---|---|
| $35,031.01 | $58,041.60 | | $109,363.62 | $131,840.00 |

**CASH TO BUYER**   $22,476.38

**CASH TO SELLER**   $23,010.59

**See signature addendum**

# Signature Addendum

## Acknowledgement

We/I have carefully reviewed this settlement statement and find it to be a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction and further certify that I have received a copy of this settlement statement.

We/I authorize **Greater Nashville Title, LLC** to cause the funds to be disbursed in accordance with this statement.

**Buyer**

FairOfferCashNow, Inc., a Tennessee Corporation

By: _Elizabeth Reyes_ _12/18/23_
Elizabeth Reyes, Authorized Agent          Date

**Seller**

Fifty One Bricks At A Time Properties, LLC, a Wyoming Limited Liability Company

By: _____
Cassandra Renee Ford, Sole Member          Date

## Settlement Agency

_____
Settlement Agent          Date

## BUYER CERTIFICATION AND AGREEMENT (the "Agreement")

For and in consideration of the closing services provided by the Settlement Agents and Underwriter (identified in Paragraph 1, below), the undersigned BUYER (identified in Paragraph 1, below) warrants, represents, and agrees as follows:

1. **Definitions.**    **"Buyer"** is FairOfferCashNow, Inc.
   **"Seller"** is Fifty One Bricks At A Time Properties, LLC
   **"Buyer Title Agent"** is Greater Nashville Title, LLC
   **"Seller Title Agent"** is Greater Nashville Title, LLC
   **"Disbursing Title Agent"** is Buyer Title Agent in a lender-financed transaction or Seller Title Agent in cash only transaction
   **"Title Insurance Company"** is Fidelity National Title Insurance Company
   **"Real Property"** means 2701 Benton Avenue, Chattanooga, TN 37406
   **"Premises"** means the Real Property including any and all personal property remaining on the Real Property.
   **"Settlement Agents"** means Buyer Title Agent and Seller Title Agent, individually and collectively.
   **"Settlement Agents and Underwriter"** means Buyer Title Agent, Seller Title Agent, and Title Insurance Company, individually and collectively

2. **Property Taxes; Rollback Taxes.** If the Buyer and Seller have agreed in their purchase and sale agreement to prorate current year property taxes, such tax proration will be based on the actual tax bill when available. During the period when the actual current year's tax bill is not available (usually January through early October), the proration will be made based on an estimate using last year's property tax bill(s), or, less commonly the purchase price of the Premises. Buyer/Borrower agrees notwithstanding anything in this Agreement or the purchase and sale agreement to the contrary, that the Settlement Agents shall not be responsible for contacting the Buyer or Seller regarding any tax adjustment or for determining or enforcing rollback taxes or any amount to be prorated, and shall be held harmless by Seller from any claim, disagreement, lawsuit, or dispute involving the matters in this paragraph.

3. **Shortages.** If after closing it is discovered Buyer paid to the Disbursing Title Agent amounts in excess of the amount needed to pay off an account, the Disbursing Title Agent will provide reasonable assistance to the Buyer/Borrower in order to recover the balance. If after closing it is discovered there are any shortages in any amounts due by Buyer/Borrower to any entity being paid in the course of this real estate transaction, or if there is a shortage in the amount collected from Buyer/Borrower at closing, Buyer/Borrower will immediately and fully pay to the Disbursing Title Agent, or to the designated entity, all funds necessary to pay the amount(s) due (including any late charges) in full. This obligation may apply to any person, or entity to which funds are owed, including without limitation, the Settlement Agents and Underwriter, the Buyer, and/or any lender, entity, or creditor which has received, or is to receive, payment from the Disbursing Title Agent for debt(s) owed by the Buyer/Borrower, and includes, without limitation, amounts which may have been inadvertently misstated or omitted from the HUD-1 or ALTA Settlement Statement. If an account is closed or if a creditor refuses to accept payment, the Disbursing Title Agent shall have the right to deposit the funds in a court of competent jurisdiction and thereupon be discharged from all liabilities and duties with respect to the funds.

4. (a) **Correction of Documents.** Buyer/Borrower agrees to cooperate and assist in the correction, initialing, or signing of all documents and of all typographical, clerical, mathematical, and/or other mistakes, errors, or omissions, or to sign new documents in the event the original documents are lost, or misplaced, were inadvertently not signed, or inadvertently destroyed. Buyer/Borrower agrees to correct, initial, or sign additional and/or corrected documents upon the request of the Settlement Agents or either of them within five (5) business days from the date of request. Any written request by the Title Agent to the Buyer/Borrower's last known address to correct, initial, or sign replacement, additional documents or corrective documents shall be prima facie evidence of the necessity of the request, and Buyer/Borrower's failure or refusal to take the requested action shall be in breach of this Agreement. The remedies available to the Title Agent include, but are not limited to, injunctive relief and damages.

   (b) **Temporary Limited Power of Attorney.** Each Buyer/Borrower, individually, appoints Buyer/Borrower's Title Agent and its designated employee as Buyer/Borrower's respective attorney in fact to correct any typographical or clerical errors (but not mathematical errors), and to initial and or sign same for each Buyer/Borrower, and then to provide a copy of same to Buyer/Borrower. This power of attorney is durable and coupled with an interest and shall survive the disability of the grantor and shall be irrevocable until it **automatically terminates 120 days from this date.**

6. **Settlement Agents may share documents with Realtors, HOA's, Lenders, and Underwriter.** Buyer/Borrower hereby authorizes the Settlement Agents or either of them to provide copies of documents pertaining to this transaction which may or may

not be deemed nonpublic personal information to the real estate brokers and real estate agents, if any, the mortgage lender(s), if any, the homeowners association and property managers, if any, and the Underwriter, if any, involved in this transaction.

**7. Services Provided Acknowledgment.** Buyer hereby acknowledge that neither Greater Nashville Title, LLC nor its attorney(s) ("Settlement Agent") have represented themselves as a law firm, nor have they rendered any legal, tax or financial advice in connection with the closing of this transaction or otherwise. We hereby understand and acknowledge that the purpose of the Settlement Agent is to close this transaction in accordance with the terms and agreements set forth in the Real Estate Contract entered into by the parties.

**8. Intended Use.** Buyer hereby acknowledges Settlement Agent has not guaranteed any particular intended use of the property to the Buyer. Buyer hereby acknowledges that due diligence to determine suitability for any intended use is the sole responsibility of the Buyer and should be discussed with Buyer 's Agent prior to the closing of the real estate transaction.

**9. Consideration and Buyer/Borrower Indemnity.** Buyer/Borrower understands and acknowledges (a) this Agreement and the Exhibits attached hereto and/or incorporated herein by reference, are made for the purpose of inducing the Settlement Agents to close this transaction, disburse funds, and prepare documents, and (b) the Settlement Agents are relying upon the accuracy, correctness, completeness, and truthfulness of the statements made and information provided herein, and (c) that the foregoing is good and sufficient consideration. Buyer/Borrower expressly agrees to indemnify and hold harmless the Settlement Agents from any and all loss arising from any inaccuracies contained herein, including, without limitation, all costs, expenses, damages, awards, attorney fees, court costs, and filing fees.

**10. Miscellaneous.** This Agreement shall be construed under the laws of the State of Tennessee. If the Settlement Agents and Underwriter, or any of them, files a lawsuit or commences any action to enforce this Agreement, the prevailing party shall be entitled to all costs, expenses, and fees, including without limitation, court costs and attorney fees. Venue for enforcement of this Agreement shall be in the courts located in the county in which the Real Property is located, and Seller irrevocably submits to jurisdiction and venue in those courts. This Agreement is severable; therefore, in the event any provision of this Agreement conflicts with applicable law, such conflict shall not affect other provisions of this Agreement that can be given effect without the conflicting provision. This Agreement shall survive closing and shall not merge. Captions are for convenience only, and shall not be considered in the construction of this Agreement. This document may be signed in counterparts.

IN WITNESS WHEREOF, Buyer's signature is set forth below as of this the **19th day of December, 2023**

**FairOfferCashNow, Inc., a Tennessee Corporation**

By: _Elizabeth Reyes_
**Elizabeth Reyes, Authorized Agent**

# EXHIBIT "A"
## Property Description

**Closing Date:**       December 19, 2023

**Borrower(s):**       FairOfferCashNow, Inc.

**Property Address:**    **2701 Benton Avenue, Chattanooga, TN 37406**

PROPERTY DESCRIPTION:

Land in Hamilton County, Tennessee, within the City of Chattanooga, being the South 100 feet of Block No. 21 on the Plan of Anderson's Addition to East Chattanooga of record in Plat Book 3, Page 12, in the Register's Office for Hamilton County, Tennessee, to which Plan reference is hereby made for a more complete description of the property.

EXCEPT any alley running North and South through said property.

Being the same property conveyed to Charles L. Ford and wife, Sara A. Ford by Warranty Deed from Hannah T. Thomas, Widow of Rufus R. Thomas, Sr., by and through her Attorney in fact, Amanda T. Ruff of record in Book 5607, Page 839, Register's Office for Hamilton County, Tennessee, dated May 30, 2000 and recorded on May 31, 2000. (Value or consideration shown in aforementioned deed $22,000.00.)

Being the same property conveyed to Fifty One Bricks At A Time Properties, LLC, a Wyoming Limited Liability Company, by Quitclaim Deed from Charles L. Ford and wife, Sara A. Ford of record in Book 13310, Page 656, Register's Office for Hamilton County, Tennessee, dated June 04, 2023 and recorded on June 06, 2023.

Being known as 2701 Benton Avenue, Chattanooga, Tennessee 37406.

For record title, see deed recorded immediately prior hereto at Instrument No. _____ or Book _____ Page _____, Register's Office for

Hamilton County, State of Tennessee.

## SELLERS FINAL PROPERTY DISCLOSURE

RE: 2701 Benton Avenue

Pursuant to the disclosure requirements of the "Tennessee Property Disclosure Act" <u>Tennessee Code Annotated</u>, *66-5-201,* et seq., the undersigned Seller(s) hereby supplements the Residential Property Condition Disclosure information previously furnished by Seller(s) to Buyer(s), as follows:

(Seller is to initial appropriate line and describe the changes, if any)

_____ **NO CHANGES:** To the best of the knowledge, information and belief of the undersigned, the condition of the property sold is substantially the same as it was when the Residential Property Condition Disclosure form was provided to the Buyer.

_____ **CHANGES TO REPORT:** The changes shown below, which may be material to the physical condition of the Property, have occurred or been observed since the Residential Property Condition Disclosure form was provided to the Buyer. This statement is given in good faith to the best of Seller's knowledge, information and belief, and is not intended to create warranties or guarantees which are not already made in the specific provisions of the contract or imposed by applicably law.

_____ **EXEMPT TRANSACTION: The Property meets one of the exemptions as found in The Tennessee Residential Property Disclosure Act (*Tennessee Code Annotated 66-5-201, et seq.),* incorporated herein by reference, and is therefore exempt from the Tennessee Residential Property Disclosure Act.**

CHANGES REPORTED: _____

_____

_____

IN WITNESS WHEREOF. the information hereon is certified by Seller(s) and acknowledged as received by Buyer(s) upon the dated indicated.

Fifty One Bricks At A Time Properties, LLC, a Wyoming Limited Liability Company

By: _____
    Cassandra Renee Ford, Sole Member

Date: _____ Time: _____

FairOfferCashNow, Inc., a Tennessee Corporation

By: *Elizabeth Reyes*
    Elizabeth Reyes, Authorized Agent

Date: _12/18/23_ Time: _2:00 pm_

# Greater Nashville Title, LLC
## PRIVACY POLICY

Attorneys, like other professionals who advise on personal financial matters or who provide real estate settlement services, are now required by a new Federal law to inform their clients (customers) of their policies regarding privacy of client information. Attorneys have been and continue to be bound by professional standards of conduct that are even more stringent than those required by this new law. Therefore, we have always protected your right to privacy.

### Types of Nonpublic Personal Information We Collect

We collect nonpublic personal information about you from the following sources:

> Information we receive from you, such as your personal financial information, your name, address, telephone number, or social security number;
> Information about your transactions with us, or others. We receive this information from your lender, accountant, attorney, real estate broker, etc.;
> Information we receive about you that is obtained by us with your authorization; and
> Information from public records.

### Parties to Whom We Disclose Information

For current and former clients, we do not disclose any nonpublic personal information obtained in the course of our practice to people outside our firm except as agreed to by you or as required or permitted by law. We restrict access to nonpublic personal information about you to people in our firm who need to know that information to provide products or services to you or requested by you or your Lender. In all such situations, we stress the confidential nature of information being shared.

### Protecting the Confidentiality and Security of Current and Former Clients' Information

We retain records relating to professional services that we provide so that we are better able to assist you with your professional needs and, in some cases, to comply with professional guidelines. In order to guard your nonpublic personal information, we maintain physical, electronic and procedural safeguards that comply with appropriate federal and state regulations and with our professional standards.

*Buyer(s):*

FairOfferCashNow, Inc., a Tennessee Corporation

By: _Elizabeth Reyes_
Elizabeth Reyes, Authorized Agent

*Seller(s):*

Fifty One Bricks At A Time Properties, LLC, a Wyoming Limited Liability Company

By: _____
Cassandra Renee Ford, Sole Member

NOTE

Date: December 19th, 2023

$131,840.00

Property Address: 2701 Benton Avenue, Chattanooga, TN 37406

   FOR VALUE RECEIVED the undersigned jointly and severally promise(s) to pay to the order **Justin Cutler,** the principal sum of **ONE HUNDRED THIRTY ONE THOUSAND EIGHT HUNDRED FORTY AND 00/100 ($131,840.00)** together with interest thereon from date at the rate of **FIFTEEN (15%)** percent per annum compounded daily until maturity, said Principal and Interest being payable at maturity or sooner. Maturity Date of this note being **June 1, 2024,** at which time balance will become due and payable. Interest will continue to accrue until the balance is paid in full.

      Payments to be remitted to **1204 15ᵗʰ Avenue South, Nashville TN 37212** or at such place holder hereof may designate in writing from time to time.

   I will make my monthly payment of **$1,600.00** on the **1st** day of each month, beginning on **January 1, 2024**. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before the Principal. If, on the Maturity Date, I still owe amounts under this Note, I will pay those amounts in full on that date.

      Each maker or endorser severally waives demand, protest and notice of maturity, non-payment or protest and all requirements necessary to hold each of them liable as makers and endorsers and should litigation be necessary to enforce this note, each maker and endorser waives trial by jury and consents to the personal jurisdiction and venue of a court of subject matter jurisdiction located in the **State of TN and County of Hamilton.**

      Each maker and endorser further agrees, jointly and severally, to pay all costs of collection, including a reasonable attorney's fee in case the principal of this note or any payment on the principal or any interest thereon is not paid at the respective maturity thereof, or in case it becomes necessary to protect the security hereof, whether suit be brought or not.

      Loan Charges: if law which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected in connection with the loan exceed the permitted limits, then (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make his refund by reducing the principal I owe under this note by making a direct payment to me. If a refund reduces the principal, the reduction will be treated as a partial prepayment. The converse of this paragraph shall apply in the event that the interest or other loan charges collected or not collected in connection with the loan are deemed to be too minimal or insufficient by applicable law. In such event, I shall make necessary payment to the Note Holder to reconcile any such deficiencies.

This note is to be construed and enforced according to the laws of the **State of Tennessee**; upon default in the payment of principal and/or interest when due, the whole sum of principal and interest remaining unpaid shall, at the option of the holder, become immediately due and payable and it shall accrue interest at the highest rate allowable by law, or, if no highest rate is otherwise indicated, at eighteen (18%) percent, from the date of default.

If the Note Holder has not received the full amount of any payment by that payment's due date, Borrower will pay a late fee to the Note Holder of 10% of the amount of the overdue payment that remains unpaid more than one day after its due date.

Borrower shall not permit or cause any other encumbrance other than the deed of trust to be recorded pursuant to this loan. Borrower agrees that the recordation of any other lien that is superior or inferior to the deed of trust to be recorded in connection with this indebtedness established by this Promissory Note shall be an event of default which shall entitle the holder of the deed of trust to all rights and remedies established by the deed of trust.

Unless specifically disallowed by law, should litigation arise hereunder, service of process therefore may be obtained through certified mail, return receipt requested; the parties hereto waiving any and all rights they may have to object to the method by which service was perfected.

FairOfferCashNow, Inc., a Tennessee Corporation

By: _Elizabeth Reyes_
Elizabeth Reyes, Authorized Agent

PREPARED BY:
Greater Nashville Title, LLC
4603 Gallatin Pike
Nashville, TN 37216
615-865-1470

The MAXIMUM PRINCIPAL INDEBTEDNESS for Tennessee Recording Tax Purposes is $131,840.00.

## DEED OF TRUST

**1. DATE AND PARTIES.** The date of this Deed of Trust (Security Instrument) is 19th day of December, 2023 and the parties, their addresses and tax identification numbers, if required, are as follows:

GRANTOR: FairOfferCashNow, Inc.
PO Box 11891, Murfreesboro, TN 37129

TRUSTEE: Greater Nashville Title, LLC, a resident of Davidson County, Tennessee
4603 Gallatin Pike, Nashville, TN 37216

LENDER: Justin Cutler
1204 15th Avenue South, Nashville, TN 37212

**2. CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (defined below) and Grantor's performance under this Security Instrument, Grantor irrevocably grants, conveys and sells to Trustee, in trust for benefit of Lender, with power of sale, the following described property:

### SEE EXHIBIT A

The property is located in **Hamilton County, Tennessee** at: **2701 Benton Avenue, Chattanooga, TN 37406** together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, ditches, and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above (all referred to as "Property").

**3. MAXIMUM OBLIGATION LIMIT,** The total principal amount secured by this Security Instrument at any one time shall not exceed **$131,840.00.** This limitation of amount does not include interest and other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument. **Notice: Pursuant to Tenn. Code Ann. § 47-28-105, Borrower may reduce the limit on the maximum amount of total principal indebtedness to be secured under this Deed of Trust.**

**4. SECURED DEBT AND FUTURE ADVANCES.** The term "Secured Debt" is defined as follows:

A. Debt incurred under the terms of all promissory note(s), contract(s), guaranty(ies) or other evidence of debt described below and all their extensions, renewals, modifications or substitutions, ( When referencing the debts below it is suggested that you include items such as borrowers' names, note amounts, interest rates, maturity dates, etc.)

Note of even date, and maturity date of June 1, 2024, executed simultaneously herewith

B. All future advances from Lender to Grantor or other future obligations of Grantor to Lender under any promissory note, contract, guaranty, or other evidence of debt executed by Grantor in favor of Lender after this Security Instrument whether or not this Security instrument is specifically referenced. If more than one person signs this Security Instrument, each Grantor agrees that this Security Instrument will secure all future advances and future obligations that are given to or incurred by any one or more Grantor, or any one or more Grantor and others. All future advances and other future obligations are secured by this Security Instrument even though all or part may not yet be advanced. All future advances and other future obligations are secured as if made on the date of this Security Instrument. Nothing in this Security Instrument shall constitute a commitment to make additional or future loans or advances in any amount. Any such commitment must be agreed to in a separate writing.

C. All obligations Grantor owes to Lender, which may later arise, to the extent not prohibited by law, including but not limited to, liabilities for overdrafts relating to any deposit account agreement between Grantor and Lender.

D. All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument. This Security Instrument will not secure any other debt if Lender fails to give any required notice of the right of rescission.

**5. PAYMENTS.** Grantor agrees that all payment under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument.

**6. WARRANTY OF TITLE.** Grantor warrants that Grantor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to irrevocably grant, convey and sell the Property to Trustee, in trust, with power to sale. Grantor also warrants that the Property is unencumbered, except for encumbrances of record.

**7. PRIOR SECURITY INTERESTS.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Grantor agrees:

A. To make all payments when due and to perform or comply with all covenants.

B. To promptly deliver to Lender any notices that Grantor receives from the holder.

C. Not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written consent.

**8. CLAIMS AGAINST TITLE.** Grantor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Grantor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Grantor's payment. Grantor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Grantor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Grantor may have against parties who supply labor or materials to maintain or improve the Property.

**9. DUE ON SALE OR ENCUMBRANCE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of the Property with exception to a transfer to Benton Investment Group, LLC. This right is subject to the restrictions imposed by federal law (12 C.F.R. 59), as applicable. This covenant shall run with the Property and shall remain in effect until the Secured Debt is paid in full and this Security Instrument is released.

**10. PROPERTY CONDITION, ALTERATIONS AND INSPECTION.** Grantor will keep the Property in good condition and make all repairs that are reasonably necessary. Grantor shall not commit or allow any waste, impairment, or deterioration of the Property. Grantor will keep the Property free of noxious weeds and grasses. Grantor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Grantor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Grantor will notify Lender of all demands, proceedings, claims and actions against Grantor, and of any loss or damage to the Property. Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Grantor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Grantor will in no way rely on Lender's inspection.

**11. AUTHORITY TO PERFORM.** If Grantor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Grantor appoints Lender as attorney in fact to sign Grantor's name or pay any amount necessary for performance. Lender's right to perform for Grantor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument. If any construction

on the Property is discontinued or not carried on in a reasonable manner, Lender may take all steps necessary to protect Lender's security interest in the Property, including completion of the construction.

**12. ASSIGNMENT OF LEASES AND RENTS.** Grantor irrevocably grants, conveys and sells to Trustee, in trust for the benefit of Lender, as additional security all the right, title and interest in and to any and all existing or future leases, subleases, and any other written or verbal agreements for the use and occupancy of any portion of the Property, including any extensions, renewals, modifications or substitutions of such agreements (all referred to as "Leases") and rents, issues and profits (all referred to as "Rents"). Grantor will promptly provide Lender with true and correct copies of all existing and future Leases. Grantor may collect, receive, enjoy and use the Rents so long as Grantor is not in default under the terms of this Security Instrument. Grantor agrees that this assignment is immediately effective between the parties to this Security Instrument and effective as to third parties on the recording of this Deed of Trust. This assignment will remain in effect during any redemption period until the Secured Debt is satisfied. Grantor agrees that Lender or Trustee may take actual possession of the Property without the necessity of commencing legal action and that actual possession is deemed to occur when Lender, or its agent, notifies Grantor of default and demands that any tenant pay all future Rents directly to Lender. On receiving notice of default, Grantor will endorse and deliver to Lender any payment of Rents in Grantor's possession and will receive any Rents in trust for Lender and will not commingle the Rents with any other funds. Any amounts collected will be applied in this Security Instrument. Grantor warranty that no default exists under the Leases or any applicable landlord/tenant law. Grantor also agrees to maintain and require any tenant to comply with the terms of the Leases and applicable law.

**13. LEASEHOLDS, CONDOMINIUMS: PLANNED UNIT DEVELOPMENTS.** Grantor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the Property includes a unit in a condominium or a planned unit development, Grantor will perform all of Grantor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

**14. DEFAULT.** Grantor will be in default in any party obligated on the Secured Debt fails to make payment when due. Grantor will be in default if a breach occurs under the terms of this Security Instrument or any other document executed for the purpose of creating, securing, or guarantying the Secured Debt. A good faith belief by Lender that Lender at any time is insecure with respect to any person or entity obligated on the Secured Debt or that the prospect of any payment or the value of the Property is impaired shall also constitute an event of default.

**15. REMEDIES ON DEFAULT.** In some instances, federal and state law will require Lender to provide Grantor with notice of the right to cure or other notices and may establish time schedules for foreclosure actions. Subject to these limitations, if any, Lender may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by law if Grantor is in default. At the option of Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. In addition, Lender shall be entitled to all the remedies provided by law, the terms of the Secured Debt, this Security Instrument, and any related documents, including without limitation, the power to sell the Property. If there is a default, Trustee shall, in addition to any other permitted remedy, at the request of the Lender, advertise and sell the Property as a whole or in separate parcels at public outcry of the Property to the highest bidder for cash and convey absolute title free and clear of all right, title and interest of Grantor at such time and place as Trustee designates. Trustee shall give notice of sale including the time, terms and place of sale and a description of the Property to be sold as required by the applicable law in effect at the time of the proposed sale. Upon sale of the Property and to the extent not prohibited by law, Trustee shall make and deliver a deed to the Property sold which conveys absolute title to the purchaser, and after first paying all fees, charges and costs, shall pay to Lender all moneys advanced for repairs, taxes, insurance, liens, assessments, and prior encumbrances and interest thereon, and the principal and interest on the Secured Debt, paying the surplus, if any, to Grantor. Lender may purchase the Property. The recitals in any deed of conveyance shall be prima facie evidence of the facts set forth therein. All remedies are distinct, cumulative, and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether or not expressly set forth. The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require complete cure of any existing default. By not exercising any remedy on Grantor's default, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

**16. EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** Except when prohibited by law, Grantor agrees to pay all of Lender's expenses if **Grantor** breaches any covenant in this Security Instrument. Grantor will also pay on demand any amount incurred by Lender for insuring, inspecting, preserving or otherwise protecting the Property and Lender's security interest. These expenses will bear interest

from the date of the payment until paid in full at the highest interest rate in effect as provided in terms of the Secured Debt. Grantor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount may include, but is not limited to, attorneys' fees, court costs, and other legal expenses. This Security Instrument shall remain in effect until released.

**17. ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), and all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substance defined as "hazardous material," " toxic substances," "hazardous waste," "hazardous substance," or "regulated substance," under any Environmental Law. Grantor represents, warrants and agrees that:

A. Except as previously disclosed and acknowledged in writing to Lender, on Hazardous Substance is or will be located, stored or released on or in the Property. This restriction does not apply to small quantities of Hazardous Substances that are generally recognized to be appropriate for the normal use and maintenance of the Property.

B. Except as previously disclosed and acknowledged in writing to Lender, Grantor and every tenant have been, are, and shall remain in full compliance with any applicable Environmental Law.

C. Grantor shall immediately notify Lender if a release or threatened release of a Hazardous Substance occurs on, under or about the Property or there is a violation of any Environmental Law concerning the Property. In such an event, Grantor shall take all necessary remedial action in accordance with any Environmental Law.

D. Grantor shall immediately notify Lender in writing as soon as Grantor has reason to believe there is any pending or threatened investigation, claim, or proceeding relating to the release or threatened release of any Hazardous Substance or the violation of any Environmental Law.

**18. CONDEMNATION.** Grantor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through, eminent domain, or any other means. Grantor authorizes Lender to intervene in Grantor's name in any of the above-described actions or claims, Grantor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other Grantor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

**19. INSURANCE.** Grantor shall keep Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires. What Lender requires pursuant to the preceding two sentences can change during the term of the Secured Debt. The insurance carrier providing the insurance shall be chosen by Grantor subject to Lender's approval, which shall not be unreasonably withheld. If Grantor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Security Instrument. All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause." Grantor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Grantor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Grantor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss in not made immediately by Grantor. Unless otherwise agreed in writing, all insurance proceeds shall be applied to the restoration or repair of the Property or the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of the scheduled payment or change the amount of any payment. Any excess will be paid to Grantor. If the Property acquired by Lender, Grantor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

**20. ESCROW FOR TAXES AND INSURANCE.** Unless otherwise provided in a separate agreement, Grantor will not be required to pay to Lender funds for taxes and insurance in escrow.

**21. FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Grantor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Grantor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue,

and preserve Grantor's Obligations under this Security Instrument and Lender's lien status on the Property.

**22. JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Security Instrument are joint and individual. If Grantor signs this Security Instrument but does not sign an evidence of debt, Grantor does so only to mortgage Grantor's interest in the Property to secure payment of the Secured Debt and Grantor does not agree to be personally liable on the Secured Debt. If this Security Instrument secures a guaranty between Lender and Grantor, Grantor agrees to waive any rights that may prevent Lender from bringing any action or claim against Grantor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws. Grantor agrees that Lender and any party to this Security Instrument may extend, modify, or make any change in the terms of this Security Instrument or any evidence of debt without Grantor's consent. Such a change will not release Grantor from the terms of this Security Instrument. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Grantor and Lender.

**23. APPLICABLE LAW; SEVERABILITY; INTERPRETATION.** This Security Instrument is governed by the laws of the jurisdiction in which Lender is located, except to the extent otherwise required by the laws of the jurisdiction where the Property is located. This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, this section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

**24. SUCCESSOR TRUSTEE.** Lender, at Lender's option, may from time to time remove Trustee and appoint a successor trustee without any other formality than the designation in writing. The successor trustee, without conveyance of the Property, shall succeed to all the title, power and duties conferred upon Trustee by this Security Instrument and applicable law.

**25. NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Security Instrument, or any other address designated in writing. Notice to one grantor will be deemed to be notice to all grantors.

**26. WAIVERS.** Except to the extent prohibited by law, Grantor waives all rights to homestead, curtesy and dower, appraisement, and the marshalling of liens and assets relating to the Property. In addition, statutory rights of redemption by Grantor after foreclosure sale are expressly waived to the extent not prohibited by law.

**27. OTHER TERMS.** If checked, the following are applicable to this Security Instrument:

_____ **OPEN END MORTGAGE.** This Deed of Trust is an "Open End Mortgage" as defined under Tenn. Code Anno, g 47-28-103 and secures the Secured Debt which includes a revolving line of credit provision. The Secured Debt is due and payable on _____ if not paid earlier. The due date may not be more than twenty years after the date of the Secured Debt. Although the Secured Debt may be reduced to a zero balance, this Security Instrument will remain in effect until released.

_X_ **FIXTURE FILING.** Grantor grants to Lender a security interest in all goods that Grantor owns now or in the future and that are or will become fixtures related to the Property. This Security Instrument suffices as a financing statement and any carbon, photographic or other reproduction may be filed of record for purposes of Article 9 of the Uniform Commercial Code.

_X_ **RIDERS.** The covenants and agreements of each of the riders checked below are incorporated into and supplement and amend the terms of this Security Instrument. (Check all Applicable boxes) __ **Condominium Rider** __ **Planned Unit Development Rider XX Other:** Exhibit A – Legal Description __ **Additional Terms.**

**SIGNATURES:** By signing below, Grantor agrees to the terms and covenants contained in this Security Instrument and in any attachments. Grantor also acknowledges receipt of a copy of this Security Instrument on the date stated

on Page 1.

Dated: **December 19, 2023**

**FairOfferCashNow, Inc., a Tennessee Corporation**

By: _____

Elizabeth Reyes, Authorized Agent

STATE OF TENNESSEE
COUNTY OF RUTHERFORD

Before me, _Amber Baker_____ of the state and county mentioned, personally
appeared Elizabeth Reyes, Authorized Agent of FairOfferCashNow, Inc., with whom I am personally acquainted (or
proved to me on the basis of satisfactory evidence), and who, upon oath, acknowledged such person to be
Authorized Agent of FairOfferCashNow, Inc., the within named bargainor, a Corporation, and that such Elizabeth
Reyes, Authorized Agent of FairOfferCashNow, Inc. as such Authorized Agent, executed the foregoing instrument
for the purpose therein contained, by personally signing the name of the Corporation as Authorized Agent.

Witness my hand and seal, at office in Murfreesboro, Tn this 15th day of December, 2023.

_____
Notary Signature

Printed Name: _Amber Baker_

My commission expires: _October 16, 2027_

**EXHIBIT A**

Land in Hamilton County, Tennessee, within the City of Chattanooga, being the South 100 feet of Block No. 21 on the Plan of Anderson's Addition to East Chattanooga of record in Plat Book 3, Page 12, in the Register's Office for Hamilton County, Tennessee, to which Plan reference is hereby made for a more complete description of the property.

EXCEPT any alley running North and South through said property.

Being the same property conveyed to Charles L. Ford and wife, Sara A. Ford by Warranty Deed from Hannah T. Thomas, Widow of Rufus R. Thomas, Sr., by and through her Attorney in fact, Amanda T. Ruff of record in Book 5607, Page 839, Register's Office for Hamilton County, Tennessee, dated May 30, 2000 and recorded on May 31, 2000. (Value or consideration shown in aforementioned deed $22,000.00.)

Being the same property conveyed to Fifty One Bricks At A Time Properties, LLC, a Wyoming Limited Liability Company, by Quitclaim Deed from Charles L. Ford and wife, Sara A. Ford of record in Book 13310, Page 656, Register's Office for Hamilton County, Tennessee, dated June 04, 2023 and recorded on June 06, 2023.

Being known as 2701 Benton Avenue, Chattanooga, Tennessee 37406.

For record title, see Instrument No. _____ or Book _____, Page _____, Register's office for Hamilton County, recorded prior to this instrument.

| A. | | | | |
|---|---|---|---|---|

**U.S DEPARTMENT OF HOUSING & URBAN DEVELOPMENT**

**SETTLEMENT STATEMENT**

| B. TYPE OF LOAN | |
|---|---|
| 1. ☐ FHA  2. ☐ FMHa  3. ☒ Conv. Unins  4. ☐ VA  5. ☐ Conv. Ins | |
| 6. FILE NUMBER: 2023-0443-O | 7. LOAN NUMBER: |
| 8. MORTGAGE INS CASE NUMBER: | |

C. Note: *This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown.*
*Items marked "[POC]" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.*

1.0   3/98   (2023-0443-O/22)

| D. NAME AND ADDRESS OF BORROWER: | E. NAME AND ADDRESS OF SELLER: | F. NAME AND ADDRESS OF LENDER: |
|---|---|---|
| Fairoffercashnow, Inc., a Tennessee corporation 232 Heritage Park Drive, Suite 103 Murfreesboro, TN 37129 | Kelvin B. Williams 8045 Wakefield Avenue Jacksonville, FL 32208 | Justin N. Cutler 1204 – 15th Avenue South Nashville, TN 37212 |

| G. PROPERTY LOCATION: | H. SETTLEMENT AGENT: | I. SETTLEMENT DATE: |
|---|---|---|
| 5902 Springfield Boulevard Jacksonville, FL 32208 Duval County, Florida Lot 20, Block 12, Unit No 3, Pearl Court, Plat Book 12, Page 87, Duval County, Florida | Advantage Title, LLC PLACE OF SETTLEMENT: 230 NE 25th Avenue, Suite 100 Ocala, FL 34470 | September 20, 2023 DISBURSEMENT DATE: September 20, 2023 |

| J. SUMMARY OF BORROWER'S TRANSACTION | | K. SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER:** | | **400. GROSS AMOUNT DUE TO SELLER:** | |
| 101. Contract sales price | 95,549.17 | 401. Contract sales price | 95,549.17 |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | 7,100.14 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| *Adjustments for items paid by seller in advance* | | *Adjustments for items paid by seller in advance* | |
| 106. City/Town taxes | | 406. City/Town taxes | |
| 107. County taxes | | 407. County taxes | |
| 108. Assessments | | 408. Assessments | |
| 109. | | 409. | |
| 110. LIP Account | 20,000.00 | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 120. *GROSS AMOUNT DUE FROM BORROWER* | 122,649.31 | 420. *GROSS AMOUNT DUE TO SELLER* | 95,549.17 |
| **200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER:** | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER:** | |
| 201. Deposit or earnest money | | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | 139,050.00 | 502. Settlement charges to seller (line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first mortgage loan | 92,640.64 |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| *Adjustments for items unpaid by seller* | | *Adjustments for items unpaid by seller* | |
| 210. City/Town taxes | | 510. City/Town taxes | |
| 211. County taxes | | 511. County taxes | |
| 212. Assessments | | 512. Assessments | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| 220. *TOTAL PAID BY/FOR BORROWER* | 139,050.00 | 520. *TOTAL REDUCTION AMOUNT DUE SELLER* | 92,640.64 |
| **300. CASH AT SETTLEMENT FROM/TO BORROWER:** | | **600. CASH AT SETTLEMENT TO/FROM SELLER:** | |
| 301. Gross amount due from Borrower (Line 120) | 122,649.31 | 601. Gross amount due to Seller (Line 420) | 95,549.17 |
| 302. Less amount paid by/for Borrower (Line 220) | ( 139,050.00) | 602. Less reductions due Seller (Line 520) | 92,640.64 |
| 303. CASH TO BORROWER | 16,400.69 | 603. CASH TO SELLER | ( 2,908.53 |

The undersigned hereby acknowledge receipt of a completed copy of pages 1&2 of this statement & any attachments referred to herein.

Borrower

Fairoffercashnow, Inc., a Tennessee corporation

BY: *[signature]*

James Garland
Secretary

Seller

_____

Kelvin B. Williams

| A. | | | |
|---|---|---|---|
| U.S DEPARTMENT OF HOUSING & URBAN DEVELOPMENT **SETTLEMENT STATEMENT** | | **B. TYPE OF LOAN** | |

| | | B. TYPE OF LOAN |
|---|---|---|
| | | 1. ☐ FHA  2. ☐ FMHa  3. ☒ Conv. Unins  4. ☐ VA  5. ☐ Conv. Ins |
| | | 6. FILE NUMBER:  2023-0443-O |  7. LOAN NUMBER: |
| | | 8. MORTGAGE INS CASE NUMBER: |

C. Note: *This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown.*
*Items marked "[POC]" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.*

1.0   3/98   (2023-0443-O/22)

| D. NAME AND ADDRESS OF BORROWER: | E. NAME AND ADDRESS OF SELLER: | F. NAME AND ADDRESS OF LENDER: |
|---|---|---|
| Fairoffercashnow, Inc., a Tennessee corporation  232 Heritage Park Drive, Suite 103  Murfreesboro, TN 37129 | Kelvin N. Williams  8045 Wakefield Avenue  Jacksonville, FL 32208 | Justin N. Cutler  1204 - 15th Avenue South  Nashville, TN 37212 |

| G. PROPERTY LOCATION: | H. SETTLEMENT AGENT: | I. SETTLEMENT DATE: |
|---|---|---|
| 5902 Springfield Boulevard  Jacksonville, FL 32208  Duval County, Florida  Lot 20, Block 12, Unit No 3, Pearl Court, Plat  Book 12, Page 87, Duval County, Florida | Advantage Title, LLC  PLACE OF SETTLEMENT:  230 NE 25th Avenue, Suite 100  Ocala, FL 34470 | September 20, 2023  DISBURSEMENT DATE:  September 20, 2023 |

| J. SUMMARY OF BORROWER'S TRANSACTION | | K. SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|
| **100.  GROSS AMOUNT DUE FROM BORROWER:** | | **400.  GROSS AMOUNT DUE TO SELLER:** | |
| 101.  Contract sales price | 95,549.17 | 401.  Contract sales price | 95,549.17 |
| 102.  Personal property | | 402.  Personal property | |
| 103.  Settlement charges to borrower (line 1400) | 7,100.14 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| *Adjustments for items paid by seller in advance* | | *Adjustments for items paid by seller in advance* | |
| 106.  City/Town taxes | | 406.  City/Town taxes | |
| 107.  County taxes | | 407.  County taxes | |
| 108.  Assessments | | 408.  Assessments | |
| 109. | | 409. | |
| 110.  LIP Account | 20,000.00 | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120.  *GROSS AMOUNT DUE FROM BORROWER*** | 122,649.31 | **420.  *GROSS AMOUNT DUE TO SELLER*** | 95,549.17 |
| **200.  AMOUNTS PAID BY OR IN BEHALF OF BORROWER:** | | **500.  REDUCTIONS IN AMOUNT DUE TO SELLER:** | |
| 201.  Deposit or earnest money | | 501.  Excess deposit (see instructions) | |
| 202.  Principal amount of new loan(s) | 139,050.00 | 502.  Settlement charges to seller (line 1400) | |
| 203.  Existing loan(s) taken subject to | | 503.  Existing loan(s) taken subject to | |
| 204. | | 504.  Payoff of first mortgage loan | 92,640.64 |
| 205. | | 505.  Payoff of second mortgage loan | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| *Adjustments for items unpaid by seller* | | *Adjustments for items unpaid by seller* | |
| 210.  City/Town taxes | | 510.  City/Town taxes | |
| 211.  County taxes | | 511.  County taxes | |
| 212.  Assessments | | 512.  Assessments | |
| 213. | | 513. | |
| 214.  Duval County, Florida | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220.  *TOTAL PAID BY/FOR BORROWER*** | 139,050.00 | **520.  *TOTAL REDUCTION AMOUNT DUE SELLER*** | 92,640.64 |
| **300.  CASH AT SETTLEMENT FROM/TO BORROWER:** | | **600.  CASH AT SETTLEMENT TO/FROM SELLER:** | |
| 301.  Gross amount due from Borrower (Line 120) | 122,649.31 | 601.  Gross amount due to Seller (Line 420) | 95,549.17 |
| 302.  Less amount paid by/for Borrower (Line 220) | ( 139,050.00) | 602.  Less reductions due Seller (Line 520) | 92,640.64 ) |
| 303.  *CASH TO BORROWER* | 16,400.69 | 603.  *CASH TO SELLER* | 2,908.53 |

The undersigned hereby acknowledge receipt of a completed copy of pages 1&2 of this statement & any attachments referred to herein.

Borrower

Fairoffercashnow, Inc., a Tennessee corporation

BY: _____
James Garland
Secretary

Seller  *[signature]* Kelvin B. Williams

Printed on: 09/19/23 at 11:28 AM   2023-0443-O/22

HUD-1, Page

## L. SETTLEMENT CHARGES

| 700. | TOTAL COMMISSIONS Based on Price | $ | @ | % | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|---|---|---|
| | *Division of Commission (line 700) as Follows:* | | | | | |
| 701. | to | | | | | |
| 702. | to | | | | | |
| 703. | Commission paid at settlement | | | | | |
| 704. | Transaction Fee - Listing Agent | to | | | | |
| 705. | Transaction Fee - Selling Agent | to | | | | |
| **800.** | **ITEMS PAYABLE IN CONNECTION WITH LOAN** | | | | | |
| 801. | Loan origination fee | 2.9126% | to Justin N. Cutler | | 4,050.00 | |
| 802. | Loan discount | to | | | | |
| 803. | Appraisal fee | to | | | | |
| 804. | Credit report | to | | | | |
| 805. | Lender's inspection fee | to | | | | |
| 806. | Mortgage insurance application fee | to | | | | |
| 807. | Assumption fee | to | | | | |
| 808. | | to | | | | |
| 809. | | to | | | | |
| 810. | | to | | | | |
| 811. | | to | | | | |
| **900.** | **ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE** | | | | | |
| 901. | Interest From 9/20/2023 to 10/1/2023 @ $ 57.14 /day (11 days 15.0000 %) | | | | | |
| 902. | Mortgage insurance premium | for | month | to | | |
| 903. | Hazard insurance premium | for | year | to | | |
| 904. | | for | year | to | | |
| 905. | | | | to | | |
| **1000.** | **RESERVES DEPOSITED WITH LENDER** | | | | | |
| 1001. | Hazard insurance | Months | @ $ | per Month | | |
| 1002. | Mortgage insurance | Months | @ $ | per Month | | |
| 1003. | City property taxes | Months | @ $ | per Month | | |
| 1004. | County property taxes | Months | @ $ | per Month | | |
| 1005. | Annual assessments | Months | @ $ | per Month | | |
| 1006. | | Months | @ $ | per Month | | |
| 1007. | | Months | @ $ | per Month | | |
| 1008. | | Months | @ $ | per Month | | |
| **1100.** | **TITLE CHARGES** | | | | | |
| 1101. | Settlement or closing fee | to Advantage Title, LLC | | | 700.00 | |
| 1102. | Abstract or title search | to Chicago Title Insurance Company | | | 75.00 | |
| 1103. | Title examination | to | | | | |
| 1104. | Title insurance binder | to | | | | |
| 1105. | Document preparation | to | | | | |
| 1106. | Notary fees | to | | | | |
| 1107. | Attorney's fees | to | | | | |
| | (includes above item numbers: ) | | | | | |
| 1108. | Title insurance | to | | | 795.49 | |
| | (includes above item numbers: ) | | | | | |
| 1109. | Lender's coverage | $ 139,050.00 | 245.79 | | | |
| 1110. | Owner's coverage | $ 95,549.17 | 549.70 | | | |
| 1111. | | to | | | | |
| 1112. | | to | | | | |
| 1113. | | to | | | | |
| **1200.** | **GOVERNMENT RECORDING AND TRANSFER CHARGES** | | | | | |
| 1201. | Recording fees; | Deed $10.00; Mortgage $35.50; Releases | | | 45.50 | |
| 1202. | City/County tax/stamps; | ; Mortgage $278.10 | | | 278.10 | |
| 1203. | State tax/stamps; | Deed $669.20; Mortgage $486.85 | | | 1,156.05 | |
| 1204. | | to | | | | |
| 1205. | | to | | | | |
| **1300.** | **ADDITIONAL SETTLEMENT CHARGES** | | | | | |
| 1301. | Survey | to | | | | |
| 1302. | Pest inspection | to | | | | |
| 1303. | | to | | | | |
| 1304. | | to | | | | |
| 1305. | | to | | | | |
| **1400.** | **TOTAL SETTLEMENT CHARGES (Enter on Lines 103, Section J and 502, Section K)** | | | | 7,100.14 | 0.00 |

By signing page 1 of this statement, the signatories acknowledge receipt of a completed copy of page 2 of this two page statement.

TO THE BEST OF MY KNOWLEDGE, THE HUD-1 SETTLEMENT STATEMENT WHICH I HAVE PREPARED IS A TRUE AND ACCURATE ACCOUNT OF THE FUNDS WHICH WERE RECEIVED AND HAVE BEEN OR WILL BE DISBURSED BY THE UNDERSIGNED AS PART OF THE SETTLEMENT OF THIS TRANSACTION.

Advantage Title, LLC, Settlement Agent

WARNING: IT IS A CRIME TO KNOWINGLY MAKE FALSE STATEMENTS TO THE UNITED STATES ON THIS OR ANY SIMILAR FORM. PENALTIES UPON CONVICTION CAN INCLUDE A FINE AND IMPRISONMENT. FOR DETAILS SEE: TITLE 18 U.S. CODE SECTION 1001 & SECTION 1010.

Printed on: 09/19/23 al 11:28 AM   2023-0443-O/22

HUD-1, Page

# HUD-1, Attachment

**Borrower:** Fairoffercashnow, Inc., a Tennessee
corporation
232 Heritage Park Drive, Suite 103
Murfreesboro, TN 37129

**Seller:** Kelvin B. Williams
8045 Wakefield Avenue
Jacksonville, FL 32208

**Lender:** Justin N. Cutler

**Settlement Agent:** Advantage Title, LLC
(352)269-0053

**Place of Settlement:** 230 NE 25th Avenue, Suite 100
Ocala, FL 34470

**Settlement Date:** September 20, 2023
**Disbursement Date:** September 20, 2023
**Property Location:** 5902 Springfield Boulevard
Jacksonville, FL 32208
Duval County, Florida
Lot 20, Block 12, Unit No 3, Pearl Court, Plat Book 12, Page 87, Duval County, Florida

## Additional Disbursements

| Payee/Description | Note/Ref. No. | Borrower | Seller |
|---|---|---|---|
| Chicago Title Insurance Company | | 549.70 | |
|   Owner's policy premium | | | |
| Advantage Title, LLC | | 245.79 | |
|   Loan policy premium | | | |
| **Total Additional Disbursements** | | **795.49** | **0.00** |

## Payoffs

| Payee/Description | Note/Ref. No. | Borrower | Seller |
|---|---|---|---|
| Robertson, Anschutz & Schneid Trust Account | | | 92,640.64 |
|   Payoff of first mortgage loan | | | |

Printed on: 09/19/23 at 11:28 AM  2023-0443-0/22                                   Page 1 of 1

THIS INSTRUMENT PREPARED BY:
KIMBERLY BROWN FOX, AN EMPLOYEE OF
ADVANTAGE TITLE, LLC
230 NE 25TH AVENUE, SUITE 100
OCALA, FL 34470

## WARRANTY DEED

THIS INDENTURE, made this 20th day of September, 2023, between **KELVIN B. WILLIAMS,** whose address is 8045 Wakefield Avenue, Jacksonville, FL 32208, herein referred to as Grantor and **FAIROFFERCASHNOW, INC., A TENNESSEE CORPORATION,** whose address is 232 Heritage Park Drive, Suite 103, Murfreesboro, TN 37129, herein referred to as Grantee.

### WITNESSETH

That Grantor, for and in consideration of the sum of Ten And No/100 Dollars ($10.00) and other good and valuable consideration to Grantor in hand paid by Grantee, the receipt whereof is hereby acknowledged, has granted, bargained and sold to the Grantee, and Grantee's successor's and assigns forever, the following-described land situate, lying and being in Duval County, Florida, viz.

Lot 20, Block 12, Pearl Court Unit No. 3, according to the map or plat thereof, as recorded in Plat Book 12, Page(s) 87 and 88, of the Public Records of Duval County, Florida.

**The Grantor herein warrants that the land described herein is not the homestead of the Grantor and neither the Grantor nor the Grantor's spouse, if any, nor anyone for whose support the Grantor is responsible, resides on or adjacent to said land.**

Parcel ID No.: 034610-0000

TOGETHER with all the tenements, hereditaments and appurtenances thereto belonging or in anywise appertaining.

TO HAVE AND TO HOLD the same in fee simple forever.

AND Grantor hereby covenants with said Grantee that the Grantor is lawfully seized of said land in fee simple; that the Grantor has good right and lawful authority to sell and convey said land; that the Grantor hereby fully warrants the title to said land and will defend the same against the lawful claims of all persons whomsoever; and that said land is free of all encumbrances, except: Covenants, Restrictions, Easements of record and taxes for the current year.

IN WITNESS WHEREOF, the said Grantor has signed and sealed these presents the day and year first above written.

Signed, Sealed and Delivered
In the Presence of:

_____
First Witness Signature

Tresca R. Crusaw
First Witness Printed Name

Bernardic Jordan
Second Witness Signature

Bernardic Jordan
Second Witness Printed Name

_____
Kelvin B. Williams

STATE OF FLORIDA
COUNTY OF DUVAL

The foregoing instrument was executed and acknowledged before me by means of ✔ Physical Presence or ____ Online Notarization this 23rd day of September, 2023, by **Kelvin B. Williams,** who is personally known or who produced ____FLDL____ as identification.

_____
Notary Public
My Commission Expires: Oct. 12th, 2026

Tresca R. Crusaw

TRESCA R CRUSAW
Notary Public - State of Florida
Commission # HH 321528
My Comm. Expires Oct 12, 2026

THIS INSTRUMENT PREPARED BY:
KIMBERLY BROWN FOX, AN EMPLOYEE OF
ADVANTAGE TITLE, LLC
230 NE 25TH AVENUE, SUITE 100
OCALA, FL 34470

# MORTGAGE DEED

Executed the 20th day of September, 2023, between **FAIROFFERCASHNOW, INC., A TENNESSEE CORPORATION**, whose address is 232 Heritage Park Drive, Suite 103, Murfreesboro, TN 37129, hereinafter called the mortgagor, to JUSTIN N. CUTLER, whose address is 1204 - 15th Avenue South, Nashville, TN 37212, hereinafter called the mortgagee;

(Wherever used herein the terms "mortgagor" and "Mortgagee" include all the parties to this instrument and the heirs, legal representatives and assigns of individuals, and the successors and assigns of corporations; and the term "note" includes all the notes herein described if more than one.)

**Witnesseth**, that for good and valuable considerations, and also in consideration of the aggregate sum named in the promissory note of even date herewith, hereinafter described, the mortgagor hereby grants, bargains, sells, aliens, remises, conveys and confirms unto the mortgagee all that certain land of which the mortgagor is now seized and in possession situate in Duval County, Florida, viz:

Lot 20, Block 12, Pearl Court Unit No. 3, according to the map or plat thereof, as recorded in Plat Book 12, Page(s) 87 and 88, of the Public Records of Duval County, Florida.

This is a Purchase Money First Mortgage.

Prepayment may be made at any time without penalty.

If a conveyance should be made by the mortgagor of the premises herein described, or any part thereof, without prior written consent of the mortgagee and upon the terms and at such rate as mortgagee shall requires, then in such event, and at the option of the mortgagee, all sums of money secured hereby shall immediately and concurrently with such conveyance become due and payable.

Failure by the mortgagor herein to comply with the tax and insurance requirements set forth herein shall be a material breach of this mortgage, for which the mortgagee would have the right to foreclose.

Mortgagor will provide to mortgagee proof of renewal of insurance coverage at each renewal period.

**To Have and to Hold** the same, together with the tenements, hereditaments and appurtenances thereto belonging, and the rents, issues and profits thereof, unto the mortgagee, in fee simple.

**And** the mortgagor covenants with the mortgagee that the mortgagor is indefeasibly seized of said land in fee simple; that the mortgagor has good right and lawful authority to convey said land as aforesaid; that the mortgagor will make such further assurances to perfect the fee simple title to said land in the mortgagee as may reasonably be required; that the mortgagor hereby fully warrants the title to said land and will defend the same against the lawful claims of all persons whomsoever; and that said land is free and clear of all encumbrances except those of record.

**Provided Always**, that if said mortgagor shall pay unto said mortgagee the certain promissory note hereinafter substantially copied or identified, to-wit:  See attached

and shall perform, comply with and abide by each and every of the agreements, stipulations, conditions and covenants thereof, and of this mortgage, then this mortgage and the estate hereby created, shall cease, determine and be null and void.

**And** the mortgagor hereby further covenants and agrees to pay promptly when due the principal and interest and other sums of money provided for in said note and this mortgage, or either; to pay all and singular the taxes, assessments, levies, liabilities, obligations and encumbrances of every nature on said property; to permit, commit or suffer no waste, impairment or deterioration of said land or the improvements thereon at any time; to keep the buildings now or hereafter on said land fully insured in a sum of not less than highest insurable amount in a company or companies acceptable to the mortgagee, the policy or policies to be held by, and payable to, said mortgagee, and in the event any sum of money becomes payable by virtue of such insurance the mortgagee shall have the right to receive and apply the same to the indebtedness hereby secured, accounting to the mortgagor for any surplus; to pay all costs, charges, and expenses, including lawyer's fees and title searches, reasonably incurred or paid by the mortgagee because of the failure of the mortgagor to promptly and fully comply with the agreements, stipulations, conditions and covenants of said note and this mortgage, or either; to perform, comply with

and abide by each and every the agreements, stipulations, conditions and covenants set forth in said note and this mortgage or either. In the event the mortgagor fails to pay when due any tax, assessment, insurance premium or other sum of money payable by virtue of said note and this mortgage, or either, the mortgagee may pay the same, without waiving or affecting the option to foreclose or any other right hereunder, and all such payments shall bear interest from date thereof at the highest lawful rate then allowed by the laws of the State of Florida.

If any sum of money herein referred to be not promptly paid within thirty (30) days next after the same becomes due, or if each and every the agreements, stipulations, conditions and covenants of said note and this mortgage or either, are not fully performed, complied with and abided by, then the entire sum mentioned in said note, and this mortgage, or the entire balance unpaid thereon, shall forthwith or thereafter, at the option of the mortgagee, become and be due and payable, anything in said note or herein to the contrary notwithstanding. Failure by the mortgagee to exercise any of the rights or options herein provided shall not constitute a waiver of any rights or options under said note or this mortgage accrued or thereafter accruing.

**In Witness Whereof,** the said mortgagor has hereunto signed and sealed these presents the day and year first above written.

Signed, Sealed and Delivered
In the Presence of:

Printed Name: _Lauren Rowan_

Printed Name: _Sherrill L. Nelson_

Fairoffercashnow, Inc., a Tennessee corporation

BY: _____, its

STATE OF _Tennessee_
COUNTY OF _Rutherford_

The foregoing instrument was executed and acknowledged before me by means of ___X___ Physical Presence or _____ Online Notarization this ___19___ day of September, 2023, by _James Garland_, the _auth signer_ of Fairoffercashnow, Inc., a Tennessee corporation, who is personally known to me or who has produced _driver's license_ as identification.

Notary Public
My Commission Expires: _Aug. 15, 2026_

ELIZABETH REYES
STATE OF TENNESSEE
NOTARY PUBLIC
RUTHERFORD COUNTY
MY COMMISSION EXPIRES AUGUST 15, 2026

NOTE

Date: 9/20/2023

$139,050

Property Address: 5902 Springfield Blvd Jacksonville, FL 32208

FOR VALUE RECEIVED the undersigned jointly and severally promise(s) to pay to the order Justin Cutler, the principal sum of one hundred twenty six thousand six hundred and ninety dollars ($126,690) together with interest thereon from date at the rate of Fifteen (15.00%) percent per annum compounded daily until maturity, said Principal and Interest being payable at maturity or sooner. Maturity Date of this note is March 31st, 2024, at which time the balance will become due and payable. Interest will continue to accrue until the balance is paid in full.

Payments to be remitted to 1204 15ᵗʰ Avenue South, Nashville TN 37212 or at such place holder hereof may designate in writing from time to time.

I will make my monthly payment of $1,700 on the 1st day of each month, beginning on November 1ˢᵗ, 2023. I will make these payments every month until I have paid all the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before the principal. If, on the Maturity Date, I still owe amounts under this Note, I will pay those amounts in full on that date.

Each maker or endorser severally waives demand, protest and notice of maturity, non-payment or protest and all requirements necessary to hold each of them liable as makers and endorsers and should litigation be necessary to enforce this note, each maker and endorser waives trial by jury and consents to the personal jurisdiction and venue of a court of subject matter jurisdiction located in the State of Florida and County of Duval.

Each maker and endorser further agree, jointly and severally, to pay all costs of collection, including a reasonable attorney's fee in case the principal of this note or any payment on the principal or any interest thereon is not paid at the respective maturity thereof, or in case it becomes necessary to protect the security hereof, whether suit be brought or not.

Loan Charges: if law which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected in connection with the loan exceed the permitted limits, then (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make his refund by reducing the principal I owe under this note by making a direct payment to me. If a refund reduces the principal, the reduction will be treated as a partial prepayment. The converse of this paragraph shall apply if the interest or other loan charges collected or not collected in connection with the loan are deemed to be too minimal or

insufficient by applicable law. In such event, I shall make necessary payment to the Note Holder to reconcile any such deficiencies.

This note is to be construed and enforced according to the laws of the State of **Florida**; upon default in the payment of principal and/or interest when due, the whole sum of principal and interest remaining unpaid shall, at the option of the holder, become immediately due and payable and it shall accrue interest at the highest rate allowable by law, or, if no highest rate is otherwise indicated, at eighteen (18%) percent, from the date of default.

If the Note Holder has not received the full amount of any payment by that payment's due date, Borrower will pay a late fee to the Note Holder of 10% of the amount of the overdue payment that remains unpaid more than one day after its due date.

Borrower shall not permit or cause any other encumbrance other than the deed of trust to be recorded pursuant to this loan. Borrower agrees that the recordation of any other lien that is superior or inferior to the deed of trust to be recorded in connection with this indebtedness established by this Promissory Note shall be an event of default which shall entitle the holder of the deed of trust to all rights and remedies established by the deed of trust.

Unless specifically disallowed by law, should litigation arise hereunder, service of process therefore may be obtained through certified mail, return receipt requested; the parties hereto waiving any and all rights they may have to object to the method by which service was perfected.

BY: _____